IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

No. 26-30329

---

U S COURT OF APPEALS
RECEIVED
SEP 08 2026
FIFTH CIRCUIT

HUGH BRIAN STREET,
Plaintiff - Appellant,

v.

CHUCK CHRIST, Deputy, in his individual capacity;
CALVIN TURNER, Chief of Operations, in his individual capacity;
SAM CRAFT, individually, and in his capacity as Sheriff;
A B C INSURANCE COMPANY; JOHN CRAFT, Sheriff,

Defendants - Appellees.

---

On Appeal from the United States District Court
for the Western District of Louisiana, Lake Charles Division
USDC No. 2:25-CV-01882
Honorable James D. Cain, Jr., Presiding

---

# APPELLANT'S OPENING BRIEF

---

HUGH BRIAN STREET
Plaintiff-Appellant, Pro Se
385 RC Stephens Rd
Leesville, LA 71446
337-404-6465
brian.street@southerntreeninjas.com

# CERTIFICATE OF INTERESTED PERSONS

Pursuant to Fifth Circuit Rules 26.1.1 and 28.2.1, the undersigned pro se Appellant certifies that the following listed persons and entities have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

I. Plaintiff - Appellant

Hugh Brian Street (Proceeding Pro Se) 385 RC Stephens Rd Leesville, LA 71446

II. Defendants - Appellees

Deputy Chuck Christ (Vernon Parish Sheriff's Office Deputy, Individual Capacity)

Sheriff Sam Craft (Sheriff of Vernon Parish, Individual and Official Capacities)

Chief of Operations Calvin Turner (VPSO Chief Deputy, Individual and Official Capacities)

ABC Insurance Company (Unidentified Insurer, sought to be made a defendant in the District Court)

III. Dismissed Defendants (Excluded from Active Appeal)

Louisiana Sheriffs' Law Enforcement Program (LSLP) (Dismissed in District Court pursuant to Plaintiff's Statement of Non-Opposition, ROA.537)

IV. Counsel for Defendants - Appellees

RODRIGUE & ARCURI LLP 1615 Poydras Street, Suite 1250 New Orleans, Louisiana 70112

Laura C. Rodrigue, Esq. (LSBN #30428)

Blake J. Arcuri, Esq. (LSBN #32322)

Jason P. Wixom, Esq. (LSBN #32273)

V. Participating District Court Judges

Honorable James D. Cain, Jr. (U.S. District Judge, Western District of Louisiana)

Honorable Thomas P. LeBlanc (U.S. Magistrate Judge, Western District of Louisiana)

Respectfully submitted this 8th day of September, 2026.

HUGH BRIAN STREET

Plaintiff-Appellant, Pro Se

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fifth Circuit Rule 28.2.3, Appellant Hugh Brian Street respectfully requests oral argument. Oral argument is warranted in this case for four distinct, compelling reasons.

This appeal involves errors of fact regarding the physical docket committed by the District Court, including denial of the existence of filed documents ("Amended Verified Complaint" and Rule 65 "Certification"). Oral argument assists this Court in navigating the complex juxtaposition of the physical record against the District Court's erroneous findings.

Second, this appeal involves a significant issue of municipal liability. The Appellant pleaded the Chief Deputy, explicitly enforced a departmental custom of "We do not investigate our own" by physically refusing to accept Appellant's criminal complaints—a pre-existing custom ratified by the Sheriff (final policymaker) through refusal to review video evidence, failure to meaningfully investigate the incidents after receiving actual notice, and his public vow to defend his deputies "with everything that I have" against citizen complaints. Oral argument is necessary to address the profound constitutional implications of allowing a law enforcement agency to publicly and officially exempt itself from internal investigation, leaving citizens of Vernon Parish with zero recourse for

justice or protection from a sheriff's office that freely exempts itself from oversight and shields violent deputies from legal and administrative accountability.

Third, this appeal involves a critical issue of direct individual participation by a supervisor under Section 1983. Chief Turner did not merely act as a passive supervisor; he personally and physically blocked Appellant's Right to Petition by refusing to accept his criminal complaints and declaring a custom of non-investigation. Oral argument is necessary to address the standard of direct supervisor liability where a Chief Deputy personally obstructs a citizen's petition.

Fourth, this appeal involves the standard of supervisory liability and deliberate indifference for a sheriff under Section 1983. Sheriff Craft, despite having notice of Deputy Christ's documented history of retaliatory violence, deliberately retained him without discipline, personally refused to review video evidence of assault, and subsequently ratified the unconstitutional stop. Oral argument is necessary to clarify the standard of deliberate indifference and ratification in the Fifth Circuit when a sheriff actively insulates subordinate misconduct from review.

Because of the complexity and exceptional public importance of these substantive constitutional questions, and Appellant is without formal legal training, Appellant respectfully requests if this Court determines oral argument is necessary, the Court appoint counsel or invite amicus curiae to present the oral argument on Appellant's behalf.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................... i
STATEMENT REGARDING ORAL ARGUMENT .................................. iv
TABLE OF CONTENTS .................................................................................... vi
TABLE OF AUTHORITIES ............................................................................ viii
JURISDICTIONAL STATEMENT ...................................................................... 1
STATEMENT OF THE ISSUES.......................................................................... 2
STATEMENT OF THE CASE ............................................................................. 4
A. Procedural History ............................................................................ 4
B. Statement of Facts ............................................................................ 6
1. The 14-Year Pattern of Retaliation and Impunity Policy .......... 6
2. The Initial Unconstitutional Seizure (*Terry v. Ohio*) ................ 8
3. The Retaliatory Threat of Lethal Force and Verbal Threat of Incarceration ............................................................ 10
4. The Administrative Meeting, Impunity, and Spoliation ............ 11
SUMMARY OF ARGUMENT ......................................................................... 12
ARGUMENT ........................................................................................................ 15
I. THE DISTRICT COURT UNLAWFULLY CONVERTED THE RULE 12(B)(6) STANDARD AND VIOLATED Fed. R. Civ. P. 10(C) (ISSUE 1) ..................15
II. THE DISTRICT COURT ERRED BY DISMISSING THE *MONELL* CLAIM BY SETTING UP A STRAWMAN AND IGNORING CONTROLLING RATIFICATION PRECEDENT (ISSUE 2) ............................................ 18
III. THE DISTRICT COURT ERRED IN RULING NO SEIZURE OCCURRED BYPASSING *CALIFORNIA V. HODARI D.* AND MISAPPLYING MORRIS (ISSUE 3) ..................................................................................................... 23
IV. THE DISTRICT COURT ERRED BY DISMISSING THE FOURTH AMENDMENT EXCESSIVE FORCE CLAIM ERRONEOUSLY HOLDING THAT EXCESSIVE FORCE REQUIRES PHYSICAL CONTACT (ISSUE 4).. 28
V. THE DISTRICT COURT ERRED BY IMPORTING PRISONER STANDARDS TO DISMISS THE FIRST AMENDMENT RETALIATION AND RIGHT TO PETITION CLAIMS (ISSUE 5) .............................................. 31
VI. THE DISTRICT COURT ABUSED DISCRETION BY DENYING EMERGENCY PRESERVATION AND SAFETY RELIEF BASED ON DOCUMENTED ERRORS OF FACT (ISSUE 6) ...................................... 36
VII. THE DISTRICT COURT COMMITTED PER SE ABUSE OF DISCRETION BY SILENTLY DENYING RIPE MOTIONS AND IGNORING NON-FUTILITY STANDARDS (ISSUE 7) ............................................................................ 38
VIII. THE DISTRICT COURT ERRED ON STATE LAW TORTS, SUPERVISORY LIABILITY, AND EQUAL PROTECTION (ISSUE 8) ....... 40

IX. THE DISTRICT COURT ERRED ON QUALIFIED IMMUNITY AND ARTICLE III STANDING (ISSUE 9) .......................................... 49
CONCLUSION AND PRAYER FOR RELIEF .......................................56
CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT .......... 60
CERTIFICATE OF REDACTION COMPLIANCE ..................................61
CERTIFICATE OF SERVICE ............................................................ 62
MANDATORY RECORD ADDENDUM ........................................... A-1

## TABLE OF AUTHORITIES

Cases

*Allen v. Hays*, 65 F.4th 736 (5th Cir. 2023) .................... 15, 18, 23, 28, 31, 40, 49
*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................. 16
*Armstrong v. Ashley*, 60 F.4th 262 (5th Cir. 2023) ........................ 48
*Barnes v. Felix*, 145 S. Ct. 1353 (2025) ................................. 30
*Bass v. Parkwood Hosp.*, 180 F.3d 234 (5th Cir. 1999) ................ 43, 58
*Baxter v. Bracey*, 140 S. Ct. 1862 (2020) .............................. 53
*Bazrowx v. Scott*, 136 F.3d 1053 (5th Cir. 1998) .......................... 38
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ....................... 16
*Bogie v. Rosenberg*, 705 F.3d 603 (7th Cir. 2013) ......................... 17
*Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011) ...................... 36
*Brown v. Texas*, 443 U.S. 47 (1979) ...................................... 50
*California v. Hodari D.*, 499 U.S. 621 (1991) ..................... vi, 3, 13, 23, 25, 27
*Castiglione v. Galpin*, 325 So. 2d 725 (La. App. 4th Cir. 1976) ........... 42
*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994) ........................... 45
*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .................... 53
*Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019) (en banc) .................. 48, 50
*Doss v. South Central Bell Tel. Co.*, 834 F.2d 421 (5th Cir. 1987) ........... 55
*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594 (5th Cir. 1981) ........... 45
*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) ................... 54
*Eaker v. City of Moss Point*, No. 20-CV-92, 2021 WL 771756 (S.D. Miss. Feb. 26, 2021) ........................................................................... 32
*Erickson v. Pardus*, 551 U.S. 89 (2007) .................................. 17
*Faucheux v. Terrebonne Parish Consol. Gov't*, 615 So. 2d 289 (La. 1993) ... 41
*Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004) ................. 29
*Foman v. Davis*, 371 U.S. 178 (1962) ................................. 16, 39
*Gibson v. Jean-Baptiste*, 802 F. App'x 858 (5th Cir. 2020) ............. 13, 32
*Gonzalez v. Trevino*, 144 S. Ct. 2124 (2024) ................... 13, 33
*Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) .... 20, 44, 45, 51, 56
*Grisham v. Valenciano*, 124 F.4th 627 (5th Cir. 2025) .................. 33
*Gugliuzza v. K.C.M.C., Inc.*, 606 So. 2d 790 (La. 1992) ................... 41
*Haygood v. Dies*, 127 So. 3d 1008 (La. App. 2d Cir. 2013) ................. 45
*Hencley v. Fluor Corp.*, 120 F.4th 412 (4th Cir. 2024)....................................... 53
*Hansard v. Zamora*, No. 23-CV-00041, 2024 WL 3682240 (W.D. Tex. Aug. 5, 2024) ........................................................................................ 32
*Hart v. Hairston*, 343 F.3d 762 (5th Cir. 2003) ........................... 17
*Highland Capital Mgmt.*, L.P. v. Bank of Am., N.A., 698 F.3d 202 (5th Cir. 2012) ........................................................................................ 36

*Hinojosa v. City of Terrell*, 834 F.2d 1223 (5th Cir. 1988) ........... 29
*Hoffman v. Stulga*, 464 Fed. App'x 229 (5th Cir. 2011) .................... 32
*Hope v. Pelzer*, 536 U.S. 730 (2002) ....................................... 49
*In re Stewart*, 647 F.3d 553 (5th Cir. 2011) ............................. 53
*Jenkins v. Jefferson Parish Sheriff's Office*, 402 So. 2d 669 (La. 1981) .. 42
*Johnson v. Sawyer*, 120 F.3d 1307 (5th Cir. 1997) ......................... 56
*Kay v. Ehrler*, 499 U.S. 432 (1991) ....................................... 59
*Keenan v. Tejeda*, 290 F.3d 252 (5th Cir. 2002) ............... 13, 31, 32
*Laird v. Travelers Ins. Co.*, 263 La. 199, 267 So. 2d 714 (La. 1972) ...... 41
*Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993) .. 16
*Lindquist v. City of Pasadena*, 525 F.3d 383 (5th Cir. 2008) .............. 46, 50
*Lupis v. City of Texas City*, No. 23-40445 (5th Cir. Nov. 5, 2024) .... 25, 34
*Manuel v. City of Joliet*, 580 U.S. 357 (2017) ............................ 48
*McCoy v. City of Shreveport*, 492 F.3d 551 (5th Cir. 2007) ................ 42
*McFadden v. Lucas*, 713 F.2d 143 (5th Cir. 1983) ........................ 13, 32
*Medina v. Ortiz*, 623 Fed. App'x 695 (5th Cir. 2015) .................. 20
*Miller v. Sam Houston State Univ.*, 986 F.3d 880 (5th Cir. 2021) ........... 56
*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) . vi, 2, 14, 18, 19, 20, 38, 43
*National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) ......... 21
*Nieves v. Bartlett*, 139 S. Ct. 1715 (2019) .......................... 33
*Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595 (5th Cir. 2021) ......... 38
*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) .................. 18, 20, 56
*Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009) ......... 20
*Petta v. Rivera*, 143 F.3d 895 (5th Cir. 1998) ........................ 29
*Piotrowski v. City of Houston*, 237 F.3d 567 (5th Cir. 2001) .............. 18, 22
*Porter v. Epps*, 659 F.3d 440 (5th Cir. 2011) .......................... 51
*Pueblo of Laguna v. United States*, 60 Fed. Cl. 133 (2004) ................. 38
*Riley v. School Board of Union Parish*, 379 F. App'x 335 (5th Cir. 2010) .. 16
*Rogers v. Jarrett*, 63 F.4th 971 (5th Cir. 2023) .......................... 53
*Scott v. Harris*, 550 U.S. 372 (2007) .................................... 17
*Steffel v. Thompson*, 415 U.S. 452 (1974) ................................ 55
*Taylor v. Riojas*, 141 S. Ct. 52 (2020) .................................. 49
*Terry v. Ohio*, 392 U.S. 1 (1968) ..................................... vi, 8, 23, 25, 50
*Thompson v. Upshur County*, 245 F.3d 447 (5th Cir. 2001) .................. 16
*Turner v. Driver*, 848 F.3d 678 (5th Cir. 2017) ........................... 50, 51
*Ulmer v. Chancellor*, 691 F.2d 209 (5th Cir. 1982) ........................ 40
*United States v. Mendenhall*, 446 U.S. 544 (1980) ......................... 27, 29
*United States v. Morris*, 40 F.4th 323 (5th Cir. 2022) ................ 27, 29
*United States v. Robin*, 553 F.2d 8 (2d Cir. 1977) (en banc) ............. 56

*Valle v. City of Houston*, 613 F.3d 536 (5th Cir. 2010) .................... 18, 20
*Villarreal v. City of Laredo*, 94 F.4th 374 (5th Cir. 2024) (en banc) .. 50, 54
*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ................. 46, 50
*White v. Monsanto Co.*, 585 So. 2d 1205 (La. 1991) .................... 42

**Statutes and Rules**

28 U.S.C. § 1291 ........................................................ 1, 2
28 U.S.C. § 1331 ........................................................ 1
28 U.S.C. § 1343 ........................................................ 1
28 U.S.C. § 1367 .................................................. 1, 43, 58
28 U.S.C. § 2106 ...................................................... 56, 58
42 U.S.C. § 1983 ...................................................... passim
42 U.S.C. § 1997e(e) .................................................... 32
Fed. R. App. P. 4(a) ..................................................... 1
Fed. R. App. P. 32 ....................................................... 60
Fed. R. App. P. 39 ....................................................... 59
Fed. R. Civ. P. 10(c) .................................................... 17
Fed. R. Civ. P. 12(b)(6) ............................................ passim
Fed. R. Civ. P. 15(a) ................................................ 39
Fed. R. Civ. P. 54(c) .................................................. 54, 55
Fed. R. Civ. P. 56 ..................................................... 2, 13, 16
Fed. R. Civ. P. 59(e) ........................................ 1, 2, 6, 39, 57, 58
Fed. R. Civ. P. 65(b) ........................................ 4, 37
Fed. R. Evid. 201 ........................................................ 37
Fed. R. Evid. 404(b) .................................................. 21, 22, 34
La. C.C. art. 2315 ............................................. 4, 15, 41, 42, 43
La. C.C. art. 2315(A) .................................................... 41
La. C.C. art. 2320 ...................................................... 42, 43
La. R.S. 14:36 ........................................................ 41
La. R.S. 14:122 ........................................................ 41
La. R.S. 14:134 ........................................................ 41

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343, as Plaintiff-Appellant Hugh Brian Street brought claims under 42 U.S.C. § 1983 for violations of his constitutional rights, along with supplemental state law claims under 28 U.S.C. § 1367.

This Court has appellate jurisdiction under 28 U.S.C. § 1291. The District Court entered a final Judgment dismissing Appellant's claims with prejudice on March 5, 2026 (ROA.560). Under Fed. R. Civ. P. 59(e), Appellant had 28 days to file a Motion to Alter or Amend the Judgment. Appellant timely filed a Fed. R. Civ. P. 59(e) motion on April 2, 2026 (the 28th day) (ROA.561-563), which tolled the time to file a Notice of Appeal pursuant to Fed. R. App. P. 4(a)(4)(A)(iv).

The District Court entered an Order denying the Fed. R. Civ. P. 59(e) motion on April 29, 2026 (ROA.593). Appellant timely filed a Notice of Appeal on May 27, 2026 (ROA.594–597), well within the 30-day window required by Fed. R. App. P. 4(a)(1)(A). The Notice of Appeal explicitly designated all adverse rulings in this action: (1) the final Judgment dismissing all claims with prejudice entered on March 5, 2026 (ROA.560); (2) the underlying Memorandum Ruling entered on March 5, 2026 (ROA.538–559); (3) the Memorandum Order denying emergency

protective relief entered on December 1, 2025 (ROA.52–53); (4) the Memorandum Order denying expedited discovery and service of process entered on December 10, 2025 (ROA.409–411); (5) the Memorandum Order on Reconsideration entered on December 12, 2025 (ROA.412–414); and (6) the Order denying the Fed. R. Civ. P. 59(e) motion entered on April 29, 2026 (ROA.593), while expressly excluding the non-opposed consent dismissal of LSLEP (ROA.537), thereby securing complete appellate jurisdiction over all contested issues under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

Whether the District Court erred in failing to accept the allegations of the complaint as true, substituting its own factual findings of a "voluntary" departure in direct contradiction to the complaint's allegations, converting a Rule 12(b)(6) pleading review into a Fed. R. Civ. P. 56 summary judgment, and ignoring Appellant's verified exhibits in violation of Fed. R. Civ. P. 10(c).

Whether the District Court erred in dismissing the *Monell* municipal liability and related claims by analyzing a strawman right to an internal investigation rather than the departmental custom of impunity as the moving force, and ignoring controlling ratification and deliberate indifference precedent.

Whether the District Court erred in holding no Fourth Amendment seizure occurred when Deputy Christ countermanded his own order to leave under threat of jail, demanded identification, and postured his service weapon, and recharacterizing this coerced submission as voluntary and bypassing *California v. Hodari D.*, 499 U.S. 621 (1991).

Whether the District Court erred in dismissing the Fourth Amendment excessive force claim based on absence of physical contact, in conflict with Fifth Circuit precedent.

Whether the District Court erred in dismissing the First Amendment retaliation claim by applying Eighth Amendment prisoner/PLRA standards to a free citizen, failing to address the First Amendment Right to Redress Grievances, and improperly dismissing the Equal Protection claim.

Whether the District Court abused discretion in denying emergency relief based on the demonstrably false finding that no verified complaint or Rule 65 certification existed.

Whether the District Court committed a per se abuse of discretion by silently denying Appellant's ripe, co-pending motions for leave to amend and appointment of counsel, and dismissing the case with prejudice.

Whether the District Court erred in holding that Louisiana criminal statutes do not define the standard of care for civil fault under La. C.C. art. 2315, and dismissing supplemental state-law claims with prejudice.

Whether the District Court erred in granting qualified immunity and dismissing prospective declaratory and injunctive relief for lack of Article III standing.

## STATEMENT OF THE CASE

### A. Procedural History

On November 25, 2025—four days after VPSO administration refused to accept his criminal complaint and admitted to a "10-Day Auto-Delete" policy for building security video—Plaintiff-Appellant Hugh Brian Street ("Appellant") rushed to federal court to prevent destruction of evidence over the Thanksgiving holiday. Appellant filed a civil rights action under 42 U.S.C. § 1983 against Sheriff Sam Craft (in his individual and official capacities), Chief Calvin Turner, and Deputy Chuck Christ (collectively, "Appellees"), alongside supplemental state law claims (ROA.10-14). Concurrently, Appellant filed an Emergency Motion for a Temporary Restraining Order to prevent spoliation of evidence, accompanied by Certification pursuant to Fed. R. Civ. P. 65(b)(1)(B) (ROA.36-37). He also filed a Motion for Appointment of Counsel (ROA.32) and Motion for Expedited

Discovery (ROA.45), and manually filed Exhibit D (Files 1–6 in MP4 format) on a USB flash drive (ROA.29–31).

On December 1, 2025, the District Court denied emergency relief (ROA.52-53), reasoning the "duty to preserve" evidence arises upon notice, concluding court intervention was unwarranted.

On December 5, 2025, Appellant filed an Amended Verified Complaint (ROA.331-341), incorporating factual allegations and verified exhibits establishing a 14-year pattern of retaliation.

On January 7, 2026, to ensure procedural compliance, Appellant filed a Motion for Leave to Amend (ROA.421-424) requesting the Court formally recognize the First Amended Verified Complaint (ROA.331–341) as the operative pleading.

Due to unmitigated safety concerns stemming from an unpunished aggravated assault and Deputy Christ's 12-year vendetta, Appellant requested immediate ruling on a Safety TRO (ROA.38–43). On December 12, 2025, the District Court issued a Memorandum Order denying the Safety TRO and denying reconsideration of the Spoliation TRO, incorrectly claiming that Appellant failed to provide a "verified complaint" or "written certification" regarding notice (ROA.412-414).

On January 22, 2026, Appellees filed a Motion to Dismiss pursuant to Rule 12(b)(6) (ROA.446–480). On February 4, 2026, Appellant filed a timely Memorandum in

Opposition, asserting an Alternative Motion for Leave to Amend to cure any perceived pleading deficiencies prior to dismissal (ROA.487-521).

On March 5, 2026, without ruling on the pending Motion for Appointment of Counsel (ROA.32) or the two pending Motions for Leave to Amend (ROA.421–424; ROA.487, 520), the District Court issued a Memorandum Ruling and final Judgment granting Appellees' Motion to Dismiss and terminating the case with prejudice (ROA.538–560).

On April 2, 2026, Appellant timely filed a Fed. R. Civ. P. 59(e) Motion to Alter or Amend the Judgment, alerting the Court to its errors of law and fact, including impermissible weighing of evidence at the pleading stage and the silently denied Leave to Amend (ROA.561-572). On April 29, 2026, the District Court denied the Fed. R. Civ. P. 59(e) motion without correcting its factual record (ROA.593). This appeal followed.

**B. Statement of Facts**

**1. The 14-Year Pattern of Retaliation and Impunity Policy**

The events giving rise to this appeal, as set forth in the First Amended Verified Complaint, are the culmination of a 14-year pattern of retaliation and impunity by the Vernon Parish Sheriff's Office (VPSO) (ROA.333–334). Appellant pleaded this custom of abuse was foundationalized in 2012 when VPSO deputies actively

adopted a State Trooper's tyrannical declaration that officer discretion supersedes law—"Not if I decide any different"—by swarming Appellant and confining him in a Restraint Chair for a weekend (ROA.333–334 at ¶ 13–15; ROA.506–507). Appellant alleged following the 2012 incident, VPSO refused to produce the exculpatory security video, claiming it deleted under a 10-day retention policy, and deputies faced no meaningful investigation or discipline for either that event or a 2013 excessive force altercation (ROA.333–334 at ¶ 16–19; ROA.506–507, 510). Appellant pleaded despite constructive notice of Deputy Christ's propensity for aggression in 2013, Sheriff Craft deliberately retained him (constructive notice of Christ's conduct is reinforced by the controversial public 2013 prosecution, as detailed in Exhibit B at ROA.104–106), perpetuating a custom of impunity (ROA.334 at ¶ 18–24; ROA.505–507, 512–513). Appellant alleged this custom was structurally enforced by a departmental "We do not investigate our own" policy and automatically overwriting security video of violations faster than citizens can seek legal recourse (ROA.337 at ¶ 42–45, 338; ROA.506–507, 509–510).

This same custom of impunity—as a moving force emboldening Deputy Christ's conduct—was explicitly ratified following the constitutional violations at issue in this appeal. On November 21, 2025, Appellant attempted to provide objective video evidence and file formal criminal complaints regarding the unconstitutional

stop. In response, Chief Calvin Turner, the supervisor of operations, viewed the video evidence but refused to accept the complaints, declaring: "We do not investigate our own" (ROA.337 at ¶ 42–44; ROA.509–510). During this same meeting, Sheriff Sam Craft personally refused to review the video evidence (ROA.337 at ¶ 43). This executed custom, compounded by Sheriff Craft's failures to discipline or meaningfully investigate, and January 6, 2026 public statement vowing to defend his deputies "with everything that I have" against citizen complaints questioning officer integrity, formally ratified the longstanding custom of impunity (ROA.337 at ¶ 42–45, 338; ROA.512–513; ROA.526).

### 2. The Initial Unconstitutional Seizure (*Terry v. Ohio*)

On November 18, 2025, Mr. Street positioned his vehicle on an adjacent public roadway to peacefully exercise his right to record a VPSO traffic stop from a safe distance (ROA.335 at ¶ 25). Appellant was not interfering with the stop or violating any law. Despite absence of reasonable suspicion or probable cause, Deputy Christ abandoned his primary traffic stop—leaving a handcuffed prisoner behind—and issued arbitrary, contradictory commands (Exhibit D, File 1 at 0:37, ROA.29–31; ROA.508, 514). He initially ordered Appellant to leave under threat of jail ("If you don't want to go to jail, you better get in your car and drive off"), ordering Appellant to drive or be jailed, then declared Appellant would be jailed for a "suspended license". When Appellant disputed the suspension claim, Deputy

Christ insisted, "Yes you are... Just a reminder, I've advised you to drive away from this traffic stop," again ordering Appellant to drive (ROA.335 at ¶ 26–28). Appellant submitted to this show of authority and threat of jail by verbally agreeing to comply ("I'll do that"), stopping his recording, and turning to enter his vehicle to leave as ordered, completing a first seizure (coerced departure). As Appellant was in the physical process of complying under this duress, Deputy Christ countermanded his command to leave, shouting "hold up" thereby detaining Appellant in a second, investigatory detention (ROA.335 at ¶ 29–30; ROA.502).

During this second detention, Deputy Christ demanded Appellant's identification. Having abandoned the "suspended license" pretext, Deputy Christ cycled through two new fabricated justifications, both objectively disproven by the record: (1) "expired inspection sticker"—objectively disproven by the vehicle's valid Texas registration, which Deputy Christ admitted knowing ("I know it's a Texas registration sticker"); and (2) "obstructed license plate"—objectively disproven by video and photographic evidence showing the plate was completely unobstructed and Deputy Christ physically walked past it (ROA.335–336 at ¶ 31–32; Exhibit A, ROA.17–18; Exhibit D, File 1 at 0:40, File 6, ROA.29–31; ROA.502–503). As Mr. Street compliantly reached for his identification, Deputy Christ placed his hand on his holstered weapon. Appellant fearfully submitted to this show of force, yielding to the weapon posturing and making an excited utterance: "Whoa, hey man chill

out... you're reaching for your weapon" (ROA.336 at ¶ 33–34). Mr. Street did not attempt to flee or leave; rather, he remained in place, fully seized and compliant while reaching to retrieve and provide his identification, until Deputy Christ subsequently ordered him to "drive off" (ROA.335–336 at ¶ 32; Exhibit D, File 2 at 0:03, ROA.29–31). Contemporaneously demonstrating clear retaliatory animus from the 2013 violent altercation, Deputy Christ stated: "I done been through this shit with you before, Brian" (ROA.336 at ¶ 35). The "solicitation paradox" objectively proved the Deputy never believed the license was suspended; despite initiating the first detention on that basis, he handed the identification back without running a check via radio or computer, and ordered Appellant to "drive off," thereby ordering a driver he claimed was suspended to operate a vehicle for a third time (ROA.335–336 at ¶ 26, 28, 32, 36; Exhibit D, File 2 at 0:03, ROA.29–31; ROA.498, 502).

**3. The Retaliatory Threat of Lethal Force and Verbal Threat of Incarceration**

Following these detentions, under duress Appellant complied with the order to leave. Shortly thereafter, Appellant returned on foot, remaining at a lawful distance of approximately 50 yards to safely resume his First Amendment protected observation (ROA.335–336 at ¶ 29, 32, 36). At this extended distance, Appellant was physically incapable of obstructing the traffic stop. Nevertheless, Deputy Christ initiated another retaliatory encounter. Staring Appellant down from across

the distance, Deputy Christ shouted: "You just ain't gonna quit before you go to jail for interfering ... well you're fixing to find out," establishing a direct verbal threat of incarceration for exercising protected speech (ROA.336 at ¶ 37–38; Exhibit D, File 3 at 2:10, ROA.29–31). Demonstrating that Appellant was not interfering, Deputy Christ returned to his duties. Subsequently, while speaking on his cell phone with Chief Calvin Turner, Deputy Christ acknowledged Appellant's filming ("cell phone") and again deliberately placed his hand on his service weapon while staring at Appellant (ROA.336 at ¶ 39–40; Exhibit D, File 5 at 10:37, ROA.29–31; ROA.498, 510–511). This weapon posturing represented a continuous show of lethal authority. Mr. Street's submission to this threat of force was immediate and physiological, as captured on the video recording where Appellant began stuttering under the extreme stress (Exhibit D, File 5 at 10:39, ROA.29–31). Mr. Street did not flee or leave because of the weapon posturing; rather, he remained standing at his position, fully seized by the intimidation. These gratuitous threats of lethal force and verbal threats of arrest caused severe psychological injury, establishing a direct First Amendment chilling effect (ROA.339; ROA.509, 514).

**4. The Administrative Meeting, Impunity, and Spoliation**

On November 21, 2025, Mr. Street met in person with Sheriff Craft and Chief Turner. During this meeting, Sheriff Craft refused to view the video evidence of the roadside encounters, and Chief Turner, after viewing the video, refused to

accept Appellant's criminal complaints regarding Deputy Christ's conduct, declaring: "We do not investigate our own" (ROA.337 at ¶ 42–44; ROA.509–510, 512). Chief Turner further admitted the department's building security video is automatically deleted after ten days (ROA.337 at ¶ 45; ROA.499, 507). To prevent potential deletion of this meeting's video, Mr. Street filed an emergency motion to preserve evidence (ROA.36–37) and served the defendants with written notices via hand-delivery and certified mail specifically demanding the preservation of the building video (ROA.337 at ¶ 45; Exhibit C, ROA.345–347). On November 26, 2025, Appellant served Sheriff Craft with a Notice of Filing, copy of original complaint (ROA.10–14), and the Emergency Preservation Motion; the Sheriff accepted service stating, "Consider me served" (ROA.36–37; ROA.54–59). Sheriff Craft ratified this longstanding custom of impunity through his willful blindness in refusing to view the video evidence, his failure to investigate the incidents despite receiving this actual notice of the violations by Deputy Christ and Chief Turner, and his January 6, 2026 public press release vowing to defend his deputies "with everything that I have" while falsely boasting "not a single tip has been ignored" (ROA.337 at ¶ 42–45; ROA.512–513; ROA.525–526).

## SUMMARY OF ARGUMENT

This appeal presents a District Court abandoning the leniency required for pro se litigants, impermissibly stepping into the role of a jury to protect law enforcement

defendants from civil liability, and committing a cascade of reversible legal and factual errors.

The District Court erred by converting a Rule 12(b)(6) pleading review into a Fed. R. Civ. P. 56 summary judgment standard. The Court repeatedly demanded "proof" and "success on the merits" prior to the commencement of discovery. It further violated Fed. R. Civ. P. 10(c) by severing and completely ignoring Appellant's verified photographic and manually filed video exhibits, which objectively disproved the pretexts for the stop.

Second, the District Court gutted Appellant's Fourth Amendment claim by rewriting the record. Despite Appellant pleading he agreed to leave 'facing threats of jail' before Deputy Christ commanded 'hold up', seized his ID while placing a hand on his weapon, and Appellant drove away as ordered, the Court held 'no seizure occurred.' Recharacterizing coerced submission as a voluntary departure 'of his own accord' violates *California v. Hodari D.*

Third, the District Court erred by relying on Eighth Amendment prisoner cases (*McFadden v. Lucas*, *Gibson v. Jean-Baptiste*) to dismiss a free citizen's First Amendment retaliation claim. Under *Keenan v. Tejeda* and *Gonzalez v. Trevino*, posturing a service weapon and threatening arrest in retaliation for speech is an actionable chilling injury. The Court further erred by failing to address Appellant's

First Amendment Right to Petition, and dismissing the 'Class of One' Equal Protection claim despite proof of a 12-year personal vendetta and a systemic policy investigating all citizen complaints except those against deputies.

Fourth, the District Court committed a documented abuse of discretion by denying Appellant's Emergency Safety TRO based on the false assertion that Appellant failed to file a 'verified complaint' or a Rule 65 'certification'. In truth, Appellant filed two Verified Complaints detailing physical threats and a Rule 65 written certification of notice. Denying physical protection based on fictitious procedural defects was reversible error.

Fifth, the District Court abused discretion by denying emergency video preservation relief under the naive assumption that VPSO would preserve evidence on its own. Because VPSO maintains an automated 10-day video deletion policy, the court's refusal to issue a preservation order exposed administrative building video to a severe risk of spoliation, requiring remand for a preservation hearing.

Sixth, the District Court erred in dismissing the *Monell* claim by setting up a strawman. The Court analyzed whether Plaintiff has "entitlement to an internal investigation," ignoring the policy of impunity was the moving force that emboldened Deputy Christ to violate Plaintiff's rights. The Court further erred by granting qualified immunity to Sheriff Craft and Chief Turner falsely claiming "no

personal involvement," completely ignoring Turner's direct personal participation in blocking Appellant's complaints and Craft's deliberate indifference.

Finally, the District Court committed an egregious error of state law by claiming civil assault, malfeasance in office, and public intimidation are not recognized torts in Louisiana because they are defined in criminal statutes. This completely ignores that La. C.C. art. 2315 is the broad fountainhead of all tort liability, and Louisiana courts routinely use criminal definitions to establish the standard of care for civil "fault." By silently terminating the case with prejudice while ignoring Plaintiff's ripe motions for counsel and leave to amend, the District Court committed a per se abuse of discretion.

## ARGUMENT

### I. THE DISTRICT COURT UNLAWFULLY CONVERTED THE RULE 12(B)(6) STANDARD AND VIOLATED Fed. R. Civ. P. 10(C) (ISSUE 1)

Standard of Review

This Court reviews de novo a dismissal under Rule 12(b)(6), accepting all well-pleaded facts as true and viewing them in the light most favorable to the plaintiff. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023). Denials of emergency relief and

failures to rule on pending motions are reviewed for abuse of discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Pro se pleadings and briefs are construed liberally. *Riley v. School Board of Union Parish*, 379 F. App'x 335, 341 (5th Cir. 2010).

First, the District Court reversibly erred by converting Rule 12(b)(6) review under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), into a de facto Fed. R. Civ. P. 56 summary judgment analysis without notice or discovery. Under Fed. R. Civ. P. 12(d), considering matters outside pleadings or demanding summary-judgment proof requires conversion to Fed. R. Civ. P. 56. Specifically, to dismiss failure-to-train claims, the Court imported the summary-judgment standard from *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001), demanding that Appellant produce 'proof' and 'establish' deliberate indifference before discovery (ROA.558). Conflating summary-judgment proof under Fed. R. Civ. P. 56 with plausible allegations under Rule 8(a) violates *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163 (1993).

Second, the District Court reversibly erred by resolving factual disputes against Appellant at the Rule 12(b)(6) stage. Specifically, the Court asserted as established facts that Deputy Christ 'detained Plaintiff for having an expired inspection and an obstructed license plate' (ROA.539), that Christ 'verified the suspension of his

license' (ROA.543), and that Appellant departed 'of his own accord' (ROA.551). Yet Appellant explicitly pleaded that the inspection pretext was fabricated because the vehicle bore a valid Texas registration sticker (which Christ admitted knowing), the license plate was unobstructed (Exhibit A, ROA.17–18; Exhibit D, File 6, ROA.29–31), Christ failed to verify any suspension, and Appellant agreed to leave under threat of jail (ROA.335 at ¶ 29). Indeed, Defendants never asserted in their motion that Christ verified any suspension; the Court manufactured this 'fact' sua sponte while converting Appellees' unproven assertions of roadside pretexts into judicial findings and ignoring Appellant's explicit pleading that he yielded under threat of arrest. Resolving factual disputes against the plaintiff at the pleading stage violates *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Furthermore, the District Court erred by severing Appellant's verified exhibits from the complaint. Under Fed. R. Civ. P. 10(c), exhibits attached to a complaint are 'part of the pleading for all purposes,' including photographs and video recordings. See *Hart v. Hairston*, 343 F.3d 762, 764 n.1 (5th Cir. 2003) (physical exhibits part of pleadings); *Bogie v. Rosenberg*, 705 F.3d 603, 609 (8th Cir. 2013) (video attachments considered under Fed. R. Civ. P. 10(c)). Uncontroverted video and photographic exhibits override contradictory assertions on a motion to dismiss. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court reversibly erred by ignoring the photograph of Appellant's unobstructed license plate (Exhibit A, ROA.17–18)

and filed video evidence (Exhibit D, File 6, ROA.29–31) conclusively disproving reasonable suspicion for the stop.

## II. THE DISTRICT COURT ERRED BY DISMISSING THE *MONELL* CLAIM BY SETTING UP A STRAWMAN AND IGNORING CONTROLLING RATIFICATION PRECEDENT (ISSUE 2)

Standard of Review

This Court reviews de novo a district court's dismissal of a *Monell* municipal liability claim under Rule 12(b)(6). *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023).

To establish municipal liability under 42 U.S.C. § 1983, a plaintiff must plead and prove three elements: (1) a policymaker; (2) an official policy or custom; and (3) a constitutional violation whose "moving force" is that policy or custom. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); see also *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). While municipal liability typically requires a persistent custom, a single decision or official declaration by a policymaker with final delegated authority establishes municipal liability. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); see also *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010). Therefore, a policymaker's active ratification of a

constitutional violation simultaneously establishes individual supervisory liability under § 1983 and municipal liability under *Monell*.

First, the District Court committed a major legal error by setting up a strawman to dismiss the *Monell* claim. In analyzing municipal liability and declaratory relief, the Court focused on whether a citizen is "entitled to have an internal investigation conducted" (ROA.547–548, 557). Appellant never asserted a standalone constitutional right to an investigation. Rather, Appellant pleaded the VPSO's official policy of impunity ("We do not investigate our own") was the moving force that emboldened Deputy Christ to violate his First and Fourth Amendment rights, because the Deputy was guaranteed absolute administrative protection (ROA.337–338 at ¶ 43–44; see also ROA.505–506, 510–511). By defending the Sheriff's failure to investigate by asserting that a citizen has no "entitlement to the conducting of an internal investigation" (ROA.469–470; ROA.505), Appellees and the District Court effectively conceded the very existence of the "policy of impunity" alleged by Appellant. By ruling that the Sheriff has no obligation to investigate deputy misconduct, the District Court converted an unconstitutional custom of impunity into a judicially sanctioned rule of law.

The District Court further erred by ruling that Chief Turner's recorded statement—"We do not investigate our own"—was merely a "single isolated comment" (ROA.548). Chief Turner was acting with delegated authority as Chief of

Operations for the Sheriff's Office concerning citizen complaints (Exhibit D, File 5 at 20:23, ROA.29–31), and his statement, accompanied by his physical refusal to accept formal complaints, was direct execution of a departmental custom of impunity. Under *Pembaur* and *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010), an official enforcement action by a decisionmaker with delegated authority establishes municipal liability. Here, Chief Turner's statement and actions were contemporaneously ratified by Sheriff Craft—the final policymaker—who historically failed to discipline, refused to meaningfully investigate, personally refused to review the video evidence, maintained the "10-Day Auto-Delete" custom, and subsequently issued a public vow to defend his deputies "with everything that I have" against citizen claims questioning the integrity of his department or deputies (ROA.337 at ¶ 42–45; ROA.499, 507, 512; ROA.525–526). Under *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985), a final policymaker's subsequent failure to discipline, investigate, or reprimand officers, and his active insulation of subordinate misconduct, serves as direct evidence of a pre-existing custom of impunity. Therefore, Chief Turner's enforcement of the custom and Sheriff Craft's ratification state a fully plausible *Monell* claim, requiring reversal.

The District Court's reliance on *Peterson v. City of Fort Worth*, 588 F.3d 838 (5th Cir. 2009), and *Medina v. Ortiz*, 623 Fed. App'x 695 (5th Cir. 2015), is misplaced.

In those cases, the Fifth Circuit rejected ratification because the policymaker merely offered a routine, post-hoc defense of a single officer in an isolated altercation. Here, in stark contrast, Sheriff Craft did not merely defend an isolated subordinate. As Appellees conceded in their Reply Memorandum, Sheriff Craft issued a department-wide public declaration in direct response to widespread community concerns regarding allegations that VPSO deputies participated in crimes or improperly handled criminal investigations—including murders and missing persons cases (ROA.525–526; ROA.531). Far from an informal comment, Sheriff Craft's public vow to "stand up and defend the employees and this department with everything that I have" whenever officer integrity is questioned constitutes an official policymaker's explicit affirmation of an institutional policy of blanket impunity (ROA.526, 531). Under *Grandstaff*'s controlling exception, this active insulation of subordinates and systematic refusal to investigate citizen complaints served as the moving force behind Deputy Christ's unconstitutional conduct.

Second, Appellant pleaded the 2011/2013 history as Fed. R. Evid. 404(b) background evidence proving the 14-year existence of this exact "Policy of Impunity." The District Court committed a manifest error of law by holding that these prior incidents were prescribed and could not be considered (ROA.541). Under *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002),

the statute of limitations does not bar a litigant from using prior time-barred acts as "background evidence in support of a timely claim." By using these historical facts under Fed. R. Evid. 404(b) to establish the Sheriff's long-standing custom of impunity and Deputy Christ's retaliatory motive, Appellant satisfied the pleading requirements. The District Court's refusal to consider this background evidence at the 12(b)(6) stage constitutes reversible error.

Third, the District Court erred by dismissing Appellant's municipal liability claim based on deliberate indifference in the failure to discipline, supervise, or train (ROA.557–558). In the Fifth Circuit, a failure to supervise or discipline establishes municipal liability when the policymaker has actual or constructive notice of a pattern of similar violations but deliberately fails to act, directly causing the constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 580 (5th Cir. 2001); see also Goodman v. Harris Cnty., 571 F.3d 388, 395 (5th Cir. 2009). Here, Sheriff Craft had extensive notice of deputy misconduct—including notice of unconstitutional deputy abuse stemming from the 2012 restraint chair incident and formal evidence requests (ROA.333–334 at ¶ 14–17; ROA.512), and constructive notice of Deputy Christ's propensity for violence and retaliatory aggression arising from the 2013 excessive force altercation and subsequent state court litigation (ROA.60–62; ROA.334 at ¶ 18–23; ROA.512–513). Sheriff Craft's deliberate retention, failure to supervise, and refusal to discipline Deputy Christ despite this

notice actively maintained a departmental custom of impunity, directly causing the violations by guaranteeing Deputy Christ administrative protection (ROA.337–338 at ¶ 42–45; ROA.511–512).

## III. THE DISTRICT COURT ERRED IN RULING NO SEIZURE OCCURRED BYPASSING *CALIFORNIA V. HODARI D.* AND MISAPPLYING MORRIS (ISSUE 3)

Standard of Review

This Court reviews de novo a Rule 12(b)(6) dismissal of a Fourth Amendment unlawful seizure claim. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023).

A Fourth Amendment seizure occurs when an officer restrains a citizen's liberty through physical force or show of authority. *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968); California v. Hodari D., 499 U.S. 621, 626 (1991). The District Court concluded 'the facts alleged by Plaintiff do not rise to the level of a seizure' (ROA.543), asserting Appellant departed 'of his own accord' (ROA.551). This error conflated two distinct encounters, bypassed Supreme Court precedent, and misapplied Fifth Circuit law.

### 1. The First Encounter

During the first encounter, Deputy Christ abandoned his primary traffic stop and immediately threatened Appellant with jail ("If you don't want to go to jail, you better get in your car and drive off") (Exhibit D, File 1 at 0:32, ROA.29–31; ROA.335 at ¶ 26). When Appellant asserted his First Amendment right to record, Deputy Christ claimed Appellant was "driving under suspension" before approaching the vehicle or running the plate (Exhibit D, File 1 at 0:36, ROA.29–31; ROA.335 at ¶ 27–28). Appellant yielded to this jail threat verbally ("I'll do that"), stopped his recording, and turned to enter his vehicle, submitting to the show of authority and completing a first Fourth Amendment seizure (Exhibit D, File 1 at 1:08, ROA.29–31; ROA.335 at ¶ 29). As Appellant complied under duress, Deputy Christ countermanded his command by shouting "hold up!" and detaining Appellant in a second investigatory stop (ROA.335 at ¶ 30; ROA.502). Deputy Christ abandoned the suspension claim, demanding identification based on two new shifting fabricated pretexts—an expired inspection sticker and an obstructed license plate—to which Appellant submitted (ROA.335 at ¶ 31–32; ROA.502–503, 508).

When Deputy Christ placed his hand on his holstered weapon during the ID demand, Appellant submitted to this show of force by recoiling with an immediate excited utterance: "Whoa, hey man chill out... I'm reaching to get you my ID and you're reaching for your weapon" (ROA.336 at ¶ 33–34; see also ROA.504, 509).

Producing identification under this display of lethal authority constitutes submission under *California v. Hodari D.*, 499 U.S. 621, 626 (1991). The District Court impermissibly recharacterized Appellant's submission as voluntary, writing Appellant left 'of his own accord' (ROA.551), ignoring Appellant pleaded he agreed to leave under threat of jail (ROA.335 at ¶ 29; ROA.502) and submitted to weapon posturing (ROA.336 at ¶ 33–34; ROA.504, 509)—neither of which constitutes voluntary departure as a matter of law.

Because Appellant was beside an adjacent public road and not interfering (Exhibit D, File 1 at 0:16, ROA.29–31; ROA.335 at ¶ 25), Deputy Christ lacked objective reasonable suspicion or probable cause for a Terry stop (ROA.502–503, 508). A warrantless stop is unlawful unless justified at its inception by specific articulable facts creating reasonable suspicion. Alexander v. City of Round Rock, 854 F.3d 298, 303 (5th Cir. 2017); *Terry v. Ohio*, 392 U.S. 1, 30 (1968); see also *Lupis v. City of Texas City*, No. 23-40445, 2024 WL 4680224, at *3 (5th Cir. Nov. 5, 2024). Here, the 'suspended license,' 'expired inspection sticker,' and 'obstructed license plate' claims were fabricated pretexts (ROA.508), objectively disproven by Appellant's unobstructed plate (Exhibit A, ROA.17–18; ROA.335 at ¶ 31; ROA.498), the valid Texas registration sticker that Deputy Christ admitted recognizing (ROA.335 at ¶ 31), and the fact the Deputy ordered a supposedly suspended driver to operate a vehicle and drive away four separate times (Exhibit

D, File 1 at 0:32, 0:43, 1:04, File 2 at 0:04, ROA.29–31; ROA.335 at ¶¶ 26, 29, 32) without running a check via radio or computer (Exhibit D, File 2, ROA.29–31; ROA.335 at ¶ 32; ROA.502).

**2. The Second Encounter**

During the second encounter, Appellant stood 50+ yards away to observe and record (ROA.336 at ¶¶ 36–38; ROA.499, 509). Deputy Christ initiated a second unconstitutional show of authority, shouting: "You just ain't gonna quit before you go to jail for interfering ... well you're fixing to find out" (Exhibit D, File 3 at 2:10, ROA.29–31; ROA.336 at ¶ 37), then returned to his duties, subsequently staring Appellant down and posturing his weapon while speaking on a cell phone with Chief Turner (Exhibit D, File 5 at 10:37, ROA.29–31; ROA.336 at ¶¶ 38–40; ROA.498, 510–511, 514).

Appellant's submission was immediate and physiological. Appellant experienced severe physiological distress under threat of lethal force, audibly stuttering during his contemporaneous narration as Deputy Christ gripped his weapon (Exhibit D, File 5 at 10:39, ROA.29–31; ROA.30; ROA.339; ROA.509, 514). In this moment, Appellant stood fully seized by this display of lethal authority, unable to turn his back on an armed officer posturing with a firearm (ROA.511).

Under *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), a seizure occurs when an officer's show of authority leads a reasonable person to believe their freedom of movement is restricted, explicitly identifying 'the display of a weapon by an officer' as a primary factor. Posturing a lethal weapon is the ultimate show of force; no reasonable citizen facing an explicit threat of incarceration followed by armed posturing would feel free to turn their back or walk away (ROA.510–511). Because Appellant's freedom of movement was restrained by this show of deadly force, and Appellant could not safely leave or terminate the encounter while under the physiological distress of the officer's weapon posturing (Exhibit D, Files 3–5, ROA.29–31; ROA.336 at ¶¶ 36–39; ROA.510–511), this constituted a Fourth Amendment seizure under Mendenhall and *California v. Hodari D.*, 499 U.S. 621, 626 (1991).

The district court also bypassed *United States v. Morris*, 40 F.4th 323, 327 (5th Cir. 2022), which reaffirmed an armed officer's command to "hold up" carries an objective show of authority leading a reasonable citizen to believe they are not free to leave. The district court erred by inventing the fact that Deputy Christ "verified the suspension of his license" (ROA.543), then ruling that "the facts alleged . . . do not rise to the level of a seizure" (ROA.543) and falsely characterizing Appellant as departing "of his own accord" (ROA.551). This blanket dismissal completely ignored that Deputy Christ executed three distinct, unconstitutional Fourth

Amendment seizures across two separate encounters: first, by threatening jail and ordering departure (ROA.335 at ¶¶ 26–29; ROA.502); second, by issuing the "Hold up" countermand and weapon posturing during the ID demand (ROA.335–336 at ¶¶ 30–34; ROA.502–504); and third, by threatening incarceration and staring Appellant down while posturing his firearm (ROA.336 at ¶¶ 36–39; ROA.509–511, 514). Because Appellant plausibly alleged that each seizure was executed through coercive shows of authority and displays of lethal force lacking any reasonable suspicion or probable cause (ROA.502–504, 508–509), the District Court erred in dismissing Count II under Rule 12(b)(6).

## IV. THE DISTRICT COURT ERRED BY DISMISSING THE FOURTH AMENDMENT EXCESSIVE FORCE CLAIM ERRONEOUSLY HOLDING THAT EXCESSIVE FORCE REQUIRES PHYSICAL CONTACT (ISSUE 4)

Standard of Review

This Court reviews de novo a Rule 12(b)(6) dismissal of a Fourth Amendment excessive force claim. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023).

The District Court reversibly erred in dismissing Appellant's excessive force claim (Count III) because "Plaintiff has failed to allege any physical contact" (ROA.543).

Physical contact is not required to state an excessive force claim. *Flores v. City of Palacios*, 381 F.3d 391, 397–98 (5th Cir. 2004) (holding physical contact is not a required element). While many cases involve pointing a firearm, the constitutional violation is the unreasonable display of authority to intimidate a non-threatening citizen. Placing a hand on a holstered firearm is an objective, coercive show of force. See *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (listing 'the display of a weapon by an officer' as an objective factor establishing a coercive seizure); *United States v. Morris*, 40 F.4th 323, 327 (5th Cir. 2022) (recognizing an officer placing a hand on a holstered weapon is part of the objective show of authority). Where a citizen is compliant and poses zero threat, grabbing or posturing a weapon is objectively unreasonable.

In *Petta v. Rivera*, 143 F.3d 895, 905 (5th Cir. 1998), this Court held an officer's threat of lethal force states an actionable excessive force claim without physical contact, reasoning that armed threats cause significant psychological injury. Similarly, in *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1231 (5th Cir. 1988), this Court held pointing a gun at a non-threatening bystander violates the Fourth Amendment, warning that "officers must be careful to avoid unnecessary displays of force." Placing a hand on a weapon constitutes a direct threat of lethal force, governed by the same Fourth Amendment standards as unholstering, and is fully actionable when it intimidates a compliant citizen.

The physical-contact requirement is further refuted by *Barnes v. Felix*, 145 S. Ct. 1353 (2025), where the Supreme Court unanimously rejected the Fifth Circuit's "moment-of-threat" rule and mandated evaluating the "totality of the circumstances" leading up to and during the use of force. Here, the totality of circumstances includes Deputy Christ abandoning a primary traffic stop and leaving his handcuffed prisoner behind (Exhibit D, File 1 at 0:37, ROA.29–31; ROA.335 at ¶ 28; ROA.508–509), fabricating pretexts to target a peaceful observer (ROA.335 at ¶ 31; ROA.508), explicitly admitting retaliatory animus ("I done been through this shit with you before, Brian") (ROA.336 at ¶ 35; ROA.497, 504, 520), and posturing his weapon at a citizen complying with an ID demand and again while posing zero threat 50 yards away (ROA.335–336 at ¶¶ 26–39; ROA.498, 508–511). Under Barnes, Deputy Christ's display of lethal force was objectively unreasonable from inception, and the district court's isolated approach was legal error (ROA.543).

Appellant pleaded that while complying with ID demands, Deputy Christ gripped his weapon and postured to draw it, causing severe distress and prompting an immediate excited utterance: "Whoa, hey man chill out... you're reaching for your weapon" (ROA.336 at ¶¶ 33–34; ROA.498, 504, 509). Deputy Christ staring Appellant down from 50+ yards and grabbing his weapon a second time was a gratuitous show of lethal authority (Exhibit D, File 5 at 10:37, ROA.29–31;

ROA.336 at ¶¶ 36–39; ROA.498, 509–511). Appellant was peaceful, at a safe distance, and posed zero threat (ROA.335–336 at ¶¶ 25, 36, 38; ROA.499); posturing lethal force here unreasonably served no legitimate purpose. Holding the absence of physical contact barred this claim (ROA.543) was clear legal error requiring reversal.

## V. THE DISTRICT COURT ERRED BY IMPORTING PRISONER STANDARDS TO DISMISS THE FIRST AMENDMENT RETALIATION AND RIGHT TO PETITION CLAIMS (ISSUE 5)

Standard of Review

This Court reviews de novo a Rule 12(b)(6) dismissal of a First Amendment retaliation claim. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023).

A First Amendment retaliation claim requires showing: (1) plaintiff engaged in constitutionally protected activity; (2) defendants caused an injury that would chill a person of ordinary firmness from continuing that activity; and (3) the adverse action was substantially motivated by the protected conduct. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

### 1. The Egregious "Prisoner Standard" Error

The District Court reversibly erred in dismissing Appellant's retaliation claim by citing *McFadden v. Lucas*, 713 F.2d 143 (5th Cir. 1983) and *Gibson v. Jean-Baptiste*, 802 F. App'x 858 (5th Cir. 2020) for the proposition that "mere threats of violence do not establish § 1983 liability" (ROA.542).

McFadden and Gibson are prisoner Eighth Amendment cases under the Prison Litigation Reform Act (PLRA) (42 U.S.C. § 1997e(e)), which restricts claims for emotional injury without prior physical impact. These custodial standards have no application to free citizens on public roads. For free citizens, the First Amendment requires no physical contact or injury; the test is whether the officer's conduct would chill a person of ordinary firmness. Posturing a firearm after threatening incarceration undeniably chills speech. Under controlling precedent, *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002), a display of lethal authority and threats of arrest establish an actionable chilling injury.

The District Court's reliance on *Hoffman v. Stulga*, 464 Fed. App'x 229 (5th Cir. 2011), *Eaker v. City of Moss Point*, No. 20-CV-92, 2021 WL 771756 (S.D. Miss. Feb. 26, 2021), and *Hansard v. Zamora*, No. 23-CV-00041, 2024 WL 3682240 (W.D. Tex. Aug. 5, 2024) (ROA.542), is equally misplaced. Hoffman and Eaker addressed generic verbal abuse. Deputy Christ did far more: immediately upon Appellant exiting his vehicle, Deputy Christ threatened jail, escalated the threat when informed of the recording ("And I'm advising you that if you don't get in

your car and leave, you're gonna go to jail" (Exhibit D, File 1 at 0:32, 0:43, ROA.29–31; ROA.335 at ¶ 29)), countermanded his order to leave, named Appellant while referencing Exhibit B (ROA.301–305) ("I done been through this shit with you before, Brian" (ROA.336 at ¶ 35; ROA.497, 504, 520)), demanded identification, repeatedly threatened incarceration for recording (Exhibit D, File 1 at 0:43, File 3 at 2:10, ROA.29–31; ROA.335 at ¶ 29, ROA.336 at ¶ 37), and physically grabbed and postured his service weapon (Exhibit D, File 5 at 10:37, ROA.29–31; ROA.336 at ¶¶ 33, 39; ROA.498, 504, 509–511, 514). Posturing a firearm and threatening incarceration is an objective show of force that inflicts an actionable chilling injury under Keenan.

In *Grisham v. Valenciano*, 124 F.4th 627 (5th Cir. 2025), this Court reaffirmed free citizens are protected from adverse actions—including arrest threats and displays of lethal force—undertaken in retaliation for First Amendment conduct. By importing Eighth Amendment PLRA standards (ROA.542), the district court disregarded this principle.

**2. Reversing on Retaliatory Pretexts: *Gonzalez v. Trevino***

Warrantless, retaliatory stops cannot be shielded by fabricated pretexts. In *Gonzalez v. Trevino*, 144 S. Ct. 2124, 2127–28 (2024), the Supreme Court held that the exception to *Nieves v. Bartlett*, 139 S. Ct. 1715 (2019)'s probable cause bar

does not require "virtually identical and identifiable comparators." A plaintiff satisfies their burden by presenting objective evidence showing they were detained under circumstances where similarly situated individuals are not typically subjected to enforcement. Appellant provided objective proof—including photographs of his unobstructed plate (Exhibit A, ROA.17–18; ROA.335 at ¶¶ 28–32; ROA.498, 508–509), the valid Texas registration Deputy Christ admitted recognizing (ROA.335 at ¶ 31), and the Deputy's failure to run Appellant's ID (Exhibit D, File 2, ROA.29–31; ROA.335 at ¶ 32; ROA.502–503)—confirming a fabricated pretext. Under Gonzalez, law-abiding citizens with unobstructed plates are not subjected to weapon posturing and jail threats (ROA.335–336 at ¶¶ 26–39; ROA.498, 504, 509–511). Because Deputy Christ lacked objective grounds for the stop (ROA.502–503, 508), this evidence satisfies the Nieves exception, rendering the retaliation claim actionable. See *Lupis v. City of Texas City*, No. 23-40445, 2024 WL 4680224, at *3 (5th Cir. Nov. 5, 2024).

**3. The District Court's Manifest Error on "Attenuation"**

The District Court reversibly erred by holding the 12-year history between Deputy Christ and Appellant pled under Fed. R. Evid. 404(b) was "too attenuated to even be considered in a retaliation claim" (ROA.542–543; ROA.333 at § IV.A; ROA.334–335 at ¶¶ 18–24; ROA.515–517). While passage of time can weaken an inference of causation, the Supreme Court and this Court have never held that time

creates an irrebuttable bar to proving retaliatory motive. Rather, time is simply one evidentiary factor to be weighed by the trier of fact.

Appellant explicitly pleaded Deputy Christ's contemporaneous statement during the stop: "I done been through this shit with you before, Brian" (ROA.336 at ¶ 35; ROA.497, 504, 520). This statement acts as a direct verbal "temporal bridge" actively importing the 2013 animus into the 2025 stop. Deputy Christ expressly based his immediate hostility, weapon posturing, and arrest threats on that history (ROA.335–336 at ¶¶ 26–39; ROA.498, 504, 509–511). By excluding the Deputy's spoken words, the District Court impermissibly weighed evidence and resolved a disputed issue of retaliatory intent on a Rule 12(b)(6) motion (ROA.542–543).

Appellant pleaded that between 2013 and November 18, 2025, there was zero contact between Appellant and Deputy Christ (ROA.334–335 at ¶ 24; ROA.516). This zero-contact period confirms Deputy Christ's hostility was the deliberate reactivation of a dormant personal vendetta. Accepting these pleaded facts as true, Appellant stated a plausible claim that the stop was substantially motivated by retaliatory animus, satisfying Keenan, 290 F.3d at 258.

**4. The Right to Petition Violation**

The District Court failed to address the independent violation of Appellant's Right to Petition (Count I). Under the First Amendment, citizens have an established

right to file administrative and criminal complaints against law enforcement officers. See *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388–89 (2011) (holding that filing formal grievances or administrative complaints is protected petitioning activity). Appellant explicitly pleaded that by refusing to accept written complaints regarding Deputy Christ's assault and declaring "We do not investigate our own," Chief Turner blocked Appellant's protected Right to Petition, inflicting a constitutional injury (ROA.337 at ¶ 44; ROA.509–510). Silently dismissing this claim without legal analysis (ROA.538–560) is reversible error.

## VI. THE DISTRICT COURT ABUSED DISCRETION BY DENYING EMERGENCY PRESERVATION AND SAFETY RELIEF BASED ON DOCUMENTED ERRORS OF FACT (ISSUE 6)

This Court reviews the denial of emergency injunctive relief for abuse of discretion, which occurs when a ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. *Highland Capital Mgmt.*, L.P. v. Bank of Am., N.A., 698 F.3d 202, 205 (5th Cir. 2012).

Appellant filed emergency motions for both Evidence Preservation (ROA.36–39) and a Safety TRO (ROA.40–51). In its December 12 order, the District Court denied all emergency relief (ROA.412–414) based on two explicit findings: (1)

that Appellant failed to provide a "verified complaint," and (2) that Appellant failed to file a "written certification" regarding notice under Fed. R. Civ. P. 65(b)(1)(B) (ROA.413). Both findings are flatly contradicted by the docket. Under Fed. R. Evid. 201, this Court should take judicial notice of the First Amended Verified Complaint executed under penalty of perjury (ROA.331–341, verification at ROA.339; see also ROA.14) and the Emergency Motion containing the written Fed. R. Civ. P. 65(b)(1)(B) certification on Page 2 (ROA.36–37). Moreover, Appellant certified hand-delivery of courtesy copies on November 26, 2025 (ROA.54–59), and formal summons was executed on December 9, 2025 (ROA.391–394). Denying emergency relief by ignoring these verified record filings was a clear abuse of discretion.

The District Court's sequential orders also created an arbitrary impasse that exposed crucial building security video to automated deletion under VPSO's 10-day overwrite policy. The court first denied the initial preservation TRO (ROA.52–53), asserting "no indication" defendants would fail to preserve evidence; denied expedited discovery (ROA.409–411) because the TRO was denied, claiming "no facts" showed danger of deletion; and denied reconsideration (ROA.412–414), declaring it "will not revisit" preservation.

This trapped Appellant in a Catch-22: refusing preservation without proof of non-preservation, while barring discovery to obtain that proof. To obtain a preservation

order, a litigant need only show a credible concern that relevant evidence is in danger of being lost. See *Pueblo of Laguna v. United States*, 60 Fed. Cl. 133, 138 (2004). The lobby video was critical to Appellant's *Monell* claim (capturing Chief Turner's policy of impunity admission) (ROA.337 at ¶ 44), and the 10-day auto-delete custom created an imminent risk of loss (ROA.36–37, 45; ROA.337 at ¶ 45). On remand, this Court should instruct the District Court to enter a preservation order and permit discovery regarding spoliation and preservation compliance.

## VII. THE DISTRICT COURT COMMITTED PER SE ABUSE OF DISCRETION BY SILENTLY DENYING RIPE MOTIONS AND IGNORING NON-FUTILITY STANDARDS (ISSUE 7)

This Court reviews the denial of leave to amend and failure to rule on ripe motions for abuse of discretion. *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 602 (5th Cir. 2021).

A district court must afford a pro se litigant an opportunity to amend unless amendment is demonstrably futile. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). The parties and court treated the First Amended Verified Complaint (ROA.331–341) as the operative pleading targeted by Defendants' Motion to Dismiss (ROA.446–480). Out of caution, Appellant moved for leave to formally

ratify the First Amended Complaint nunc pro tunc (ROA.421–424), and in his Opposition, requested alternative leave to amend to cure any perceived deficiencies (ROA.487, 520). The District Court silently dismissed the action with prejudice without ruling on the Motion for Leave (ROA.421–424), addressing the Alternative Motion (ROA.487, 520), or explaining why amendment would be futile (ROA.538–560).

Under Fed. R. Civ. P. 15(a), leave to amend shall be freely given, and an "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Dismissing a pro se complaint with prejudice without explaining futility is a per se abuse of discretion. Olivarez, 997 F.3d at 602.

This silent denial was not harmless error under Rule 61 because amendment was non-futile. In his Fed. R. Civ. P. 59(e) filings (ROA.561–572, ROA.584–592), Appellant proffered specific supplemental allegations: (1) granular roadside encounter details (ROA.566, 589); (2) psychological injury itemizations (ROA.567, 590); (3) department-wide historical evidence (ROA.568–569, 590); (4) roadside and administrative comparators (ROA.567–568, 588, 590); (5) expanded Fourteenth Amendment evidence-handling claims (ROA.569, 590); (6) supervisory training facts (ROA.569, 590–591); and (7) explicit state-law tort claims

(ROA.571, 591). Because these allegations establish actionable claims under § 1983 and Louisiana law, dismissal with prejudice was an abuse of discretion.

The District Court further abused discretion by ignoring pending pro se motions—specifically Appellant's Motion for Appointment of Counsel (ROA.32) and Motion for Electronic Filing (ROA.319–321). Under *Ulmer v. Chancellor*, 691 F.2d 209, 212 (5th Cir. 1982), a court evaluating a § 1983 counsel motion must assess: (1) claim complexity; (2) plaintiff's ability to present his case; (3) investigative capacity; and (4) conflicting testimony requiring cross-examination skills. Bypassing the Motion for Counsel (ROA.32) without considering the Ulmer factors was a total failure to exercise discretion before silently terminating the case (ROA.538–560).

## VIII. THE DISTRICT COURT ERRED ON STATE LAW TORTS, SUPERVISORY LIABILITY, AND EQUAL PROTECTION (ISSUE 8)

Standard of Review

This Court reviews de novo the Rule 12(b)(6) dismissal of state-law, supervisory, and equal protection claims. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023).

### 1. Exposing the Egregious Louisiana Tort Law Error

The District Court dismissed Appellant's state-law claims for aggravated assault, malfeasance in office, and public intimidation (ROA.338 at Count V), asserting that "Louisiana courts do not recognize grounds for civil liability from a criminal statute unless the Legislature expressly enacts such a cause of action" (ROA.552).

This is fundamental error. In Louisiana's civil law system, legislation is the primary source of law (La. C.C. art. 1), and La. C.C. art. 2315(A) is the universal fountainhead of all tort liability: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

Under Louisiana's duty-risk analysis, courts look to statutory standards—including penal provisions defining assault (La. R.S. 14:36), malfeasance in office (La. R.S. 14:134), and public intimidation (La. R.S. 14:122)—as guidelines to define the standard of care and civil "fault" under La. C.C. art. 2315. See *Faucheux v. Terrebonne Parish Consol. Gov't*, 615 So. 2d 289, 292–93 (La. 1993); (ROA.513–515).

The District Court mischaracterized the very cases it cited (ROA.552). In *Laird v. Travelers Ins. Co.*, 263 La. 199, 267 So. 2d 714, 717 (La. 1972), the Louisiana Supreme Court held a criminal statute "may be used by the court as a guideline to determine whether the defendant's conduct was civil negligence." Similarly, in *Gugliuzza v. K.C.M.C., Inc.*, 606 So. 2d 790, 793 (La. 1992), the court confirmed

that the absence of a civil enabling clause in a penal statute does not bar La. C.C. art. 2315 liability, as criminal statutes define the standard of conduct for civil fault. The District Court's conclusion inverted this settled law.

In Louisiana, civil assault does not require physical contact (battery); it requires creating reasonable apprehension of harmful contact. See *Castiglione v. Galpin*, 325 So. 2d 725, 726 (La. App. 4th Cir. 1976) (holding weapon posturing or display sufficient to establish civil assault under La. C.C. art. 2315). Deputy Christ did exactly this when he reached for and postured his weapon (Exhibit D, File 5 at 10:37, ROA.29–31; ROA.336 at ¶ 33). Additionally, intentional infliction of emotional distress (IIED) lies where a defendant engages in extreme and outrageous conduct knowing severe emotional distress will follow. See *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991); see also *McCoy v. City of Shreveport*, 492 F.3d 551, 563 (5th Cir. 2007) (applying White under La. C.C. art. 2315). Deputy Christ's unprovoked weapon posturing and retaliatory threats—inflicted upon an "eggshell plaintiff" (ROA.339 at § VI.C; ROA.514)—plausibly state claims for civil assault and IIED.

Under La. C.C. art. 2320, employers are answerable for damage caused by employees in the exercise of their functions. A Sheriff is vicariously liable under La. C.C. art. 2320 for all state-law torts committed by deputies in the course and scope of their official duties. See *Jenkins v. Jefferson Parish Sheriff's Office*, 402

So. 2d 669, 670–71 (La. 1981). While vicarious liability is unavailable under § 1983, Louisiana law mandates respondeat superior for traditional state-law torts under La. C.C. art. 2320. Regardless of how municipal liability is resolved under *Monell*, Sheriff Craft is vicariously liable for civil assault and state torts committed by Deputy Christ (ROA.515). The District Court's dismissal of these torts (ROA.552) was reversible error.

All state-law claims state viable causes of action under La. C.C. art. 2315 and must be reinstated on the merits. Alternatively, even if dismissal of the federal claims were affirmed, the District Court abused discretion by dismissing Appellant's supplemental state-law claims with prejudice (ROA.552, 560). Under 28 U.S.C. § 1367(c)(3), when a district court dismisses all federal claims at the pleading stage, the Fifth Circuit's established practice is to decline supplemental jurisdiction and dismiss state-law claims without prejudice to allow state court redress. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999) (holding that "the dismissal of the state law claims should be modified to be without prejudice"). Terminating Appellant's supplemental state-law claims with prejudice permanently stripped Appellant of state court recourse, requiring this Court, at minimum, to modify the dismissal to be without prejudice.

**2. Reversing on Supervisory Liability, Ratification, and § 1983 Conspiracy**

The District Court reversibly erred in granting qualified immunity to Sheriff Craft and Chief Turner for lack of "personal involvement" (ROA.549, 551). Appellant explicitly pleaded direct personal participation and ratification by both supervisors (ROA.336–337 at ¶¶ 39–44; ROA.496, 505–515):

Chief Calvin Turner: As Chief Deputy, Turner personally participated in the constitutional deprivations during the November 21, 2025 meeting. Chief Turner viewed the video evidence (Exhibit D, ROA.29–31), refused to accept Appellant's criminal complaints, and declared: "We do not investigate our own" (ROA.337 at ¶ 44; ROA.505–507, 510). Chief Turner's physical obstruction of a criminal complaint constitutes direct individual participation in violating Appellant's Right to Petition and ratifies the subordinate's underlying violations under *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985).

Sheriff Sam Craft: Sheriff Craft had notice of Deputy Christ's 2013 excessive force altercation and 12-year grudge against Appellant (Exhibit B at ROA.104–106; ROA.333–334, 336 at ¶¶ 18–24, 35; ROA.337 at ¶ 45), as well as direct notice of Christ's roadside seizure, weapon posturing, jail threats, and Chief Turner's complaint refusal (ROA.337 at ¶ 44; ROA.507). Despite meeting with Appellant, Craft personally refused to view the video evidence (ROA.29–31; ROA.337 at ¶ 43; ROA.496, 512), conducted no investigation, imposed no discipline historically or for the 2025 encounter, and publicly vowed to defend his deputies against citizen

claims (Exhibit F at ROA.522–526, 526; ROA.333–334, 337 at ¶¶ 16–24, 43–45; ROA.506, 511–513, 519), ratifying the unconstitutional conduct under *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985); (ROA.568–569, 590–591).

Appellant stated a viable § 1983 conspiracy claim (Count VII) against Deputy Christ and Chief Turner (ROA.338–339 at Count VII; ROA.510, 513, 518–519). A § 1983 conspiracy requires: (1) an agreement to commit an illegal act, and (2) an actual deprivation of constitutional rights. *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994). Appellant explicitly pleaded that Christ spoke on his cell phone with Chief Turner while posturing his weapon at Appellant (Exhibit D, File 5 at 10:37, ROA.29–31; ROA.336 at ¶¶ 39–40; ROA.510), followed by their joint administrative refusal to accept criminal complaints under a "No Investigation" policy (ROA.337 at ¶¶ 42–44; ROA.510, 518). These coordinated acts plausibly establish a meeting of the minds to violate and obstruct Appellant's First and Fourth Amendment rights under Cinel.

The District Court erred in holding the conspiracy claim barred by the intracorporate conspiracy doctrine (ROA.464–465, 545–546). The intracorporate doctrine does not bar § 1983, § 1985, or state-law conspiracy claims where officers engage in an unauthorized cover-up or act out of personal malice to shield unconstitutional conduct. See *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 603 (5th Cir. 1981); *Haygood v. Dies*, 127 So. 3d 1008, 1012 (La. App. 2d Cir. 2013);

(ROA.519). Christ's retaliatory threats and Chief Turner's physical obstruction of criminal complaints constituted an unauthorized cover-up driven by personal malice, defeating the intracorporate defense under Rule 12(b)(6).

**3. "Class of One" Equal Protection Claim**

The District Court committed a manifest error of law by dismissing Appellant's "Class of One" Equal Protection claim (Count VIII) on the ground that Appellant failed to plead "similarly situated" individuals (ROA.338 at Count VIII; ROA.546–547). Under *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), a plaintiff states a valid claim by alleging intentional disparate treatment from others similarly situated without a rational basis. See also *Lindquist v. City of Pasadena*, 669 F.3d 225, 233–34 (5th Cir. 2012) (holding that whether parties are similarly situated is a fact-intensive inquiry that cannot be resolved under Rule 12(b)(6) where plausible disparities are pleaded). Appellant explicitly pleaded, preserved, and briefed two distinct, objective comparators satisfying this standard (ROA.335–338 at ¶¶ 25–39, 43–44, Count VIII; ROA.510, 518–519; ROA.564–568):

The Roadside Suspect-Bystander Disparity: Appellant was a peaceful, non-interfering observer recording police activity from a safe distance (Exhibit D, File 1 at 0:16, ROA.29–31; ROA.335 at ¶ 25). Despite committing no crime and posing zero safety threat, Appellant was aggressively seized, threatened with jail,

subjected to fabricated pretexts, and targeted with lethal weapon posturing (Exhibit D, File 1 at 0:40, File 5 at 10:37, ROA.29–31; ROA.335–336 at ¶¶ 26–33, 39; ROA.518–519). In stark contrast, the actual suspect motorist was handled calmly without hostility, to the point that Deputy Christ recklessly abandoned the handcuffed prisoner unattended solely to pursue Appellant across the roadway (Exhibit D, File 1 at 0:32, ROA.29–31; ROA.335 at ¶¶ 25–30; ROA.518–519; ROA.567). Subjecting a peaceful bystander to far harsher, more dangerous police coercion than the criminal arrestee—and abandoning an active arrest to settle a 12-year personal grudge (ROA.333–334 at ¶¶ 18–24; ROA.336 at ¶ 35; ROA.338 at Count VIII)—is an extreme disparity lacking any rational basis.

The Administrative General Public vs. Deputy Disparity: Sheriff Craft publicly declared and boasted in a January 6, 2026 press release: "Every lead, every tip, and every rumor that has been received by this department has been investigated... Not a single tip has been ignored" (Exhibit F at ROA.522–526, 526; ROA.519). Yet, when Appellant physically presented verified video evidence of deputy crimes, Sheriff Craft refused to review the video, and Chief Turner flatly refused to accept any criminal complaint, declaring: "We do not investigate our own" (ROA.29–31; ROA.337 at ¶¶ 43–44; ROA.496, 507, 510, 512). This represents an officially declared unequal enforcement of the law: VPSO investigates 100% of citizen complaints against the general public, but intentionally denies equal access and

enforces blanket non-investigation when citizens report deputy misconduct (ROA.337 at ¶¶ 43–44; ROA.510, 518–519; ROA.522–526, 526; ROA.564–568, 589–591). Because Appellant pleaded documented facts proving he was intentionally singled out for disparate treatment based on personal animus without rational basis, his "Class of One" claim is fully viable under Olech, Lindquist, and Gonzalez.

**4. Reversing on the Fourteenth Amendment Due Process Evidence Fabrication Claim**

The District Court erred in dismissing Appellant's Fourteenth Amendment Due Process claim (Count VI) for deliberate evidence fabrication (ROA.338 at Count VI; ROA.544–545, 552). In the Fifth Circuit, an officer's deliberate fabrication of evidence to justify a detention or seizure violates Fourteenth Amendment Due Process, regardless of whether a criminal prosecution or conviction ensues. See *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc); *Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023); see also *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017).

Here, Appellant pleaded that Deputy Christ deliberately fabricated multiple shifting pretexts—specifically, claims of a "suspended license," an "expired inspection sticker," and an "obstructed license plate"—to justify his unlawful

threats of jail, investigatory stop, seizure, and assault of Appellant (Exhibit A at ROA.17–18; Exhibit D at ROA.29–31; ROA.335–336 at ¶¶ 28, 31; ROA.517–518). This bad-faith fabrication directly violates Cole, Armstrong, and Manuel. By substituting an outdated physical-injury test (ROA.544–545) and dismissing this claim on the pleadings (ROA.552), the District Court committed reversible error.

## IX. THE DISTRICT COURT ERRED ON QUALIFIED IMMUNITY AND ARTICLE III STANDING (ISSUE 9)

Standard of Review

This Court reviews de novo a district court's decision on qualified immunity and Article III standing under Rule 12(b)(6). *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023).

### 1. Qualified Immunity Does Not Shield Appellees

Qualified immunity does not shield Deputy Christ because the constitutional rights he violated were "clearly established" such that any reasonable officer would have known his conduct was unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); see also *Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020) (holding that obvious constitutional violations do not require a factually identical prior precedent). Under the First

Amendment, the right to observe and record police officers performing their duties in public from a safe distance and to be free from retaliatory police interference was clearly established in this Circuit by *Turner v. Driver*, 848 F.3d 678, 690 (5th Cir. 2017) and *Villarreal v. City of Laredo*, 94 F.4th 374, 386–87 (5th Cir. 2024) (en banc). Under the Fourth Amendment, the right to be free from arbitrary, suspicionless investigatory detentions was clearly established in *Terry v. Ohio*, 392 U.S. 1, 21 (1968) and *Brown v. Texas*, 443 U.S. 47, 51 (1979). Under the Due Process Clause, the right to be free from an officer's deliberate fabrication of evidence to justify a detention was clearly established in *Cole v. Carson*, 935 F.3d 444, 451 (5th Cir. 2019) (en banc). Under the Equal Protection Clause, the right to be free from intentional, irrational disparate treatment driven by personal animus was clearly established in *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); see also *Lindquist v. City of Pasadena*, 525 F.3d 383, 387 (5th Cir. 2008). Here, Appellant was a peaceful bystander recording police activity from a safe distance (Exhibit D, File 1 at 0:16, ROA.29–31; ROA.335 at ¶ 25). Deputy Christ had zero reasonable suspicion of any crime. No reasonable officer could believe it was lawful to abandon an active traffic stop—leaving a handcuffed suspect unattended—to initiate a suspicionless seizure of a bystander, posture a service weapon, cycle through fabricated pretexts, or single out Appellant for hostile treatment based on a 12-year personal vendetta (Exhibit A at ROA.17–18; Exhibit

D, File 1 at 0:32–0:40, File 5 at 10:37, ROA.29–31; ROA.333–336 at ¶¶ 18–35, 39; ROA.508–509, ROA.517–519). Because Deputy Christ's conduct violated clearly established First, Fourth, and Fourteenth Amendment rights under *Turner*, Villarreal, Terry, Cole, and Olech, the District Court erred in granting qualified immunity on the pleadings (ROA.551–552).

Qualified immunity does not shield Chief Turner or Sheriff Craft across any of Appellant's claims. Under long-standing Fifth Circuit law, a supervisory official cannot personally participate in a constitutional violation, physically refuse to receive a citizen's written criminal complaint, refuse to inspect objective video evidence, fail to meaningfully investigate, fail to discipline subordinate misconduct, or enforce a custom of absolute impunity for officers. See *Grandstaff v. City of Borger*, 767 F.2d 161, 171 (5th Cir. 1985); *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). Here, Chief Turner personally blocked Appellant's criminal complaints on November 21 and declared VPSO's policy of impunity ("We do not investigate our own") (ROA.337 at ¶ 44; ROA.507, 509–511). Sheriff Craft had pre-existing notice of Deputy Christ's 12-year grudge and 2013 use-of-force altercation (Exhibit B at ROA.104–106; ROA.333–334 at ¶¶ 18–24), personally refused to inspect objective video evidence presented on November 21 (ROA.337 at ¶ 43; ROA.496, 512), failed to meaningfully investigate Chief Turner or Deputy Christ, failed to discipline the involved officers for past or present misconduct, and denied

Appellant equal protection under Olech by enforcing a 100% investigation policy for the public while granting immunity to deputies (Exhibit F at ROA.522–526; ROA.511–513, 519). Any reasonable supervisor in 2025 knew these actions violated clearly established First, Fourth, and Fourteenth Amendment rights. Because Chief Turner and Sheriff Craft personally participated in suppressing speech, blocking criminal complaints, denying equal protection, and ratifying unconstitutional conduct, the District Court reversibly erred in granting them qualified immunity (ROA.551–552).

**2. Preservation of Federal Question: The Historical Illegitimacy of the Qualified Immunity Doctrine**

Alternatively, Appellant raises and preserves the federal question of whether the doctrine of qualified immunity is historically, textually, and constitutionally illegitimate ab initio. As documented by recent legal scholarship, the original text of Section 1 of the Civil Rights Act of 1871—as enacted by Congress and signed by the President—contained a crucial "notwithstanding clause" explicitly providing that liability attaches "notwithstanding any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary." See Alexander A. Reinert, Section 1983's Omitted Text, 111 Geo. L.J. 929 (2023).

This clause was inadvertently omitted during the 1874 compilation of the Revised Statutes. Because the Supreme Court's qualified immunity jurisprudence is built on the false historical premise that Section 1983 was "silent" regarding common-law immunities, this clerical error resulted in over a half century of judge-made immunity lacking statutory authority. See *Rogers v. Jarrett*, 63 F.4th 971, 978 (5th Cir. 2023) (Willett, J., concurring) (recognizing qualified immunity is "built on a historical myth"); see also *Baxter v. Bracey*, 140 S. Ct. 1862, 1862–64 (2020) (Thomas, J., dissenting from denial of cert.) (questioning § 1983 qualified immunity jurisprudence as straying from the statutory text); *Hencley v. Fluor Corp.*, 120 F.4th 412 (4th Cir. 2024) (holding that federal courts lack authority to invent extra-statutory immunities). Having contested qualified immunity below (ROA.508–519), Appellant raises and preserves this question to challenge the District Court's dismissal (ROA.551–552) for en banc and Supreme Court review.

**3. The District Court Erred by Dismissing Claims for Prospective Declaratory and Injunctive Relief**

Appellant Plausibly Pleaded Article III Standing for Prospective Relief Under Lyons and Villarreal: The District Court erred in ruling on the pleadings that Appellant lacked Article III standing for prospective relief under *In re Stewart*, 647 F.3d 553, 557 (5th Cir. 2011) and *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) (ROA.555–556). While past exposure to isolated misconduct is alone insufficient,

(ROA.555–556). While past exposure to isolated misconduct is alone insufficient, past wrongs combined with an ongoing policy or targeted threat establish a real and immediate threat of future injury. See *Villarreal v. City of Laredo*, 94 F.4th 374, 386–87 (5th Cir. 2024) (en banc). Here, Appellant did not allege a random past encounter, but a targeted 12-year vendetta executed by a deputy who named Appellant at the scene (Exhibit B at ROA.104–106; ROA.333–336 at ¶¶ 18–27, 35; Exhibit D, File 1, ROA.29–31), operating pursuant to VPSO's persistent 14-year departmental custom of impunity (ROA.333–334 at ¶¶ 13–17; ROA.337–338 at ¶¶ 42–45, Count IV)—personally reaffirmed by Chief Turner ("We do not investigate our own") (ROA.337 at ¶ 44) and Sheriff Craft's public refusal to hold deputies accountable (Exhibit F at ROA.522–526; ROA.519). By dismissing prospective relief on the pleadings, the District Court effectively insulated and emboldened VPSO's 14-year policy of impunity, leaving Appellant under an unabated, credible threat of future retaliatory harm whenever he exercises his constitutional rights in Vernon Parish. This targeted vendetta combined with the active custom of non-investigation satisfies Article III standing under Lyons and Villarreal, requiring reversal.

The District Court Erred by Applying Post-Trial Evidentiary Standards (eBay) at Rule 12(b)(6) and Dismissing Based on the Scope of Relief (Fed. R. Civ. P. 54(c)): The District Court committed a manifest error of law by holding Appellant to the

post-trial evidentiary burden of proving a permanent injunction under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006), at the pleading stage (ROA.555–556). On a Rule 12(b)(6) motion, a plaintiff is required only to plausibly plead Article III standing and a constitutional claim, not trial-level evidence of irreparable harm. Furthermore, the District Court erred by dismissing prospective relief because it deemed specific requested remedies (such as a federal monitor or protective order) (ROA.338–339 at ¶¶ B, E) "untenable" or "extend[ing] further than necessary" (ROA.556–557). Under Fed. R. Civ. P. 54(c), the demand for relief is not part of the claim itself, and the precise scope of equitable relief is determined at final judgment, not on a Rule 12(b)(6) motion. See *Doss v. South Central Bell Tel. Co.*, 834 F.2d 421, 425 (5th Cir. 1987).

The District Court Erred in Dismissing Declaratory Relief Under 28 U.S.C. § 2201: The District Court further committed reversible error by dismissing Appellant's separate claim for a declaratory judgment declaring VPSO's "No Investigation" policy unconstitutional (ROA.338 at ¶ A; ROA.557). The District Court dismissed this claim on the flawed defense that Appellant failed to show a pattern of repeated violations (ROA.557). Under 28 U.S.C. § 2201 and *Steffel v. Thompson*, 415 U.S. 452, 468 (1974), a claim for declaratory judgment has independent Article III standing separate from injunctive relief. Moreover, Chief Turner enforced this custom by refusing Appellant's criminal complaint after explicitly declaring "We

do not investigate our own" (ROA.337 at ¶ 44), while final policymaker Sheriff Craft ratified the policy by refusing to view the video evidence (ROA.337 at ¶ 43; ROA.496, 512), failing to investigate, and publicly declaring he will defend his deputies against integrity challenges (Exhibit F at ROA.522–526; ROA.519). Under *Pembaur* and *Grandstaff*, this deliberate declaration, enforcement, and ratification directly attribute the policy to the municipality, establishing a live case or controversy for declaratory relief under § 2201.

## CONCLUSION AND PRAYER FOR RELIEF

To preserve the appearance of justice and impartiality under 28 U.S.C. § 2106, this Court should direct the case be reassigned to a different district judge on remand. Under the controlling test adopted by this Court, reassignment is warranted when the original judge would have substantial difficulty putting out of mind previously-expressed erroneous views, or where advisable to preserve the appearance of fairness. See *United States v. Robin*, 553 F.2d 8, 10 (2d Cir. 1977) (en banc); see also *Johnson v. Sawyer*, 120 F.3d 1307, 1333 (5th Cir. 1997); *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 892–93 (5th Cir. 2021) (reassigning case under § 2106 on remand following Rule 12(b)(6) dismissal to preserve the appearance of justice where the district judge exhibited preconceived views and reassignment

entailed minimal waste). Here, the district judge committed repeated, objective manifest errors of fact regarding the physical docket itself (denying the existence of the Verified Complaint and Rule 65 Certification) (ROA.10–14, 36–37; ROA.412–414) and flatly refused to correct the record on Fed. R. Civ. P. 59(e) review (ROA.593), ignored verified photo and video exhibits (Exhibit A at ROA.17–18; Exhibit D at ROA.29–31), improperly invented extra-record facts to favor the defendants while making premature factual determinations and demanding summary-judgment-level proof on a Rule 12(b)(6) motion (ROA.538–559), and silently terminated the action with prejudice (ROA.560) while ignoring ripe, pending motions for leave to amend (ROA.421–424) and appointment of counsel (ROA.32). Given the judge's persistent refusal to acknowledge docket realities, invention and premature resolution of disputed facts, silent forfeiture of pending motions, and reliance on inapplicable prisoner and evidentiary standards to shield the defendants at the pleading stage, the original judge would have substantial difficulty setting aside these firmly held, erroneous views. Because this case was terminated at the Rule 12(b)(6) stage before discovery commenced, reassignment entails minimal duplication or waste while fully preserving the appearance of justice and impartiality.

For the foregoing reasons, Appellant Hugh Brian Street respectfully requests that this Court:

1. **REVERSE** the District Court's March 5, 2026 Memorandum Ruling and Judgment (ROA.538–560) granting Defendants' Motion to Dismiss;

2. **REVERSE** the District Court's April 29, 2026 Order denying Appellant's Fed. R. Civ. P. 59(e) Motion (ROA.593);

3. **REVERSE** or **VACATE** the District Court's interlocutory Orders denying emergency protective relief, expedited discovery, and service (ROA.52–53, 409–414);

4. **REINSTATE** all federal constitutional claims under 42 U.S.C. § 1983 (Counts I, II, III, IV, VI, VII, VIII) (ROA.331–341)—including all claims for compensatory damages, punitive damages, declaratory judgment, and prospective injunctive relief—and **REMAND** for discovery and trial;

5. **REINSTATE** all state-law claims (Count V) on the merits for discovery and trial, OR, in the alternative, modify the dismissal of state-law claims to be without prejudice under 28 U.S.C. § 1367(c)(3) (*Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999));

6. **REMAND** the case to a different district judge under 28 U.S.C. § 2106 to preserve the appearance of justice and impartiality (ROA.412–414, 538–559, 593), with explicit instructions to:

a. Evaluate Appellant's Emergency Motion for Safety Temporary Restraining Order (ROA.38–43) under correct procedural standards, recognizing the existing complaint verification and Rule 65 certification;

b. Grant Appellant's pending Motion for Leave to Amend (ROA.421–424) and rule on the Motion for Appointment of Counsel (ROA.32);

c. Conduct an evidentiary hearing regarding the preservation of VPSO building security video and evaluate appropriate spoliation sanctions under FRCP 37(e) if evidence was destroyed;

7. **AWARD** Appellant all allowable costs under Fed. R. App. P. 39. (Appellant, proceeding pro se, declines to request Attorney's Fees under 42 U.S.C. § 1988 under *Kay v. Ehrler*);

8. **GRANT** such other and further relief, in law or equity, to which Appellant may be justly entitled.

Respectfully submitted this 8th day of September, 2026.

HUGH BRIAN STREET

Plaintiff-Appellant, Pro Se, 385 RC Stephens Rd, Leesville, LA 71446

337-404-6465, brian.street@southerntreeninjas.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 12,338 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Markdown/Microsoft Word in 14-point Times New Roman font.

HUGH BRIAN STREET

## CERTIFICATE OF REDACTION COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 25(a)(5) and Fifth Circuit Rule 25.2.13, I hereby certify that all required privacy redactions have been made to the foregoing brief. No personal data identifiers (such as Social Security numbers, taxpayer identification numbers, dates of birth, financial account numbers, or minor names) are present in this document.

HUGH BRIAN STREET

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of September, 2026, a true and correct copy of the foregoing Appellant's Opening Brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit, and that a true and correct copy was served upon counsel for Defendants-Appellees by depositing the same in the United States Mail, first-class postage prepaid, addressed as follows:

Laura C. Rodrigue, Esq.

Blake J. Arcuri, Esq.

Jason P. Wixom, Esq.

RODRIGUE & ARCURI LLP

1615 Poydras Street, Suite 1250

New Orleans, Louisiana 70112

Counsel for Defendants-Appellees

______________________________

HUGH BRIAN STREET

## MANDATORY RECORD ADDENDUM

Pursuant to 5th Cir. R. 28.2.10 and Fed. R. App. P. 28(a)(10), the following mandatory contents, challenged judgments, orders, and statutory authorities are appended hereto:

**Addendum Item 1 (A-3 to A-11)**: Certified District Court Docket Sheet, W.D. La. Case No. 2:25-cv-01882 (ROA.1–9).

**Addendum Item 2 (A-12)**: District Court Final Judgment entered on March 5, 2026 (ROA.560).

**Addendum Item 3 (A-13 to A-34)**: District Court Memorandum Ruling entered on March 5, 2026 (ROA.538–559).

**Addendum Item 4 (A-35 to A-36)**: District Court Memorandum Order entered on December 1, 2025, denying Emergency TRO (ROA.52–53).

**Addendum Item 5 (A-37 to A-39)**: District Court Memorandum Order entered on December 10, 2025, denying expedited discovery and service (ROA.409–411).

**Addendum Item 6 (A-40 to A-42)**: District Court Memorandum Order on Reconsideration entered on December 12, 2025 (ROA.412–414).

**Addendum Item 7 (A-43)**: District Court Order entered on April 29, 2026, denying Fed. R. Civ. P. 59(e) Motion (ROA.593).

**Addendum Item 8 (A-44 to A-56)**: Relevant Constitutional Provisions, Federal Statutes, Federal Rules, and Louisiana Statutes (U.S. Const. amends. I, IV, XIV; 42 U.S.C. §§ 1983, 1997e(e); 28 U.S.C. §§ 1291, 1331, 1343, 1367, 2106, 2201; Fed. R. Civ. P. 10(c), 12(b)(6), 15(a), 37(e), 54(c), 56, 59(e), 65(b); Fed. R. Evid. 201, 404(b); La. C.C. arts. 2315, 2320; La. R.S. 14:36, 14:122, 14:134).

CM/ECF

CLOSED,APPEAL

Jump to Docket Table

# U.S. District Court
# Western District of Louisiana (Lake Charles)
# CIVIL DOCKET FOR CASE #: 2:25-cv-01882-JDC-TPL

Street v. Christ et al
Assigned to: Judge James D Cain, Jr
Referred to: Magistrate Judge Thomas P LeBlanc
Demand: $6,000,000
Case in other court: 5CCA, 26-30329
Cause: 42:1983 Civil Rights Act

Date Filed: 11/25/2025
Date Terminated: 03/05/2026
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

**Plaintiff**

**Hugh Brian Street** represented by **Hugh Brian Street**
385 RC Stephens Rd
Leesville, LA 71446
337-404-6465
Email: brian.street@southerntreeninjas.com
PRO SE

V.

**Defendant**

**Chuck Christ**
*Deputy, in his individual capacity*

represented by **Blake Joseph Arcuri**
Rodrigue & Arcuri (NO)
1615 Poydras St Ste 1250
New Orleans, LA 70112
504-592-4600
Email: blake@rodriguearcuri.com
*ATTORNEY TO BE NOTICED*

**Jason Paul Wixom**
Rodrigue & Arcuri (NO)
1615 Poydras St Ste 1250
New Orleans, LA 70112
504-592-4600
Fax: 504-592-4641
Email: jason@rodriguearcuri.com
*ATTORNEY TO BE NOTICED*

**Laura Cannizzaro Rodrigue**

Rodrigue & Arcuri (NO)
1615 Poydras St Ste 1250
New Orleans, LA 70112
504-592-4600
Email: lrodrigue@fralawfirm.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Calvin Turner**
*Chief of Operations, in his individual capacity*

represented by **Blake Joseph Arcuri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jason Paul Wixom**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura Cannizzaro Rodrigue**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Sam Craft**
*individually, and in his capacity as Sheriff*

**Defendant**

**Louisiana Sheriffs Risk Management Program**
*TERMINATED: 01/20/2026*

represented by **Blake Joseph Arcuri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jason Paul Wixom**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura Cannizzaro Rodrigue**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**A B C Insurance Co**

**Defendant**

**John Craft**
*Sheriff*

represented by **Blake Joseph Arcuri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jason Paul Wixom**
(See above for address)

*ATTORNEY TO BE NOTICED*

**Laura Cannizzaro Rodrigue**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Louisiana Sheriffs Law Enforcement Program**
*misidentified as the Louisiana Sheriffs Risk Management Program*
*TERMINATED: 03/05/2026*

represented by **Blake Joseph Arcuri**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Jason Paul Wixom**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laura Cannizzaro Rodrigue**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/25/2025 | 1 (p.10) | COMPLAINT against ABC Insurance Company, Chuck Christ, Sam Craft, Louisiana Sheriffs Risk Management Program, Calvin Turner with Jury Demand filed by Hugh Brian Street. (Attachments: # 1 (p.10) Civil cover sheet, # 2 (p.36) Exhibit, # 3 (p.38) Letter, # 4 (p.45) Notice of manual attachment)(crt,Savoy, A) (Additional attachment(s) added on 11/26/2025: # 5 (p.48) Affidavit, # 6 (p.52) Notice) (Savoy, A). (Entered: 11/25/2025), (QC'ed on 11/26/2025, by Alexander , E) |
| 11/25/2025 | 2 (p.36) | MOTION for Temporary Restraining Order to Preserve Evidence by Hugh Brian Street. Motion Ripe Deadline set for 11/25/2025.(crt,Savoy, A) (Entered: 11/26/2025), (QC'ed on 11/26/2025, by Alexander , E) |
| 11/25/2025 | 3 (p.38) | MOTION for Temporary Restraining Order, MOTION for Preliminary Injunction (Motion Ripe Deadline set for 11/25/2025.) by Hugh Brian Street. (Attachments: # 1 (p.10) Memorandum / Brief, # 2 (p.36) Proposed order) (crt,Savoy, A) (Entered: 11/26/2025), (QC'ed on 11/26/2025, by Alexander , E) |
| 11/25/2025 | 4 (p.45) | MOTION for Leave to Conduct Expedited Discovery and for Service by U.S Marshal by Hugh Brian Street. Motion Ripe Deadline set for 11/25/2025. (Attachments: # 1 (p.10) Request for Production of Documents)(crt,Savoy, A) (Entered: 11/26/2025), (QC'ed on 11/26/2025, by Alexander , E) |

| | | |
|---|---|---|
| 11/25/2025 | 5 (p.48) | Urgent MOTION for Service of Process by U.S Marshal by Hugh Brian Street. Motion Ripe Deadline set for 11/25/2025. (Attachments: # 1 (p.10) Proposed order) (crt,Savoy, A) (Entered: 11/26/2025), (QC'ed on 11/26/2025, by Alexander , E) |
| 11/25/2025 | | FILING FEE RECEIVED: on behalf of Hugh Brian Street in the amount of $405, receipt number 200000443. (crt,Savoy, A) (Entered: 11/26/2025) |
| 11/25/2025 | | CASE Assigned to Judge James D Cain, Jr and Magistrate Judge Thomas P LeBlanc. (crt,Alexander, E) (Entered: 11/26/2025) |
| 12/01/2025 | 6 (p.52) | MEMORANDUM ORDER denying 3 (p.38) Motion for TRO; denying 3 (p.38) Motion for Preliminary Injunction for the reasons stated. Signed by Judge James D Cain, Jr on 12/1/2025. (crt,Stewart, T) (Entered: 12/01/2025) |
| 12/01/2025 | 7 (p.54) | NOTICE of Filing of Proof of Service by Hugh Brian Street (Attachments: # 1 (p.10) Affidavit)(crt,Miletello, A) (Entered: 12/04/2025) |
| 12/02/2025 | 8 (p.60) | NOTICE of Filing Supplemental Exhibit B by Hugh Brian Street re 1 (p.10) Complaint. (Attachments: # 1 (p.10) Exhibit B)(crt,Miletello, A) (Entered: 12/04/2025) |
| 12/02/2025 | 9 (p.319) | MOTION for Permission to Participate in Electronic Filing by Hugh Brian Street. Motions referred to Magistrate Judge Thomas P LeBlanc. Motion Ripe Deadline set for 12/2/2025. (Attachments: # 1 (p.10) Proposed order) (crt,Miletello, A) (Entered: 12/04/2025), (QC'ed on 12/04/2025, by Miletello , A) |
| 12/03/2025 | 10 (p.324) | AMENDED COMPLAINT styled as Omnibus Notice of Correction to Record filed by Hugh Brian Street. (crt,Miletello, A) (Entered: 12/04/2025) |
| 12/03/2025 | 11 (p.327) | NOTICE of Clarification of Record by Hugh Brian Street re 6 (p.52) Memorandum Order (crt,Miletello, A) (Entered: 12/04/2025) |
| 12/05/2025 | 12 (p.330) | NOTICE of Consent to Receive Notice and Service Electronically by Hugh Brian Street (crt,Alexander, E) (Entered: 12/08/2025) |
| 12/05/2025 | 13 (p.331) | AMENDED COMPLAINT for Damages, Declaratory Relief, and Structural Injunction Relief, and Direct Action against A B C Insurance Co, Chuck Christ, Sam Craft, Louisiana Sheriffs Risk Management Program, Calvin Turner with Jury Demand filed by Hugh Brian Street. (Attachments: # 1 |

| | | |
|---|---|---|
| | | (p.10) Exhibit List, # 2 (p.36) Exhibits E)(crt,Alexander, E) (Entered: 12/08/2025) |
| 12/05/2025 | 14 (p.348) | MOTION for Reconsideration re 6 (p.52) Order on Motion for TRO, Order on Motion for Preliminary Injunction, MOTION to Expedite by Hugh Brian Street. (Motion Ripe Deadline set for 12/5/2025.) Motions referred to Magistrate Judge Thomas P LeBlanc. (Attachments: # 1 (p.10) Notice of Filing, # 2 (p.36) Proposed order)(crt,Alexander, E) (Entered: 12/09/2025), (QC'ed on 12/09/2025, by Alexander , E) |
| 12/05/2025 | | Motions Transferred regarding 14 (p.348) MOTION for Reconsideration re 6 (p.52) Order on Motion for TRO, Order on Motion for Preliminary Injunction MOTION to Expedite. Motions referred to Judge James D Cain, Jr. (crt,Alexander, E) (Entered: 12/09/2025) |
| 12/05/2025 | 15 (p.357) | MOTION to Expedite Discovery by Hugh Brian Street. Motions referred to Magistrate Judge Thomas P LeBlanc. Motion Ripe Deadline set for 12/5/2025. (Attachments: # 1 (p.10) Proposed order)(crt,Alexander, E) (Entered: 12/09/2025) |
| 12/08/2025 | 16 (p.361) | EXHIBIT 1 re 15 (p.357) MOTION to Expedite by Hugh Brian Street. (Attachments: # 1 (p.10) Notice of Service) (crt,Alexander, E) (Entered: 12/10/2025) |
| 12/08/2025 | 17 (p.383) | NOTICE of Clerk's Refusal of Courtesy Copies by Hugh Brian Street (crt,Alexander, E) (Entered: 12/10/2025) |
| 12/08/2025 | 18 (p.386) | NOTICE of Service of Interim Filings and Correction of Certificates of Service by Hugh Brian Street (crt,Alexander, E) (Entered: 12/10/2025) |
| 12/09/2025 | 19 (p.391) | SUMMONS Returned Executed by Hugh Brian Street. Chuck Christ served on 12/9/2025, answer due 12/30/2025; Sam Craft served on 12/9/2025, answer due 12/30/2025; Calvin Turner served on 12/9/2025, answer due 12/30/2025. (crt,Alexander, E) (Entered: 12/10/2025) |
| 12/10/2025 | 20 (p.394) | SUMMONS ISSUED as to A B C Insurance Co, Chuck Christ, Sam Craft, Louisiana Sheriffs Risk Management Program, Calvin Turner. (crt,Alexander, E) (Entered: 12/10/2025) |
| 12/10/2025 | 21 (p.409) | MEMORANDUM ORDER denying 4 (p.45) MOTION for Leave to Conduct Expedited Discovery and for Service; denying 5 (p.48) Motion for Service of Process; denying 15 (p.357) Motion to Expedite Discovery. Signed by Magistrate Judge Thomas P LeBlanc on 12/10/2025. (crt,Miletello, A) (Entered: 12/12/2025) |

| | | |
|---|---|---|
| 12/11/2025 | 23 (p.415) | SUMMONS Returned Executed by Hugh Brian Street. Louisiana Sheriffs Risk Management Program served on 12/9/2025, answer due 12/30/2025. (crt,Alexander, E) (Entered: 12/15/2025) |
| 12/12/2025 | 22 (p.412) | MEMORANDUM ORDER that 14 (p.348) Motion for Reconsideration concerning the preservation of surveillance evidence is DENIED and 2 (p.36) Motion for a Temporary Restraining Order to Preserve Evidence DENIED. IT IS FURTHER ORDERED that Plaintiffs remaining requests for a TRO (Doc. 3) against the Vernon Parish Sheriffs Office and Deputy Chuck Christ is DENIED. IT IS FURTHER ORDERED that Plaintiffs Motion for Expedited Consideration is GRANTED. Signed by Judge James D Cain, Jr on 12/12/2025. (crt,Miletello, A) (Entered: 12/12/2025) |
| 12/18/2025 | 24 (p.416) | Unopposed MOTION for Extension of Time to File Answer re 10 (p.324) Amended Complaint, 1 (p.10) Complaint, with consent < by Chuck Christ, John Craft, Louisiana Sheriffs Risk Management Program, Calvin Turner. Motions referred to Thomas P LeBlanc. Motion Ripe Deadline set for 12/18/2025. (Attachments: # 1 (p.10) Proposed order) (Attorney Jason Paul Wixom added to party Chuck Christ(pty:dft), Attorney Jason Paul Wixom added to party Sam Craft(pty:dft), Attorney Jason Paul Wixom added to party Louisiana Sheriffs Risk Management Program(pty:dft), Attorney Jason Paul Wixom added to party Calvin Turner(pty:dft))(aty,Wixom, Jason) Modified to correct filers on 12/18/2025. (Alexander, E) (Entered: 12/18/2025), (QC'ed on 12/18/2025, by Alexander , E) |
| 12/29/2025 | 25 (p.420) | ORDER granting 24 (p.416) Motion for Extension of Time to Answer re 1 (p.10) Complaint, 10 (p.324) Amended Complaint, 13 (p.331) Amended Complaint. Chuck Christ answer due 1/29/2026; John Craft answer due 1/29/2026; Louisiana Sheriffs Risk Management Program answer due 1/29/2026; Calvin Turner answer due 1/29/2026. Signed by Magistrate Judge Thomas P LeBlanc on 12/29/2025. (crt,Alexander, E) (Entered: 12/30/2025) |
| 01/07/2026 | 26 (p.421) | MOTION to Amend/Correct 1 (p.10) Complaint, with consent by Hugh Brian Street. Motions referred to Magistrate Judge Thomas P LeBlanc. Motion Ripe Deadline set for 1/7/2026. (Attachments: # 1 (p.10) Proposed pleading, # 2 (p.36) Proposed order)(crt,Thomas, T) (Entered: 01/07/2026), (QC'ed on 01/07/2026, by Thomas , T) |
| 01/20/2026 | 27 (p.438) | MOTION to Dismiss For Failure to State a Claim by Louisiana Sheriffs Law Enforcement Program. |

| | | |
|---|---|---|
| | | (Attachments: # 1 (p.10) Memorandum / Brief)(aty,Wixom, Jason) Modified filers on 1/21/2026. (Alexander, E) (Entered: 01/20/2026), (QC'ed on 01/21/2026, by Alexander , E) |
| 01/21/2026 | 28 (p.445) | NOTICE of Motion Setting without oral argument regarding: 27 (p.438) MOTION to Dismiss For Failure to State a Claim. Motions referred to Judge James D Cain, Jr. Motion day set for 2/25/2026 before Judge James D Cain Jr. (crt,Alexander, E) (Entered: 01/21/2026) |
| 01/21/2026 | 29 (p.446) | MOTION to Dismiss For Failure to State a Claim Sheriff John Craft, Chief Calvin Turner, and Deputy Chuck Christ, MOTION for More Definite Statement by Chuck Christ, John Craft, Calvin Turner. Motions referred to Thomas P LeBlanc. (Attachments: # 1 (p.10) Memorandum / Brief)(aty,Wixom, Jason) (Entered: 01/21/2026), (QC'ed on 01/22/2026, by Alexander , E) |
| 01/22/2026 | 30 (p.481) | NOTICE of Motion Setting without oral argument regarding: 29 (p.446) MOTION to Dismiss For Failure to State a Claim Sheriff John Craft, Chief Calvin Turner, and Deputy Chuck Christ MOTION for More Definite Statement. Motion day set for 2/25/2026 before Judge James D Cain Jr. (crt,Alexander, E) (Entered: 01/22/2026) |
| 01/22/2026 | 31 (p.482) | RESPONSE of Nonopposition to Motion re 27 (p.438) MOTION to Dismiss For Failure to State a Claim filed by Hugh Brian Street. (Attachments: # 1 (p.10) Proposed order)(crt,Alexander, E) (Entered: 01/22/2026) |
| 02/04/2026 | 32 (p.487) | MEMORANDUM in Opposition re 29 (p.446) MOTION to Dismiss For Failure to State a Claim Sheriff John Craft, Chief Calvin Turner, and Deputy Chuck Christ MOTION for More Definite Statement filed by Hugh Brian Street. (Attachments: # 1 (p.10) Exhibit)(crt,Chavis, J) (Entered: 02/04/2026) |
| 02/06/2026 | 33 (p.527) | REPLY to Response to Motion re 29 (p.446) MOTION to Dismiss For Failure to State a Claim Sheriff John Craft, Chief Calvin Turner, and Deputy Chuck Christ MOTION for More Definite Statement filed by Chuck Christ, Sam Craft, Calvin Turner. (aty,Wixom, Jason) (Entered: 02/06/2026), (QC'ed on 02/10/2026, by Miletello , A) |
| 03/05/2026 | 34 (p.533) | MEMORANDUM RULING granting 27 (p.438) MOTION to Dismiss For Failure to State a Claim filed by Louisiana Sheriffs Law Enforcement Program. Signed by Judge James D Cain, Jr on 3/5/2026. (crt,Jones, P) (Entered: 03/05/2026) |
| 03/05/2026 | 35 (p.537) | JUDGMENT, IT IS ORDERED, ADJUDGED, AND DECREED that the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b) |

| | | |
|---|---|---|
| | | (6) for Failure to State a Claim 27 (p.438) is GRANTED, dismissing the Louisiana Sheriffs Law Enforcement Program with prejudice. Signed by Judge James D Cain, Jr on 3/5/2026. (crt,Jones, P) (Entered: 03/05/2026) |
| 03/05/2026 | 36 (p.538) | MEMORANDUM RULING granting 29 (p.446) MOTION to Dismiss For Failure to State a Claim. Signed by Judge James D Cain, Jr on 3/5/2026. (crt,Jones, P) (Entered: 03/05/2026) |
| 03/05/2026 | 37 (p.560) | JUDGMENT, IT IS ORDERED, ADJUDGED, AND DECREED that the Motion to Dismiss Pursuant to Fed. R. of Civ. P. 12(b)(6) for Failure to State a Claim 29 (p.446) is GRANTED in its entirety, dismissing all of Plaintiffs claims with prejudice. Signed by Judge James D Cain, Jr on 3/5/2026. (crt,Jones, P) (Entered: 03/05/2026) |
| 04/02/2026 | 38 (p.561) | MOTION to Alter 36 (p.538) Memorandum Ruling, 37 (p.560) Judgment by Hugh Brian Street. Motion Ripe Deadline set for 4/2/2026. (Attachments: # 1 (p.10) Memorandum / Brief, # 2 (p.36) Proposed order) (crt,Miletello, A) (Entered: 04/06/2026), (QC'ed on 04/06/2026, by Miletello , A) |
| 04/06/2026 | 39 (p.575) | NOTICE of Motion Setting without oral argument regarding: 38 (p.561) MOTION to Alter 36 (p.538) Memorandum Ruling, 37 (p.560) Judgment. Motions referred to Judge James D Cain, Jr. Motion day set for 5/27/2026 before Judge James D Cain Jr. (crt,Miletello, A) (Entered: 04/06/2026) |
| 04/17/2026 | 40 (p.576) | MEMORANDUM in Opposition re 38 (p.561) MOTION to Alter 36 (p.538) Memorandum Ruling, 37 (p.560) Judgment filed by Chuck Christ, John Craft, Sam Craft, Calvin Turner. (aty,Wixom, Jason) (Entered: 04/17/2026), (QC'ed on 04/17/2026, by Chavis , J) |
| 04/21/2026 | 41 (p.584) | REPLY to Response to Motion re 38 (p.561) MOTION to Alter 36 (p.538) Memorandum Ruling, 37 (p.560) Judgment filed by Hugh Brian Street. (crt,Whitener, M) (Entered: 04/23/2026) |
| 04/29/2026 | 42 (p.593) | ORDER denying 38 (p.561) Motion to Alter Judgment. Signed by Judge James D Cain, Jr on 4/29/2026. (crt,Jones, P) (Entered: 04/29/2026) |
| 05/27/2026 | 43 (p.594) | NOTICE OF APPEAL filed by Hugh Brian Street, pro se. (Filing fee $605.00, receipt number ALAWDC-200000537) (crt,WalkerSld, B) (Entered: 05/28/2026) |
| 05/27/2026 | 44 (p.598) | APPEAL TRANSCRIPT REQUEST by Hugh Brian Street. Transcript Not Required (crt,WalkerSld, B) (Entered: |

| | | |
|---|---|---|
| | | 05/28/2026) |
| 06/15/2026 | | USCA Case Number 26-30329 for 43 (p.594) Notice of Appeal filed by Hugh Brian Street. (crt,WalkerSld, B) (Entered: 06/16/2026) |
| 06/15/2026 | | Set Deadline for Clerk re 43 (p.594) Notice of Appeal: Certify Appeal Record (26-30329) by Clerk to COA 6/30/2026. (crt,WalkerSld, B) (Entered: 06/16/2026) |
| 06/17/2026 | 45 (p.601) | MOTION Regarding Transmission of Exhibits for Appeal re 43 (p.594) Notice of Appeal by Hugh Brian Street. Motions referred to Magistrate Judge Thomas P LeBlanc. Motion Ripe Deadline set for 6/17/2026. (crt,WalkerSld, B) (Entered: 06/18/2026), (QC'ed on 06/18/2026, by WalkerSld , B) |
| 06/17/2026 | | Motions Transferred regarding 45 (p.601) Motion Regarding Transmission of Exhibits for Appeal re 43 (p.594) Notice of Appeal. Motions referred to Judge James D Cain, Jr. (crt,WalkerSld, B) (Entered: 06/18/2026) |
| 06/23/2026 | 46 (p.608) | ORDER denying 45 (p.601) Motion Regarding Transmission of Exhibits for Appeal. Signed by Judge James D Cain, Jr on 6/23/2026. (crt,Jones, P) (Entered: 06/23/2026) |

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **HUGH BRIAN STREET** | **CASE NO. 2:25-CV-01882** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CHUCK CHRIST ET AL** | **MAGISTRATE JUDGE LEBLANC** |

**JUDGMENT**

Pursuant to the Memorandum Ruling of this date,

**IT IS ORDERED, ADJDUGED, AND DECREED** that the Motion to Dismiss Pursuant to Fed. R. of Civ. P. 12(b)(6) for Failure to State a Claim (Doc. 29) is **GRANTED** in its entirety, dismissing all of Plaintiff's claims with prejudice.

**THUS DONE AND SIGNED** in chambers on this 5th day of March, 2026.

**JAMES. D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **HUGH BRIAN STREET** | **CASE NO. 2:25-CV-01882** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CHUCK CHRIST ET AL** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the Court is a "Motion to Dismiss Pursuant to Fed. R. of Civ. P. 12(b)(6) for Failure to State a Claim or, Alternatively, Motion for More Definite Statement Pursuant to Fed. R. Civ. P. 12(e) (Doc. 29) filed by Defendants, Sheriff John Craft, Chief Calvin Turner, and Deputy Chuck Christ (collectively referred to as "Defendants").

## BACKGROUND

In this lawsuit, Plaintiff Hugh Brian Street has named as Defendants, Sheriff Sam Craft, Chief Calvin Turner, Deputy Chuck Christ, and the Louisiana Sheriffs Law Enforcement Program ("LSLP")[1] concerning an alleged interaction between Deputy Christ and Plaintiff on November 18, 2025. Plaintiff alleges that on this date, he happened upon a traffic stop being conducted by Deputy Christ, and for an unknown reason, he began recording the encounter.[2] Upon exiting his vehicle, Deputy Christ ordered Plaintiff to leave the area or risk going to jail.[3] Plaintiff alleges he verbally refused.[4] Deputy Christ then

[1] The Court is dismissing LSLP in a separate Memorandum Ruling and Judgment.
[2] Doc. 13, ¶ 25.
[3] *Id.* ¶ 26.
[4] *Id.* ¶ 27.

asserted that Plaintiff was driving under suspension.[5] Thereafter, Plaintiff stopped recording and chose to leave.[6]

Deputy Christ then ordered Plaintiff to "hold up,"[7] and subsequently detained Plaintiff for having an expired inspection and an obstructed license plate.[8] Shortly thereafter, Deputy Christ instructed Plaintiff to leave.[9] Plaintiff drove away but returned to the scene on foot to resume filming.[10] Deputy Christ then resumed "his duties," however, Plaintiff alleges that Deputy Christ intimidated him by placing his hand on his gun and "staring at Plaintiff."[11]

Plaintiff has asserted the following causes of action: Count I--First Amendment Retaliation, 42 U.S.C. § 1983, Count II—Unlawful Seizure, 42 U.S.C. § 1983, Count III—Excessive Force/Assault, 42 U.S.C. § 1983, Count IV—Monell Liability as to Sheriff Craft, Count V—State Law claims of aggravated assault, public intimidation, malfeasance, IIED, and abuse of process, Count VI—Due Process (14th Amendment), Count VII—Conspiracy (42 U.S.C. § 1985), Count VIII—Equal Protection "Class of One" (14th Amendment), Count IX—Direct Action (La. R.S. 22:1269).

## <u>RULE 12(b)(6) STANDARD</u>

Rule 12(b)(6) allows for dismissal when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus on the

[5] *Id.* ¶ 28.
[6] *Id.* ¶ 29.
[7] *Id.* ¶ 30.
[8] *Id.* ¶ 31.
[9] *Id.* ¶ 32.
[10] *Id.* ¶ 36.
[11] *Id.* ¶¶ 38, 39.

complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). The court can also consider documents referenced in and central to a party's claims, as well as matters of which it may take judicial notice. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000); *Hall v. Hodgkins*, 305 Fed. App'x 224, 227 (5th Cir. 2008) (unpublished).

Such motions are reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Accordingly, the court's task is not to evaluate the plaintiff's likelihood of success but instead to determine whether the claim is both legally cognizable and plausible. *Lone Star Fund v. (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## LAW AND ANALYSIS

Defendants move to dismiss Plaintiff's 42 U.S.C. § 1983 action with prejudice; Defendants argue that Plaintiff has failed to allege a single valid claim under either the United States Constitution or Louisiana State law. Defendants move to dismiss each of Plaintiff's numerous claims, or in the alternative, Defendants request that Plaintiff be required to provide a more definite statement of his claims.

*Prescription*

Defendants move to dismiss any claims made by Plaintiff that are prescribed. In his Complaint Plaintiff refers to events that occurred beginning in 2011 through 2014 between him, his mother, and the Veron Parish Sheriff's Office ("VPSO").

Federal law does not provide a statute of limitations for § 1983 claims. Consequently, courts rely on state law. *Brown cv. Pouncy*, 93 F.4th 331 (5th Cir. 2024). Noting that "[o]ur court has repeatedly applied Louisiana's one-year prescriptive period" to § 1983 actions, the Fifth Circuit held that it was bound to continue that practice. *Id.* at 337-38.

Section 1983 actions and Louisiana state tort claims are governed by a one-year prescriptive period. *See McGregor v. LSU Bd. of Supervisors*, 3 F.3d 850, 863 (5th Cir. 1993). Prescription commences to run from the day any injury or damage is sustained. LSA-C.C. art. 3492. The burden of proof is normally on the party pleading prescription; however, if on the face of the complaint it appears that prescription has run, the burden shifts to the plaintiff to prove a suspension or interruption of the prescriptive period "based on the equitable doctrine of *contra non valentem. In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 389 (5th Cir. 2021) (cleaned up).

Plaintiff alleges that the subject incident occurred on November 18, 2025.[12] The Court agrees with Defendants that to the extent Plaintiff is attempting to bring any claim that occurred prior to November 18, 2024, said claim(s) are prescribed.

[12] Doc. 1.

*Excessive force and First Amendment retaliation claims*

Plaintiff alleges that Deputy Christ exhibited a "threat of lethal force against a compliant citizen," running afoul of the Fourteenth Amendment.[13] The Court has carefully reviewed the Complaint, which does not allege that Deputy Christ put his hand on Plaintiff or even touched him. Mere threats are not cognizable under § 1983. *McFadden v. Lucas,* 713 F.2d 143, 146 (5th Cir. 1983); *Hoffman v. Stulga*, 464 Fed.App'x 229, 232 (5th Cir. 2011).

To the extent Plaintiff is tying these allegations to his First Amendment Retaliation claim, "the Fifth Circuit has long held that mere threats of violence do not establish § 1983 liability," even within the framework of a First Amendment retaliation claim. *Hansard v. Zamora*, Civil Action No. 23-CV-00041-DC-DF, 2024 WL 3682240, at *6 (W.D.Tx. Aug. 5, 2024) (citing *Gibson v. Jean-Baptiste*, 802 Fed.App'x 858, 859–60 (5th Cir. 2020) (*per curiam*) ("[W]e have consistently rejected threat-based retaliation claims."); *see Eaker v. City of Moss Point,* No. 20-CV-92, 2021 WL 771756, at *8 (S.D.MS Feb. 26, 2021) (finding verbal abuse or intimidation "unprofessional or inappropriate" but not "ris[ing] to the level of actionable constitutional injury under § 1983.").

Plaintiff's only allegation is that Deputy Christ ordered Plaintiff to leave by telling him he better get in [his] car. Plaintiff insists that he and Deputy Christ had a "history." The "history" that Plaintiff relies upon allegedly took place in 2013, notably over a decade prior to the subject incident. As such, this alleged "history" is too attenuated to even be

[13] Doc. 13, Amended Complaint, Count III, p. 11.

considered in a retaliation claim. Taking Plaintiff's allegations as true, the Court finds that there is not one scintilla of an accusation that Deputy Christ used any type of force against Plaintiff, Plaintiff's allegations do not give rise to a retaliation claim or excessive force, and there was no unlawful detention.

*Seizure by Deputy Christ*

Plaintiff alleges that he was unlawfully seized and/or that he was detained based on fabricated pretexts. Plaintiff appears to indicate that a seizure occurred when Deputy Christ instructed Plaintiff to leave the area and subsequently instructed him to "hold on" while Deputy Christ inspected his license plate and verified the suspension of his license. Plaintiff has failed to establish that the alleged detention was motivated by Plaintiff's cumulative exercise of First Amendments rights as suggested by Plaintiff. The Court finds that the facts alleged by Plaintiff do not rise to the level of a seizure.

*Excessive force*

Plaintiff alleges that he was subjected to excessive force. However, Plaintiff has failed to allege any physical contact between Deputy Christ and Plaintiff. Claims "that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen" are "analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989). "To prevail on an excessive force claim, a plaintiff must show: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Tarver v. City of Edna*, 410

F.3d 745, 751 (5th Cir. 2005). The Court finds that Plaintiff's claims of excessive force are clearly without merit.

*Due process claim*

Plaintiff alleges that his due process rights were violated because he was given a contradictory order—first, to leave the area, and then to "hold up."

To state a plausible substantive due process claim, Plaintiff must establish that the Defendants' conduct "shocked the conscience in a constitutional sense." *Sterling v. City of Jackson, Mississippi*, 159 F.4th 361, 377 (5th Cir. 2025) (cleaned up). Section 1983 complaints must embrace more than a generic, amorphous claim of due process violations. *Dismukes v. Hackathorn*, 802 F.Supp. 1442, 1445 (S.D.Ms. 1992) (cleaned up). Vague, nebulous due process claims are too broad, given the complexities inherent in the due process clause of the Fourteenth Amendment, from which three distinct constitutional protections originate. *Id.* (cleaned up).

Substantive due process is violated by state conduct that "shocks the conscience," or constitutes force that is "brutal." *Rochin v. California*, 342 U.S. 165, 172-73, 72 S.Ct. 205 (1952). To determine whether a substantive due process violation existed in the context of § 1983, the Fifth Circuit subsequently developed a test around the *Johnson* factors in *Shillingford v. Holmes*, 634 F.2d 263, 265 (5th Cir. 1981). Tailored to fit the Fourteenth Amendment's concept of substantive due process, the *Shillingford* test considered whether the "state officer's action [1] caused severe injuries, [2] was grossly disproportionate to the need for action under the circumstances and [3] was inspired by malice rather than merely careless or unwise excess of zeal so that it amounted to an abuse of power that shocks the

conscience." None of the *Johnson* factors are met based on the alleged facts asserted by Plaintiff. The Court finds that Plaintiff's claim of a violation of due process is completely without merit.

*Civil conspiracy*

Plaintiff alleges a civil conspiracy between him and Defendants that is internal to the Vernon Parish Sheriff's Office. To prove a Section 1983 claim for conspiracy, a plaintiff must show: 1) the existence of a conspiracy involving state action; and 2) "a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019).

"Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987). To avoid dismissal, a plaintiff first must show "an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995). A plaintiff cannot establish that a conspiracy occurred by merely alleging it happened through conclusory allegations with no factual support. *Hicks v. Bexar Cnty., Tex.*, 973 F.Supp. 653, 676 (W.D. Tex. 1997). Allegations of conspiracy without facts demonstrating a prior agreement between defendants cannot survive a motion to dismiss. *See Hey v. Irving*, 161 F.3d 7, *3 (5th Cir. 1998) (per curiam) (holding that "plaintiffs' bare conclusory allegation that '[a]ll three defendants demonstrated a meeting of the mind' absent any specific facts showing that the defendants reached an agreement to violate their rights, is not sufficient to plead a § 1983 conspiracy") (citing *Arsenaux v.*

*Roberts*, 726 F.2d 1022, 1023-24 (5th Cir.1982)). Additionally, a plaintiff "must show that the defendants agreed to commit an illegal act." *Arsenaux*, 726 F.2d at 1022-24.

As a matter of law, a conspiracy requires two or more persons or entities. *Boyd v. Calcasieu Parish Sheriff's Office*, Civil Action No. 2013 WL 1857448, at *5 (W.D. La. May 2, 2013) (cleaned up). The intracorporate conspiracy doctrine provides that a corporation cannot conspire with itself through its agents or employees when the acts of the agents or employees are within the scope of their employment. *Id.* The intracorporate conspiracy doctrine also applies to government entities like VPSO. *Id.* (citing *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir.1994)).

It appears that Plaintiff is alleging that Deputy Christ, Sheriff Craft, and Chief Turner "acted in concert" to "deny Plaintiff equal protection." Defendants argue that any alleged conspiratorial actions between members of the VPSO is barred under the aforementioned doctrine. The Court agrees and finds that Plaintiff's allegations are vague and completely lacking in facts to establish any type of conspiracy, let alone a civil conspiracy, which is barred by the intracorporate conspiracy doctrine.

*Equal protection*

Plaintiff's equal protection claim appears to involve his allegations that he was "targeted due to personal animus." An equal protection claim requires the plaintiff to "show that (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000)).

Here, as noted by Defendants, Plaintiff has failed to allege that he was treated differently from others that are similarly situated. Thus, the Court finds that Plaintiff has failed to establish an equal protection claim.

*Monell*

Plaintiff alleges that Sheriff Craft has a "policy of impunity" based on his alleged failure to conduct internal investigations of VPSO employees, relying on *Monell v. Dep't of Soc. Servs. Of City of New York*, 436 U.S. 658, 98 S. Ct. 2018 (1978). In *Monell*, the Supreme Court reasoned that an official policy could be shown through written policy statements, ordinances, or regulations; a widespread practice that is so common and well-settled as to constitute a custom that represents municipal policy; or a single act conducted by an official or entity with final policymaking authority. *Sweetin v. City of Texas City, Texas*, 48 F.4th 387, 392 (5th Cir. 2022).

In order for a practice to be designated as a custom, it must have occurred for so long or so frequently that "the course of conduct warrants attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice" of municipal employees. *Martinez v. Nueces Cnty., Texas*, 71 F.4th 385, 389 (5th Cir. 2023) (quoting *Peterson v. City of Fort Worth*, 588 F.2d 838, 850-51 (5th Cir. 2009)). However, "[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy" as required for municipal Section 1983 liability. *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984), *cert. denied*, 472 U.S. 1016 (1985).

A governmental unit cannot be held liable for the acts of its employees solely on a theory of respondeat superior. *Valle v. City of Houston*, 613 F.3d 536, 541 (5th Cir. 2010).

Rather, to state a claim against a sheriff under *Monell* and its progeny, a plaintiff must plead that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Gomez v. Galman*, 18 F.4th 769, 777 (5th Cir. 2021) (cleaned up).

Here, Plaintiff has failed to show that there was an official policy promulgated by the municipal policymaker that was the moving force behind the violation of a constitutional right. Plaintiff has failed to allege that any actions he complains of were taken pursuant to Sheriff Craft's official policy. The sole comment by Calvin Turner—"we do not investigate our own," taken as true, does not indicate a pattern or custom, but only an single isolated comment.

Additionally, Plaintiff's allegations do not establish that Calvin Turner of Sheriff Craft ratified Deputy Christ's alleged conduct. "Even when an official with final policymaking authority does not directly act to set a policy, a municipality may be liable *in extreme factual situations* when that official ratifies a subordinate's decision, which requires more than the defense of a decision or action shown to be unconstitutional after the fact." *Webb v. Town of St. Joseph*, 925 F.3d 209, 217 (5th Cir. 2019) (*see also Davidson v. City of Stafford, Tex.,* 848 F.3d 384, 395 (5th Cir. 2017) (noting that ratification "is limited to 'extreme factual situations'"); *World Wide St. Preachers Fellowship v. Town of Columbia,* 591 F.3d 747, 755 (5th Cir. 2009) (same).

Likewise, Plaintiff's allegation that Calvin Turner failed to investigate Deputy Christ in response to Plaintiff's complaint "does not show that [the sheriff] knew of and approved the [allegedly] illegal character" of Deputy Christ's alleged actions. *Milam v.*

*City of San Antonio*, 113 Fed.App'x 622, 628 (5th Cir. 2004); *see also Medina v. Ortiz*, 623 Fed.App'x 695, 701 (5th Cir. 2015) (rejecting ratification theory where sheriff accepted officer's use of force report, refused to turn over evidence until suit was filed, and defendant officer's actions); *Peterson*, 588 F.3d at 848 (refusing to find ratification based on "a policymaker who defends conduct that is later shown to be unlawful."). And as the Fifth Circuit explained in *Peterson*, "it is hard to see how a policymaker's ineffectual or nonexistent response to an incident, which occurs well *after* the fact of the constitutional deprivation, could have *caused* the deprivation." *Id.*

To be sure, Plaintiff's *Monell* claims fail because "isolated events" do not evince "the persistent, often repeated constant violations that constitute custom and policy as required for municipal section 1983 liability." *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 437 (5th Cir.2008) (quoting *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir.1995)); *see Burge v. Tammany Parish*, 336 F.3d 363, 370 (5th Cir.2003).

*Qualified immunity*

Defendants argue that they are entitled to qualified immunity, noting that Plaintiff has sued each of these Defendants in their individual capacities. A state official can be sued in his individual capacity and held personally liable under § 1983 if a plaintiff can show the official, acting under state law, caused the deprivation of a federal right. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358 (1991). Per the United States Fifth Circuit Court of Appeals, "[t]his standard requires more than conclusional assertions. The plaintiff must allege specific acts giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741

(5th Cir. 2002). As a defense to § 1983 claims, government officials may invoke qualified immunity, which shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Club Retro, LLC v. Hilton*, 568 F.3d 181, 184 (5th Cir. 2009).

The Supreme Court emphasized that qualified immunity functions as immunity from suit, rather than a mere defense to liability. *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S.Ct. 808, 818 (2009). "[T]he qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Malley v. Briggs*, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1097-98 (1986); *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000). "This means that even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Bazan v. Hidalgo County*, 246 F.3d 481, 488 (5th Cir. 2001) (quoting *Glenn v. City of Tyler*, 242 F.3d. 307, 312 (5th Cir. 2001)).

Once the government official asserts qualified immunity, the burden shifts to the plaintiff to negate the defense. *Collier v. Montgomery*, 569 F.3d. 214, 217 (5th Cir. 2009). To overcome a claim of qualified immunity, a plaintiff must demonstrate: 1) that the official violated a statutory or constitutional right; and 2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 2080 (2011); *Club Retro, LLC*, 569 F.3d at 194. Per the Fifth Circuit, a constitutional right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right."

*Thompson v. Upshur County, TX*, 245 F.3d 447, 457 (5th Cir. 2001) (quoting *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

Defendants, Sheriff Craft and Calvin Turner argue that they are entitled to qualified immunity because Plaintiff has not alleged that they participated in any particular type of behavior.

Personal involvement is an essential aspect of a section 1983 cause of action. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.") (citing *Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (must be an affirmative link between injury and conduct of defendant)). The Fifth Circuit has held that a plaintiff must specify the personal involvement of each defendant in a section 1983 proceeding and "cannot make generalized allegations, nor can he support a claim based on any vicarious liability theory." *See Murphy v. Kellar*, 950 F.2d 290, 292 n.7 (5th Cir. 1992). The Court agrees and finds that Sheriff Craft and Calvin Turner are entitled to qualified immunity.

Defendant, Deputy Christ argues that he is entitled to qualified immunity because Plaintiff has failed to articulate a constitutional violation by Deputy Christ that was "clearly established" at the time of the challenged conduct. Plaintiff argues that his right to record the traffic stop and be free from seizure without reasonable suspicion are the constitutional violations that Deputy Christ violated. First, there was no seizure, thus no constitutional violation. As to his right to record, Plaintiff alleges that he was compliant and left the traffic stop area the first time of his own accord.

The Court finds that Deputy Christ is also entitled to qualified immunity. Plaintiff has failed to establish that his First Amendment rights were limited by Deputy Christ, and he has failed to establish that he suffered an actual injury. Therefore, all claims brought against these Defendant, Craft, Turner, and Christ, in their individual capacities will be dismissed.

*State law*

Plaintiff has alleged state law claims for aggravated assault, public intimidation, malfeasance, IIED, and abuse of process. Plaintiff does not assert who committed these acts of alleged misconduct. Be that as it may, Louisiana courts do not recognize grounds for civil liability from a criminal statute unless the Legislature expressly enacts such a cause of action. *See Gugliuzza v. K.C.M.C., Inc.*, 606 So.2d 790, 793 (La. 1992) *and Laird v. Travelers Ins. Co.*, 263 La. 199, 267 So.2d 714, 717 (La. 1972). Plaintiff has not shown that such a legislative enactment exists relative to his claims of aggravated assault, public intimidation, and malfeasance. As such, Plaintiff's state law claims of aggravated assault, public intimidation and malfeasance will be dismissed.

As to Plaintiff's claim of intentional infliction of emotional distress ("IIED"), under Louisiana law, in order to recover for intentional infliction of emotional distress, a plaintiff is required to establish three elements: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. 1991).

Defendants contend that Plaintiff has not pled any allegations showing that any of Defendants' alleged actions were "extreme and outrageous," that Plaintiff suffered severe emotional distress, or that any Defendant desired to inflict severe emotional distress which was certain or substantially certain to result. The Court agrees and will dismiss this claim.

As to Plaintiff's abuse of process claim, Defendants argue that Plaintiff has failed to comply with Federal Rule of Civil Procedure 8, which requires a short and plain statement of the claim showing that the pleader is entitled to relief. *Twombly*, 550 U.S. at 545.

The tort of abuse of process involves the misuse of a process whereby a party attempts to obtain some result not proper under law. *No Drama, LLC v. Caluda*, 177 So.3d 747, 751 (La. App. 5 Cir. 10/14/15); *Stark v. Eunice Superette, Inc.*, 457 So.2d 291 (La. App. 3 Cir.1984). An abuse of process claim has two essential elements: (1) the existence of an ulterior purpose, and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding. *No Drama, LLC*, 177 So.3d at 751. In other words, generally, Plaintiffs must demonstrate that the Defendant employed a legal process for an improper reason and with an ulterior purpose or motive. *Palowsky v. Campbell,* 22-592 (La. App. 5 Cir. 12/14/23), 378 So.3d 226 *(citing Mini–Togs,Inc. v. Young,* 354 So.2d 1389 (La. App. 2 Cir.1978)).

In order to set forth a cause of action for abuse of process, a plaintiff must allege irregularity in the process itself. *Delcambre v. Mancuso*, 2018-833, (La.App. 3 Cir. 4/10/19), 268 So.3d 325, 331. More specifically, an abuse of process occurs when the actor employs a legal process in a manner that although technically correct, is for a wrongful and

malicious purpose to obtain an unjustifiable end or an object that it was not the purpose of the particular process employed to effect. *Id.*, 2018-833 at p. 8, 268 So.3d at 331. The tort involves the misuse of a process already legally issued whereby a party attempts to obtain a result not proper under the law; at issue in such actions is the intent to use a legal process for an improper reason. *Goldstein v. Serio*, 496 So.2d 412, 415 (La.App. 4 Cir. 1986). Therefore, if the process is used to redress a legal wrong, the person who invoked the legal process cannot be said to have committed any tort, regardless of whether his motive was vicious or vindictive; on the other hand, when the person who invoked the legal process seeks by the use of such process to attain some collateral objective, outside the scope of the operation of the process employed, a tort arises. *Hebert v. Louisiana Licensed Prof'L Vocational Rehabilitation Counselors*, 2007-610, p. 9 (La.App. 3 Cir. 3/4/09), 4 So.3d 1002, 1009, *writ denied*, 2009-0750 (La. 5/22/09), 9 So.3d 144, *and writ denied*, 2009-0753 (La. 5/22/09), 9 So.3d 144; *See also Waguespack*, 99-2016 at p. 6, 768 So.2d at 291 ("A legal and legitimate use of process, to effect the result which such process is designed by law to accomplish, is not an abuse thereof. Regular use of process cannot constitute abuse, even though the user was actuated by a wrongful motive, purpose, or intent, or by malice.").

Finally, the acts alleged to constitute the abuse or perversion of the process must result in damage. *Mini-Togs, Inc.*, 354 So.2d at 1391 (citing *Italian Star Line v. U.S. Shipping Bd. Emergency Fleet Corp.*, 53 F.2d 359, 362 (2d Cir. 1931)).

Defendants contend that Deputy Christ has a legal right to approach Plaintiff and inquire into his activities, and furthermore Plaintiff has failed to assert that he is entitled to

relief. *Twombly*, 550 U.S. at 545. The Court agrees and finds that Plaintiff has failed to state a claim for abuse of process.

Summarizing, the Court finds that Plaintiff's state law claim for aggravated assault, public intimidation, malfeasance, IIED, and abuse of process are without merit for the reasons explained herein and will be dismissed.

*Injunctive relief*

Plaintiff seeks injunctive relief by way of "[a]n Order appointing a Federal Monitor to oversee the VPSO Internal Affairs division and Use of Force reporting" and "[p]ermanently enjoining Deputy Chuck Christ from initiating any conduct, traffic stop, or detention of Plaintiff without a warrant."

The Fifth Circuit has explained that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief"; "that a claim for injunctive relief must have its own Article III footing, separate from the past injury that supports claims for retrospective relief"; and that, "to obtain injunctive relief, the plaintiff must establish a real and immediate threat that he w[ill] again suffer similar injury in the future" and that, "[a]bsent such a showing, there is no case or controversy regarding prospective relief, and thus no basis in Article III for the court's power to issue an injunction." *In re Stewart*, 647 F.3d 553, 557 (5th Cir. 2011) (cleaned up). "Although past wrongs may help establish the threat of a future injury, they are insufficient alone." *Arkansas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014).

To receive injunctive relief, Plaintiff must show: "(1) there is a substantial likelihood that the movant will prevail on the merits; (2) there is a substantial threat that

irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the granting of the injunction will not disserve the public interest." *Vazquez Barrera v. Wolf*, 455 F.Supp.3d 330, 335 (5th Cir. 2020) (cleaned up).

To receive a permanent injunction, a plaintiff must first establish success on the merits and then meet a four-part test showing that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of the hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 390, 126 S.Ct. 1837 (2006).

As to Plaintiff's request for a injunctive relief, whether temporary or preliminary, Plaintiff has failed to show a real and immediate threat that he will suffer similar injury in the future, thus this Court has no power to issue an injunction. "Although past wrongs may help establish the threat of a future injury, they are insufficient alone." *Arkansas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014). As to Plaintiff's request for the permanent injunction, Plaintiff has failed to establish that he would succeed on the merits, nor has he shown that he has suffered an irreparable injury. Thus, Plaintiff has failed to establish the requisite elements for this Court to issue a temporary or permanent injunction.

Additionally, Plaintiff has failed to establish an irreparable injury and/or that there are no available remedies at law. Finally, Plaintiff has failed to establish that a remedy in equity is warranted based on the balance of the hardship between Plaintiff and Defendants,

nor has Plaintiff established that the public interest would not be disserved by a permanent injunction.

Concerning Plaintiff's request for the appointment of a federal monitor to oversee the VPSO internal affairs division, such requested relief extends further than necessary to correct the alleged violation of Plaintiff's rights. Plaintiff's request to permanently enjoin Deputy Chuck Christ from initiating any contact, traffic stop, or detention of Plaintiff without a warrant is unrealistic and untenable. As such, Plaintiff's request for injunctive relief will be denied.

*Declaratory relief*

Plaintiff is seeking a declaratory judgment that the VPSO's alleged "no investigation" policy is unconstitutional. Defendants argue that Plaintiff has not shown that the VPSO has repeated constant violations, which constitute a custom or practice, nor has Plaintiff shown that he is entitled to have an internal investigation conducted into the sheriff's office employees. The Court agrees with Defendant and will deny Plaintiff's request.

*Failure to train and/or supervise*

In his opposition, Plaintiff contends that Sheriff Craft failed to train or supervise under a theory of supervisory liability in a manner which constitutes deliberate indifference. "The deliberate indifference standard is a high one." *Doe v. Ferguson,* 128 F.4th 727, 735 (5th Cir. 2025) (cleaned up). And, to act with deliberate indifference, "a state actor must know of and disregard an excessive risk to the

victim's health or safety." *Id.* (cleaned up). "The state actor's actual knowledge is critical to the inquiry—a failure to alleviate a significant risk he should have perceived but did not...does not rise to the level of deliberate indifference." *Id.* (cleaned up). To demonstrate deliberate indifference under claims of supervisory liability for a failure to train or supervise, Plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official, (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference. *Landor v. Louisiana Dep't of Corr. And Pub. Safety,* 21-733-SDD-SDJ, 2022 WL 4593085, at *2 (M.D. La. Sept. 29, 2022) (citing *Brauner v. Coody,* 793 F.3d 493, 501 (5th Cir. 2015)).

Supervisory liability for failure to train or supervise allegations cannot be conclusory; conclusory allegations "are insufficient to set out a constitutional claim." *Id.* (citing *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir. 2005)). Crucially, "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Id.* (citing *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2010)); *see also Snyder v. Trepangnier*, 142 F.3d 791, 798-99 (5th Cir. 1998) (generally requiring that a plaintiff demonstrate at least a pattern of similar violations).

Here, Plaintiff did not plead this claim in his complaint, and taking the facts as true, he has failed to establish that Sheriff Craft failed to supervise or train Deputy Christ. Additionally, Plaintiff has failed to show any causal link between a failure to train and/or supervise, or that said failure amounts to deliberate indifference.

## CONCLUSION

For the reasons explained herein, the Motion to Dismiss Pursuant to Fed. R. of Civ. P. 12(b)(6) for Failure to State a Claim (Doc. 29) will be **GRANTED** in its entirety, dismissing all of Plaintiff's claims with prejudice.

**THUS DONE AND SIGNED** in chambers on this 5th day of March, 2026.

**JAMES. D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION**

**HUGH BRIAN STREET** | **CASE NO. 2:25-CV-01882**

**VERSUS** | **JUDGE JAMES D. CAIN, JR.**

**CHUCK CHRIST ET AL** | **MAGISTRATE JUDGE LEBLANC**

**MEMORANDUM ORDER**

Before the Court is "Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction" (Doc. 3) wherein *pro se* Plaintiff, Hugh Brian Street appears to move to preserve certain evidence.

Courts have a right to expect that litigants and counsel will take the necessary steps to ensure that relevant records are preserved when litigation is reasonably anticipated, and that such records are collected, reviewed, and produced to the opposing party." *Quantlab Technologies Ltd. (BGI) v. Godlevsky*, 2014 U.S. Dist. LEXIS 20305, 2014 WL 651944, *7 (S.D. Tex. Feb. 19, 2014) (citation omitted). "The duty to preserve 'arises when a party has notice that the evidence is relevant to litigation or ... should have known that the evidence may be relevant to future litigation. Generally, the duty to preserve extends to documents or tangible things ... by or to individuals likely to have discoverable information that the disclosing party may use to support its claims or defenses.'" 2014 U.S. Dist. LEXIS 20305 [WL] at *8 (citations omitted). This duty may extend to a non-party to a proceeding when there is a special relationship involving the non-party or when the non-party enters into an agreement to preserve the evidence sought to be obtained. [*3] See A*ndra Group, LP v. JDA Software Group, Inc.*, 2015 U.S. Dist. LEXIS 182527, 2015 WL 12731762, *15 (N.D. Tex. Dec. 9, 2015) (addressing the obligation of non-parties to preserve evidence

and noting that, "[a]bsent some special relationship or duty rising by reason of an agreement, contract, statute, or other special circumstance, the general rule is that there is no duty to preserve possible evidence for another party to aid that other party in some future legal action against a third party" (internal quotation marks omitted)). "Spoliation" of evidence "refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." See *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001). See also *Rimkus Consulting Group, Inc. v. Cammarata*, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010).

In the instant case, Plaintiff apparently forwarded correspondence to LSP officials shortly after the incident complained of and requested that any video recordings of the incident be preserved. There is no indication in the record that Plaintiff's request was not complied with or even whether such recordings exist or existed. See *Dixon v. Greyhound Lines, Inc.*, 2014 U.S. Dist. LEXIS 159714, 2014 WL 6087226, *3 (M.D. La. Nov. 13, 2014) (collecting cases addressing the obligation to preserve video evidence or an accident or incident). Further, there is no indication that intervention by the Court is warranted to preserve evidence that may or may not have been retained. Accordingly,

**IT IS ORDERED** that Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction" (Doc. 3) is **DENIED.**

**THUS DONE AND SIGNED** in chambers on this 1st day of December, 2025.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **HUGH BRIAN STREET** | : | **DOCKET NO. 2:25-cv-01882** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **CHUCK CHRIST ET AL** | : | **MAGISTRATE JUDGE LEBLANC** |

**MEMORANDUM ORDER**

Before the court is *pro se* plaintiff Hugh Brian Street's motions for Leave to Conduct Expedited Discovery and for Service by U.S. Marshal [doc. 4] (the "Discovery Motion") and for Service of Process by U.S Marshal **INSTANTER** (IMMEDIATELY) [doc. 5] (the "Service Motion"). Additionally, Plaintiff has filed a Notice of Filing Proposed Order [doc. 15] to supplement the Discovery Motion. For the reasons set forth below, the motions are **DENIED**.

Plaintiff filed the Discovery Motion, asking for "immediate service" of a set of requests for production, arguing such discovery was necessary to prevent spoliation of certain video evidence. Doc. 4. Plaintiff claims good cause for this premature discovery, as the evidence sought to be preserved is needed to aid the court in resolving his previous Motion for Temporary Restraining Order and Motion for Preliminary Injunction [doc. 3] (the "TRO/PI Motion"). *Id.* In the Service Motion, Plaintiff seeks to have the U.S. Marshal serve his complaint, and to do so "**FORTHWITH** (within 24 hours)." Doc. 5. Plaintiff contends such "**IMMEDIATE** service" is needed to avoid spoliation of evidence and that service by the U.S. Marshal is appropriate because, based on his allegations of aggravated assault against certain defendants, "[p]ersonal service by the Plaintiff would create a high risk of confrontation." *Id.*

Since the filing of these motions, however, this court has denied Plaintiff's TRO/PI Motion, which essentially asserted the same concerns as the instant motions, i.e., fear of spoliation and the need to preserve evidence. Doc. 6. Specifically, this court stated

> In the instant case, Plaintiff apparently forwarded correspondence to LSP officials shortly after the incident complained of and requested that any video recordings of the incident be preserved. There is no indication in the record that Plaintiff's request was not complied with or even whether such recordings exist or existed. See *Dixon v. Greyhound Lines, Inc.*, 2014 U.S. Dist. LEXIS 159714, 2014 WL 6087226, *3 (M.D. La. Nov. 13, 2014) (collecting cases addressing the obligation to preserve video evidence or an accident or incident). Further, there is no indication that intervention by the Court is warranted to preserve evidence that may or may not have been retained.

Doc. 6, p. 2. As the court has already determined there is no need for court intervention to prevent spoliation, it follows that there is also no need to expedite discovery or service on defendants for the same reasons. There are no facts presented that suggest the evidence sought through Plaintiff's discovery is not being preserved and therefore no need to stray from the prescribed procedure set out in Federal Rule of Civil Procedure 26(d)(1).[1] Accordingly, Plaintiff's Motion for Leave to Conduct Expedited Discovery and for Service by U.S. Marshal [doc. 4] is **DENIED.**

Moreover, Plaintiff's request that the U.S. Marshal Service serve defendants with his complaint, expeditiously or otherwise, is not warranted. In support of his request for service by the U.S. Marshal, Plaintiff makes the same spoliation argument heretofore rejected and also cites concerns for his personal safety. Specifically, Plaintiff submits that, as he was allegedly the victim of an aggravated assault committed by one of the defendants, he fears confrontation should he attempt to personally serve the defendants. Doc. 5. According to Federal Rule of Civil Procedure

[1] "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1).

4(c), however, Plaintiff is prohibited from serving any document on the defendants himself.[2] Further, although Federal Rule of Civil Procedure 4(c)(3) permits service by a marshal or deputy marshal, it does not command it when a plaintiff is not proceeding *in forma pauperis*, which Plaintiff is not.[3] Instead, as noted *supra* note 2, any nonparty at least 18 years of age may execute service, and such process seems more appropriate here as Plaintiff's concerns for his own safety are alleviated by Rule 4(c)(2)'s prohibition of him making the service himself. Accordingly, Plaintiff's Urgent Motion for Service of Process by United States Marshal [doc. 5] is **DENIED.**

For the reasons discussed above,

**IT IS HEREBY ORDERED** that plaintiff Hugh Brian Street's Motion for Leave to Conduct Expedited Discovery and for Service by U.S. Marshal [doc. 4], as supplemented [Doc. 15], is **DENIED.**

**IT IS HEREBY FURTHER ORDERED** that Plaintiff's Urgent Motion for Service of Process by United States Marshal [doc. 5] is **DENIED.**

**THUS DONE AND SIGNED** in chambers this 10th day of December, 2025.

**THOMAS P. LEBLANC**
**UNITED STATES MAGISTRATE JUDGE**

[2] "Any person who is at least 18 years old *and not a party* may serve a summons and complaint." Fed. R. Civ. P. 4(c)(2) (emphasis added).
[3] At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915 or as a seaman under 28 U.S.C. § 1916. Fed. R. Civ. P. 4(c)(3).

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION**

| | |
|---|---|
| **HUGH BRIAN STREET** | **CASE NO. 2:25-CV-01882** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **CHUCK CHRIST ET AL** | **MAGISTRATE JUDGE LEBLANC** |

# MEMORANDUM ORDER

Before the Court is *pro se* Plaintiff, Hugh Brian Street's Motion to Reconsider and Motion to Expedite (Doc. 14), wherein Plaintiff requests that the Court reconsider its denial of Plaintiff's requested Temporary Restraining Order[1] to order Defendants to preserve all video surveillance. Plaintiff complains that the Court failed to address part of his request for a TRO against the Vernon Parish Sheriff's Office and Deputy Chuck Christ. In one of two motions filed by Plaintiff for a TRO,[2] Plaintiff alleges that (1) Deputy Christ threatened lethal force and reached for his weapon, and (2) Deputy Christ has a pre-existing grudge stemming from a 2013 incident.

Plaintiff also alleges that he has a reasonable fear of retaliation based on unresolved allegations of violence and A suspicious death—the Bradley Stracener case--and that "[t]he administration admitted: "We do not Investigate our own."[3] Plaintiff specifically requests that the TRO (1) enjoin Deputy Chuck Christ from coming within 100 feet of Plaintiff, his home, or his vehicle, (2) order the VPSO to dispatch a different agency such as the

[1] Docs. 3 and 6.
[2] Doc. 3.
[3] Doc. 3 ¶¶ 2 and 3.

Louisiana State Police or a different deputy for any bona fide calls for service regarding Plaintiff, and (3) order Defendants to preserve all video evidence.

The ruling of this Court only addressed the issue of preserving all video evidence based on fundamental law. The Court will not revisit that issue. As to the remaining requests for a TRO, Plaintiff has failed to show that all of the factors necessary to grant the relief requested are met.

The Court notes that Plaintiff has not served the Defendants in this case. "A temporary restraining order is an extraordinary remedy that generally is reserved for emergent situations in which a party may suffer irreparable harm during the time required to give notice to the opposite party or where notice itself may precipitate the harm." *Moon v. Sissen*, 2024 WL 5324949, at *1 (E.D. Mich. Dec. 16, 2024) (quoting *Brown v. Countrywide Home Loans*, 2009 WL 1798069, at *1 (E.D. Mich. June 19, 2009).

This Court may issue a temporary restraining order without written or oral notice to the adverse party only if:

> (A) Specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) The movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Federal Rule of Civil Procedure 65(b)(1).

Here, Plaintiff's request will be denied because he does not satisfy either requirement in Rule 65(b)(1). Plaintiff has failed to present "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or

damage will result to [him] before the [Defendants] can be heard in opposition." Federal Rule of Civil Procedure 65(b)(1)(A). Nor does Plaintiff "certify[y] in writing any efforts made to give notice and the reasons why it should not be required." Federal Rule of Civil Procedure 65(b)(1)(B).

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Reconsideration (Doc. 14) concerning the preservation of surveillance evidence is **DENIED** and the Motion for a Temporary Restraining Order to Preserve Evidence (Doc. 2) is **DENIED.**[4]

**IT IS FURTHER ORDERED** that Plaintiff's remaining requests for a TRO (Doc. 3) against the Vernon Parish Sheriff's Office and Deputy Chuck Christ is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Expedited Consideration is **GRANTED.**

**THUS DONE AND SIGNED** in chambers on this 12th day of December, 2025.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

[4] The Motions in Docs. 2 and 3 both request a TRO as to preservation of video surveillance.

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

**HUGH BRIAN STREET** | **CASE NO. 2:25-CV-01882**

**VERSUS** | **JUDGE JAMES D. CAIN, JR.**

**CHUCK CHRIST ET AL** | **MAGISTRATE JUDGE LEBLANC**

# ORDER

Before the Court is "Plaintiff's Rule 59(e) Motion to Alter or Amend the Judgment" (Doc. 38) wherein, Plaintiff moves for the Court to amend and/or alter its Judgment issued March 5, 2026.[1] The Court has carefully reviewed the Motion and the arguments made and find that there is no basis in law or fact to grant Plaintiff's Motion. Accordingly,

**IT IS ORDERED** that Plaintiff's Rule 59(e) Motion to Alter or Amend the Judgment" (Doc. 38) is **DENIED.**

**THUS DONE AND SIGNED** in chambers on this 29th day of April, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

[1] Docs. 36 and 37.

# ADDENDUM ITEM 8: VERBATIM TEXT OF RELEVANT CONSTITUTIONAL, STATUTORY, AND RULE PROVISIONS

## 1. CONSTITUTIONAL PROVISIONS

### U.S. CONST. AMEND. I

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

### U.S. CONST. AMEND. IV

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

**U.S. CONST. AMEND. XIV, § 1**

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

**2. FEDERAL STATUTES**

**42 U.S.C. § 1983 - Civil action for deprivation of rights**

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress..."

**42 U.S.C. § 1988(b) - Proceedings in vindication of civil rights; Attorney's fees**

"(b) Attorney's fees. In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs..."

**42 U.S.C. § 1997e(e) - Limitation on recovery**

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of title 18)."

**28 U.S.C. § 1291 - Final decisions of district courts**

"The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the District Court of the Virgin Islands, the District Court of Guam, and the District Court of the Northern Mariana Islands, except where a direct review may be had in the Supreme Court."

**28 U.S.C. § 1331 - Federal question**

"The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

**28 U.S.C. § 1343(a)(3) - Civil rights and elective franchise**

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person... to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

**28 U.S.C. § 1367(a), (c) - Supplemental jurisdiction**

"(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution...

(c) The district courts may decline to exercise supplemental jurisdiction over a

claim under subsection (a) if... (3) the district court has dismissed all claims over which it has original jurisdiction..."

**28 U.S.C. § 2106 - Determination**

"The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

**28 U.S.C. § 2201(a) - Creation of remedy**

"In a case of actual controversy within its jurisdiction... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

## 3. FEDERAL RULES OF APPELLATE, CIVIL PROCEDURE & EVIDENCE

**FED. R. APP. P. 4(a)(1)(A), (4)(A)(iv) - Appeal as of Right—When Taken**

"(1) Time for Filing a Notice of Appeal. (A) In a civil case, except as provided in Rules 4(a)(1)(B), 4(a)(4), and 4(c), the notice of appeal required by Rule 3 must be filed with the district clerk within 30 days after entry of the judgment or order appealed from...

(4) Effect of a Motion on a Notice of Appeal. (A) If a party files in the district court any of the following motions under the Federal Rules of Civil Procedure—and does so within the time allowed by those rules—the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion: ... (iv) to alter or amend the judgment under Rule 59..."

**FED. R. APP. P. 39(a) - Costs**

"(a) Against Whom Assessed. The following rules apply unless the law provides or the court orders otherwise:

(1) if an appeal is dismissed, costs are taxed against the appellant, unless the parties agree otherwise;

(2) if a judgment is affirmed, costs are taxed against the appellant;

(3) if a judgment is reversed, costs are taxed against the appellee;

(4) if a judgment is affirmed in part, reversed in part, modified, or vacated, costs are taxed only as the court orders."

**FED. R. CIV. P. 8(a)(2) - General Rules of Pleading; Claim for Relief**

"(a) Claim for Relief. A pleading that states a claim for relief must contain: ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief..."

**FED. R. CIV. P. 10(c) - Adoption by Reference; Exhibits**

"A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."

**FED. R. CIV. P. 12(b)(6), (d) - Defenses and Objections**

"(b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion: ... (6) failure to state a claim upon which relief can be granted...

(d) Result of Presenting Matters Outside the Pleadings. If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."

**FED. R. CIV. P. 15(a)(2) - Amendments Before Trial**

"In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires."

**FED. R. CIV. P. 37(e) - Failure to Preserve Electronically Stored Information**

"If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another

party of the information's use in the litigation may: (A) presume that the lost information was unfavorable to the party; (B) instruct the jury that it may or must presume the information was unfavorable to the party; or (C) dismiss the action or enter a default judgment."

**FED. R. CIV. P. 54(c) - Demand for Judgment; Relief to Be Granted**

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings. Every other final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."

**FED. R. CIV. P. 56(a) - Motion for Summary Judgment or Partial Summary Judgment**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

**FED. R. CIV. P. 59(e) - Motion to Alter or Amend a Judgment**

"A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

**FED. R. CIV. P. 61 - Harmless Error**

"Unless justice requires otherwise, no error in admitting or excluding evidence, or any other error by the court or a party, is ground for granting a new trial, for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."

**FED. R. CIV. P. 65(b)(1) - Temporary Restraining Orders**

"The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

**FED. R. EVID. 201(b), (c) - Judicial Notice of Adjudicative Facts**

"(b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

(c) Taking Notice. The court: (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information."

**FED. R. EVID. 404(b) - Other Crimes, Wrongs, or Acts**

"(1) Prohibited Uses. Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

## 4. LOUISIANA CIVIL CODE & REVISED STATUTES

### LA. CIV. CODE ART. 1 - Sources of law

"The sources of law are legislation and custom."

### LA. CIV. CODE ART. 2315(A) - Liability for acts causing damages

"Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

### LA. CIV. CODE ART. 2320 - Acts of servants, students or apprentices

"Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed..."

### LA. REV. STAT. § 14:36 - Assault defined

"Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."

**LA. REV. STAT. § 14:122 - Public intimidation**

"Public intimidation is the intentional use of force or threats upon any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty: (1) Public officer or public employee..."

**LA. REV. STAT. § 14:134 - Malfeasance in office**

"Malfeasance in office is committed when any public officer or public employee shall intentionally: (1) Refuse or fail to perform any duty lawfully required of him, as such officer or employee; or (2) Intentionally perform any such duty in an unlawful manner..."