NO. 26-30329

# In the United States Court of Appeals for the Fifth Circuit

HUGH BRIAN STREET,
*Plaintiff – Appellant*

V.

CHUCK CHRIST, Deputy, in his individual capacity; CALVIN TURNER, Chief of Operations, in his individual capacity; SAM CRAFT, individually and in his capacity as Sheriff; ABC INSURANCE COMPANY; JOHN CRAFT, Sheriff
*Defendants – Appellees*

---

On Appeal from the United States District Court for the Western District of Louisiana
2:25-cv-01882

---

ORIGINAL BRIEF OF DEFENDANTS-APPELLEES, CHUCK CHRIST, CALVIN TURNER, AND JOHN CRAFT

---


Respectfully Submitted by:

*/s/ Jason P. Wixom*
**Jason P. Wixom (LSBN 32273)**
**RODRIGUE & ARCURI, LLP**
1615 Poydras St., Ste. 1250
New Orleans, LA 70112
Phone: (504)592-4600
Fax: (504)592-4641
Email: jason@rodriguearcuri.com
***Counsel for Defendants-Appellees Chuck Christ, Calvin Turner, and John Craft***

# CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualifications or recusal.

1. Hugh Brian Street, Plaintiff-Appellant;
2. Chuck Christ, Defendant-Appellee;
3. Calvin Turner, Defendant-Appellee;
4. Sheriff John Craft, Defendant-Appellee
5. Louisiana Sheriff's Law Enforcement Program, an inter-local risk management fund created pursuant to statutory authority; and
6. Jason P. Wixom, Laura Rodrigue, Blake J. Arcuri, current and/or former counsel for Defendants-Appellees, Chuck Christ, Calvin Turner, and Sheriff John Craft.

*/s/Jason P. Wixom*
JASON P. WIXOM
Attorney of Record for Chuck Christ, Calvin Turner, and Sheriff John Craft

## STATEMENT REGARDING ORAL ARGUMENT

Chuck Christ, Calvin Turner, and Sheriff John Craft, through counsel, submit to the Court that oral argument in this Appeal is unnecessary. The district court dismissed Appellant's claims on the pleadings, and the dispositive questions; namely, whether the facts alleged in the operative complaint state a claim and whether those facts overcome qualified immunity, are resolved by settled precedent. The facts and legal arguments are adequately presented in the briefs and record, and this Court's analysis would not be significantly aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................ i

STATEMENT REGARDING ORAL ARGUMENT .................................. ii

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES ..................................................................... vi

JURISDICTIONAL STATEMENT ........................................................... 1

ISSUES PRESENTED FOR REVIEW ...................................................... 3

STATEMENT OF THE CASE ................................................................. 5

I. BACKGROUND FACTUAL ALLEGATIONS ........................ 5

II. The Course of Proceedings Below ........................................... 8

SUMMARY OF THE ARGUMENT ....................................................... 10

ARGUMENT ......................................................................................... 12

I. Standard of Review and Governing Principles .................... 12

II. The District Court Applied the Correct Rule 12(b)(6) Standard. ..................................................................... 14

III. Street Did Not Plead a Viable Fourth Amendment Claim. ............................................................................ 16

A. An instruction to leave the scene is not a seizure....... 17

B. The brief "hold up" and identification check did not violate the Fourth Amendment. ............................ 18

C. Nothing that occurred while Street stood fifty yards away was a seizure. ............................................ 20

D. Resting a hand on a holstered weapon is not excessive force. ............................................................ 21

E. Deputy Christ is entitled to qualified immunity on the Fourth Amendment claims. .............................. 23

IV. Street Did Not Plead a Viable First Amendment Retaliation Claim (Response to Issue 5). .............................. 24

A. Street alleges no injury that would chill a person of ordinary firmness. .................................................. 25

B. Street does not plausibly allege retaliatory causation. .................................................................. 27

C. Deputy Christ is entitled to qualified immunity on the First Amendment claim. .................................. 28

V. The Claims Against Chief Turner and Sheriff Craft Were Properly Dismissed (Response to Issues 2, 5, and 8). ........................................................................... 29

A. Neither supervisor personally participated in any constitutional violation. ............................................... 29

B. There is no constitutional right to have a criminal complaint accepted or investigated, and the Petition Clause imposes no duty to act on a grievance. .................................................................. 29

C. Street did not state a Monell or official-capacity claim. ......................................................................... 31

D. The conspiracy claim fails. ......................................... 35

E. The "class of one" equal-protection claim fails. .......... 36

F. The due-process claim fails. ........................................ 37

VI. The District Court Correctly Applied Qualified Immunity (Response to Issue 9). .......................................... 38

VII. The State-Law Claims and the Requests for Prospective Relief Were Properly Dismissed (Response to Issues 8 and 9). ................................................................ 39

A. Street's state-law claims fail. .... 39

B. Street lacks standing to seek injunctive or declaratory relief. .... 42

VIII. Street's Procedural Complaints Provide No Basis for Reversal (Response to Issues 6 and 7). .... 43

A. The district court did not abuse its discretion by entering judgment without granting further leave to amend. .... 43

B. The district court did not abuse its discretion with respect to appointment of counsel. .... 45

C. Street's challenges to the interlocutory TRO, preservation, and discovery orders are moot, forfeited, and meritless .... 46

D. Reassignment is unwarranted. .... 48

CONCLUSION .... 49

CERTIFICATE OF SERVICE .... 51

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) .... 52

CERTIFICATE OF COMPLIANCE WITH RULE 25.2 .... 53

# TABLE OF AUTHORITIES

## Cases

*Allen v. Hays*,
65 F.4th 736 (5th Cir. 2023) .... 13

*Anderson v. Creighton*,
483 U.S. 635 (1987) .... 24

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011) .... 24, 38

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .... 13, 29, 40

*Backe v. LeBlanc*,
691 F.3d 645 (5th Cir. 2012) .... 13

*Barnes v. Felix*,
605 U.S. 73 (2025) .... 23

*Batiste v. Island Records, Inc.*,
179 F.3d 217 (5th Cir. 1999) .... 41

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .... 13, 40

*Borough of Duryea v. Guarnieri*,
564 U.S. 379 (2011) .... 31

*Brendlin v. California*,
551 U.S. 249 (2007) .... 17, 21

*Brewster v. Dretke*,
587 F.3d 764 (5th Cir. 2009) .... 44

*Brown v. Texas*,
443 U.S. 47 (1979) .... 24

*California v. Hodari D.*,
499 U.S. 621 (1991) .......... 17, 21

*City of Los Angeles v. Heller*,
475 U.S. 796 (1986) .......... 32

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) .......... 42

*Club Retro, L.L.C. v. Hilton*,
568 F.3d 181 (5th Cir. 2009) .......... 24

*Colburn v. Bunge Towing, Inc.*,
883 F.2d 372 (5th Cir. 1989) .......... 47

*Cole v. Carson*,
935 F.3d 444 (5th Cir. 2019) (en banc) .......... 37, 38

*Collier v. Montgomery*,
569 F.3d 214 (5th Cir. 2009) .......... 38

*Coon v. Ledbetter*,
780 F.2d 1158 (5th Cir. 1986) .......... 33

*Crane v. City of Arlington*,
50 F.4th 453 (5th Cir. 2022) .......... 23

*Davidson v. City of Stafford*,
848 F.3d 384 (5th Cir. 2017) .......... 33

*Engquist v. Or. Dep't of Agric.*,
553 U.S. 591 (2008) .......... 37

*Flores v. City of Palacios*,
381 F.3d 391 (5th Cir. 2004) .......... 22

*Gibson v. Jean-Baptiste*,
802 F. App'x 858 (5th Cir. 2020) .......... 26

*Gilbert v. Donahoe*,
751 F.3d 303 (5th Cir. 2014) .......... 13

*Goldstein v. MCI WorldCom*,
340 F.3d 238 (5th Cir. 2003) .......... 44

*Gonzalez v. Trevino*,
602 U.S. 653 (2024) .......... 27

*Graham v. Connor*,
490 U.S. 386 (1989) .......... 37

*Grandstaff v. City of Borger*,
767 F.2d 161 (5th Cir. 1985) .......... 33, 34

*Griffin v. Breckenridge*,
403 U.S. 88 (1971) .......... 35

*Groff v. Sw. Beverage Co.*,
997 So. 2d 782 (La. App. 3 Cir. 2008) .......... 40

*Gugliuzza v. K.C.M.C., Inc.*,
606 So. 2d 790 (La. 1992) .......... 40

*Hale v. Townley*,
45 F.3d 914 (5th Cir. 1995) .......... 35

*Hicks-Fields v. Harris County*,
860 F.3d 803 (5th Cir. 2017) .......... 32

*Hilliard v. Ferguson*,
30 F.3d 649 (5th Cir. 1994) .......... 35

*Hinojosa v. City of Terrell*,
834 F.2d 1223 (5th Cir. 1988) .......... 22

*Hope v. Pelzer*,
536 U.S. 730 (2002) .......... 38

*Johnson v. Sawyer*,
120 F.3d 1307 (5th Cir. 1997) .......... 48

*Kansas v. Glover*,
589 U.S. 376 (2020) .......... 19

*Keenan v. Tejeda*,
290 F.3d 252 (5th Cir. 2002)........................................................ 25, 26, 27

*Koppula v. Jaddou*,
72 F.4th 83 (5th Cir. 2023) ......................................................................... 46

*Lefebure v. D'Aquilla*,
15 F.4th 650 (5th Cir. 2021) ....................................................................... 30

*Linda R.S. v. Richard D.*,
410 U.S. 614 (1973)....................................................................................... 30

*Liteky v. United States*,
510 U.S. 540 (1994)....................................................................................... 49

*Lynch v. Cannatella*,
810 F.2d 1363 (5th Cir. 1987)...................................................................... 35

*Mayeaux v. Louisiana Health Serv. & Indem. Co.*,
376 F.3d 420 (5th Cir. 2004)........................................................................ 14

*McKinney v. Irving Indep. Sch. Dist.*,
309 F.3d 308 (5th Cir. 2002)........................................................................ 44

*Milam v. City of San Antonio*,
113 F. App'x 622 (5th Cir. 2004) ................................................................. 32

*Miller v. Sam Houston State Univ.*,
986 F.3d 880 (5th Cir. 2021)........................................................................ 49

*Nieves v. Bartlett*,
587 U.S. 391 (2019)....................................................................................... 27

*Oliver v. Collins*,
914 F.2d 56 (5th Cir. 1990).......................................................................... 30

*Peterson v. City of Fort Worth, Tex.*,
588 F.3d 838 (5th Cir. 2009)........................................................................ 33

*Petta v. Rivera*,
143 F.3d 895 (5th Cir. 1998)........................................................................ 22

*Ricks v. Khan*,
135 F.4th 296 (5th Cir. 2025) .......... 14

*Roebuck v. Dothan Sec., Inc.*,
515 F. App'x 275 (5th Cir. 2013) .......... 30

*Rogers v. Jarrett*,
63 F.4th 971 (5th Cir. 2023) .......... 39

*Rollins v. Home Depot USA*,
8 F.4th 393 (5th Cir. 2021) .......... 13, 14, 41

*Salmon v. Blesser*,
802 F.3d 249 (2d Cir. 2015) .......... 17

*Scott v. Harris*,
550 U.S. 372 (2007) .......... 16

*Sheppard v. Beerman*,
18 F.3d 147 (2d Cir. 1994) .......... 17

*Smith v. Ark. State Highway Emps., Local 1315*,
441 U.S. 463 (1979) .......... 31

*Snyder v. Trepagnier*,
142 F.3d 791 (5th Cir. 1998) .......... 34

*Steffel v. Thompson*,
415 U.S. 452 (1974) .......... 43

*Tarver v. City of Edna*,
410 F.3d 745 (5th Cir. 2005) .......... 22

*Taylor v. Riojas*,
592 U.S. 7 (2020) .......... 38

*Templet v. HydroChem Inc.*,
367 F.3d 473 (5th Cir. 2004) .......... 45

*Terry v. Ohio*,
392 U.S. 1 (1968) .......... 24

*Thompkins v. Belt*,
828 F.2d 298 (5th Cir. 1987)........................................................................ 29

*Turner v. Lieutenant Driver*,
848 F.3d 678 (5th Cir. 2017)........................................................ 25, 28, 30

*Ulmer v. Chancellor*,
691 F.2d 209 (5th Cir. 1982)........................................................................ 46

*United States v. Mendenhall*,
446 U.S. 544 (1980)...................................................................................... 21

*United States v. Morris*,
40 F.4th 323 (5th Cir. 2022)......................................................................... 18

*Valle v. City of Houston*,
613 F.3d 536 (5th Cir. 2010)........................................................................ 31

*Village of Willowbrook v. Olech*,
528 U.S. 562 (2000)...................................................................................... 36

*Villarreal v. City of Laredo*,
134 F.4th 273 (5th Cir. 2025) (en banc), *cert. denied sub nom. Villarreal v. Alaniz*, 146 S. Ct. 939 (2026)........................................ 28, 43

*Von Derhaar v. Watson*,
177 F.4th 626 (5th Cir. 2026)....................................................................... 17

*White v. Monsanto Co.*,
585 So. 2d 1205 (La. 1991).......................................................................... 41

*Whren v. United States*,
517 U.S. 806 (1996)...................................................................................... 20

*Yohey v. Collins*,
985 F.2d 222 (5th Cir. 1993)........................................................................ 13

**Statutes**

28 U.S.C. § 1331 ............................................................................................ 1

28 U.S.C. § 1367 ..................................................................................... 1, 41

28 U.S.C. § 1915 ........................................ 8, 45

42 U.S.C. § 1983 ........................................ 1, 23, 29, 35

42 U.S.C. § 1985 ........................................ 7, 35

La. R.S. 14:37........................................ 40

La. R.S. 14:122........................................ 40

La. R.S. 14:134........................................ 40

La. Civ. Code art. 2315........................................ 40

La. Civ. Code art. 2320........................................ 41

**Rules**

Fed. R. Civ. P. 10 ........................................ 16

Fed. R. Civ. P. 12 ........................................ 1, 9, 12, 14

Fed. R. Civ. P. 15 ........................................ 9, 44

Fed. R. Civ. P. 59 ........................................ 1, 4, 9, 12, 13, 14, 41, 44, 45, 49

Fed. R. Civ. P. 65 ........................................ 9, 48

Fed. R. Civ. P. 72 ........................................ 47

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1367, as this suit was brought under 42 U.S.C. § 1983 and involved attendant Louisiana state law claims. This appeal is from the District Court's grant of a Motion to Dismiss for Failure to State a Claim brought pursuant to Fed. R. Civ. P. 12(b)(6) on all claims by Defendants-Appellees Chuck Christ, Calvin Turner, and Sheriff John Craft, which was entered on March 5, 2026. ROA.560. On April 2, 2026, Plaintiff-Appellant filed a Rule 59(e) Motion to Alter or Amend the Judgment. ROA.561. The district court denied that motion on April 29, 2026. ROA.593. Appellant timely filed a Notice of Appeal on May 27, 2026. ROA.594-597.

Plaintiff-Appellant's notice of appeal also designates several interlocutory orders: the orders denying his requests for temporary restraining orders and a preservation order (ROA.52–53, 412–414) and the magistrate judge's order denying expedited discovery and service by the United States Marshal (ROA.409–411). As explained in Part VIII.C below, any challenge to the TRO and preservation rulings became moot upon entry of final judgment, and review of the magistrate judge's non-

dispositive order was forfeited by Plaintiff-Appellant's failure to ask the district judge to review it.

## ISSUES PRESENTED FOR REVIEW

Street's brief lists nine issues. Appellees restate them as follows:

1. Whether the district court correctly dismissed Street's Fourth Amendment claims where his own pleading alleges that Deputy Christ told him to leave an active traffic stop, briefly looked at his identification, handed it back, and again told him to leave, and that the deputy, without drawing, pointing, or using his weapon, rested his hand on his holstered firearm.

2. Whether the district court correctly dismissed Street's First Amendment retaliation claim where Street alleges no adverse action that would chill a person of ordinary firmness, and where Street himself returned to the scene within the hour and continued recording.

3. Whether the district court correctly dismissed Street's claims against Chief Calvin Turner and Sheriff Craft, including his *Monell*, "ratification," failure-to-investigate, conspiracy, equal-protection, and due-process theories, where their only alleged conduct occurred after the roadside encounter and consisted of declining to view a video and declining to accept a criminal complaint against a deputy.

4. Whether Deputy Christ, Chief Turner, and Sheriff Craft are entitled to qualified immunity.

5. Whether the district court correctly dismissed Street's state-law claims, which were pleaded in a single line that named no defendant and alleged no facts.

6. Whether the district court correctly dismissed Street's requests for declaratory and injunctive relief.

7. Whether the district court acted within its discretion in entering judgment without granting further leave to amend, without appointing counsel, and in denying Street's Rule 59(e) motion; whether Street's challenges to the interlocutory TRO, preservation, and discovery orders are reviewable; and whether reassignment is warranted.

## STATEMENT OF THE CASE

### I. BACKGROUND FACTUAL ALLEGATIONS

On November 18, 2025, Plaintiff happened upon a traffic stop being conducted by Deputy Chuck Christ and began recording that encounter. ROA.335. More specifically, Street "positioned his vehicle on an adjacent road" in order "to record" the stop. ROA.335. "Immediately" upon Street exiting his vehicle, Deputy Christ commanded Plaintiff to leave the area or risk going to jail. ROA.335. Street refused, answering he was "just here to take a video." ROA.335. Deputy Christ then notified Plaintiff that he was driving under a suspended license. ROA.335. Plaintiff stopped recording and entered his vehicle to leave, as ordered. ROA.335.

As Street moved towards his vehicle, Deputy Christ said "'Hold up," ROA.335. Deputy Christ referred Street to an expired inspection sticker and an obstructed license plate. ROA.335. Deputy Christ then asked for Street's identification. ROA.335. Deputy Christ "looked at the ID briefly and handed it back without running a check," and then ordered Plaintiff to "get in [his] car and drive off." ROA.335. Street alleges that during this exchange Deputy Christ placed his hand on his holstered weapon,

but does not allege that he drew his weapon at any time. ROA.336. Similarly, Street does not allege Deputy Christ touched him, searched him or his vehicle, handcuffed him, issued him a citation, or arrested him. And although Street characterizes the "[d]riving under suspension statement" as a "False Premise," Street does not allege that he held a valid license. ROA.335.

Roughly fifty minutes later, at "approx. 10:30 AM," Street "returned to the scene on foot, positioning himself at a great distance (50+ yards) from the scene to resume filming." ROA.336 Deputy Christ called out, "You just ain't gonna quit before you go to jail for interfering . . . well you're fixing to find out," and then "returned to his duties." ROA.336. And then, "[s]ubsequently, while speaking on his cell phone," Deputy Christ "again deliberately placed his hand on his weapon while staring at" Street. ROA.336. Street alleges that Chief Calvin Turner "has admitted he was the supervisor on the phone," but concedes that "no verbal threats were made during the pendency of the call" and affirmatively pleads that Deputy Christ "was acting under direct supervision and within the scope of his employment." ROA.336. The amended complaint does not allege

that anyone stopped Street from filming during this second encounter, told him he could not leave, or approached him.

Three days later, Plaintiff allegedly met with Sheriff Craft and Calvin Turner, during which time Sheriff Craft allegedly refused to review video footage presented by Plaintiff. ROA.337. Calvin Turner allegedly reviewed the video but refused to accept a criminal complaint from Plaintiff, stating, “We do not investigate our own.” ROA.337.

The amended complaint lists nine counts, each stated in a line or two: (I) First Amendment retaliation; (II) unlawful seizure; (III) excessive force; (IV) *Monell* liability against Sheriff Craft; (V) state-law claims for “Aggravated Assault, Public Intimidation, Malfeasance, IIED, Abuse of Process”; (VI) due process, based on “[a]rbitrary and contradictory orders (‘Drive off’ vs. ‘Hold up’)”; (VII) conspiracy under 42 U.S.C. § 1985; (VIII) a “class of one” equal protection claim; and (IX) a direct action against insurers. ROA.337–338. Street sought $15,000,000 in damages, a declaration that the “No Investigation” policy is unconstitutional, appointment of a “Federal Monitor” over the Sheriff’s Office, and an injunction barring Deputy Christ from “any contact, traffic stop, or detention of Plaintiff without a warrant.” ROA.338–339.

## II. The Course of Proceedings Below

Street filed suit on November 25, 2025, one week after the encounter. ROA.10. The same day, he filed an emergency motion for an *ex parte* TRO directing Appellees to preserve building video, ROA.36–37, and a separate emergency motion seeking a TRO and preliminary injunction that would, among other things, bar Deputy Christ from coming within 100 feet of Street and require the Sheriff to dispatch a different agency to any call involving Street, ROA.38–44. He also filed motions for expedited discovery and for service by the U.S. Marshal, ROA.45–51, and, attached to his complaint, a one-page motion for appointment of counsel under 28 U.S.C. § 1915(e)(1). ROA.32. Street paid the filing fee and did not proceed *in forma pauperis*.

The district court denied the preservation request, explaining that the duty to preserve relevant evidence arises from notice of litigation and that nothing indicated Street's preservation request had not been honored. ROA.52–53. The magistrate judge denied expedited discovery and Marshal service, ROA.409–411, and Street did not seek review of that order by the district judge. The district court then denied reconsideration and Street's remaining TRO requests, concluding that

Street had not shown that the requirements for a TRO were met and had not satisfied Rule 65(b)(1). ROA.412–414.

Sheriff Craft, Chief Turner, and Deputy Christ moved to dismiss under Rule 12(b)(6), invoking qualified immunity, and alternatively moved for a more definite statement. ROA.446–480. Street filed an opposition with exhibits, including a January 2026 Facebook post by the Sheriff concerning a missing-person investigation. ROA.487–526. The opposition ended with a single-sentence request that, "should the Court find any deficiency, Plaintiff requests Leave to Amend pursuant to Fed. R. Civ. P. 15(a)(2)," without identifying any additional facts. ROA.520. Appellees replied. ROA.527–532.

On March 5, 2026, the district court granted the motion in a 22-page memorandum ruling, addressing each of Street's claims, and entered judgment dismissing all claims with prejudice. ROA.538–560. Street moved to alter or amend under Rule 59(e), ROA.561–574; Appellees opposed, ROA.576–583; Street replied, ROA.584–592; and the district court denied the motion, finding "no basis in law or fact" to grant it. ROA.593. This appeal followed. ROA.594.

## SUMMARY OF THE ARGUMENT

Street's brief is long, but his Complaint is short, and it is the Complaint that matters. Taking every well-pleaded fact as true, Street alleges that a deputy working an active traffic stop told an onlooker to leave, briefly looked at his identification and handed it back, told him again to leave, rested a hand on his holstered firearm, warned him about interfering, and made a remark about their history. No one touched Street, searched him, cited him, or arrested him; no weapon was drawn or pointed; and Street returned to the same scene within the hour and kept filming. Three days later, a chief deputy declined to accept Street's "criminal complaint." Those allegations do not state a claim under the Constitution or Louisiana law, and the district court correctly dismissed them.

**Fourth Amendment**. An order to leave is the opposite of a seizure. The momentary "hold up" and glance at Street's identification, followed immediately by an instruction to drive away, was at most a brief investigatory detention by an officer who stated a belief that Street, whom he knew by name and who had just driven to the scene, was driving with a suspended license. And, in fact, Street never alleges that his

license was valid. Nothing occurred at fifty yards that restrained Street's freedom of movement. And an officer's resting his hand on a holstered weapon is not a "use of force" at all, much less an excessive one. At a minimum, no clearly established law placed the deputy's conduct beyond debate.

**First Amendment**. Assuming Street was engaged in protected recording, he alleges no adverse action that would chill a person of ordinary firmness. Warnings, a brief identification check, and a hand on a holstered weapon, unaccompanied by any arrest, citation, or use of force, are not the sort of injury this Court has found actionable, and Street's own conduct of returning to resume filming confirms as much. Street's complaints that the district court relied on "prisoner" cases miss the point: the question is whether the Complaint states a claim, not which cases the district court cited in finding that it did not.

**Supervisors and the Sheriff's Office**. Chief Turner and Sheriff Craft were not present on November 18. There is no constitutional right to have a criminal complaint accepted, investigated, or prosecuted, and the Petition Clause imposes no duty on officials to act on a citizen's grievance. A remark made three days after the encounter cannot have

been the "moving force" behind it, and a single remark is not a policy. Crucially, without an underlying constitutional violation, there is no *Monell* liability, no supervisory liability, and no conspiracy. The equal-protection claim identifies no similarly situated comparator, and the due-process claim is either subsumed by the Fourth Amendment or was never pleaded at all.

**Remaining issues**. Street's state-law claims fail for want of factual allegations and his requests for injunctive and declaratory relief fail for want of standing. The district court did not abuse its discretion in declining to give Street a third amendment he never described, in declining to appoint counsel for a fee-paying litigant who presented no exceptional circumstances, or in denying Rule 59(e) relief; his challenges to interlocutory TRO and preservation rulings are moot or forfeited; and nothing in this record supports reassignment. The judgment should be affirmed.

## ARGUMENT

### I. Standard of Review and Governing Principles

This Court reviews a Rule 12(b)(6) dismissal *de novo*, accepting well-pleaded facts as true and viewing them in the light most favorable

to the plaintiff. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023). To survive, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court does not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," or "legal conclusion[s] couched as . . . factual allegation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). Where, as here, defendants invoke qualified immunity, the plaintiff must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable and defeat a qualified-immunity defense with equal specificity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).

Because review is *de novo*, this Court asks whether the Complaint states a claim and "may affirm on any ground supported by the record." *Gilbert v. Donahoe*, 751 F.3d 303, 311 (5th Cir. 2014). *Pro se* pleadings and briefs are construed liberally, but *pro se* litigants must still plead facts and must brief their arguments and arguments not raised in the district court are forfeited. *Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993); *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). Denials of leave to amend, of appointment of counsel, and of Rule 59(e)

relief are reviewed for abuse of discretion. *Mayeaux v. Louisiana Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) ("We review the district court's denial of leave to amend a complaint…for abuse of discretion."); *Ricks v. Khan*, 135 F.4th 296, 302 (5th Cir. 2025) ("We review the denial of a motion to appoint counsel for abuse of discretion."); *Rollins*, 8 F.4th at 396 (holding that denials of motions to alter or amend a judgment under Fed. R. Civ. P. 59(e) are reviewed for abuse of discretion).

## II. The District Court Applied the Correct Rule 12(b)(6) Standard.[1]

Street's lead argument is that the district court "converted" the motion to dismiss into a summary-judgment proceeding by using words such as "establish" and "proof," by stating that Deputy Christ "verified" the suspension, and by declining to treat his video and photographs as dispositive. Appellant's Br. at 15–18. None of this warrants reversal.

First, the district court expressly applied the Rule 12(b)(6) standard, accepting "all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff," and asking whether

[1] This section pertains to Street's first issue.

Street had pleaded "enough facts to state a claim to relief that is plausible on its face." ROA.539. Unlike Street, Appellees did not offer any evidence in support of its motion and the district court summarized the facts by citing the paragraphs of Street's own Complaint. ROA.538–539. A court's occasional use of the word "establish" when explaining why allegations fall short does not transform a pleading ruling into a summary judgment. And because this Court reviews *de novo*, any imprecision in phrasing is immaterial. The question is simply whether Street's allegations state a claim and it is easily established that they do not.

Second, the court's description of the "hold up" as an interval in which Deputy Christ "inspected his license plate and verified the suspension of his license," ROA.543, is likewise immaterial. Appellees' arguments on appeal and the dispositive points made by them rest entirely on Street's own allegations: that Deputy Christ "looked at the ID briefly and handed it back," then told Street to "drive off," ROA.335; that the deputy rested his hand on a holstered weapon, ROA.336; and that Street "drove away" and later "returned to the scene on foot . . . to resume filming," ROA.336. Taking those allegations exactly as pleaded, Street has no claim.

Third, nothing about Rule 10(c) changes the analysis. Accepting that Street's photographs and video are part of his pleading, they at most support allegations the Court already must accept as true—for example, that the license plate was not obstructed. They do not supply the missing elements of his claims, those being a seizure unsupported by reasonable suspicion, a use of force, an adverse action sufficient to chill speech, a policy that was the moving force behind a constitutional violation, or a similarly situated comparator. *Scott v. Harris*, 550 U.S. 372 (2007), on which Street relies, is a summary-judgment decision holding that courts need not accept a party's version of events that is blatantly contradicted by video. It does not convert a plaintiff's exhibits into a substitute for factual allegations stating a claim.

## III. Street Did Not Plead a Viable Fourth Amendment Claim.[2]

Street now theorizes "three distinct" seizures: (1) Deputy Christ's instruction to leave; (2) the "hold up" and identification check; and (3) the deputy's conduct while Street stood fifty yards away. Appellant's Br. at 23–28. None states a claim and, in any event, Deputy Christ is entitled to qualified immunity.

[2] This section pertains to Street’s third and fourth issues.

### A. An instruction to leave the scene is not a seizure.

A person is seized when an officer, "by means of physical force or show of authority, terminates or restrains his freedom of movement." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (quotation omitted). A show of authority effects a seizure only if a reasonable person would not feel free to leave and the person actually submits. *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *Von Derhaar v. Watson*, 177 F.4th 626, 630 (5th Cir. 2026) (cleaned up). An officer's instruction to leave an area does not restrain a person's freedom of movement. To the contrary, it directs him to exercise it. Street's own allegation is that Deputy Christ told him to "get in your car and drive off." ROA.335. Whatever else that was, it was not a termination of Street's freedom to leave. *See Salmon v. Blesser*, 802 F.3d 249, 253 (2d Cir. 2015) (an order to depart a public area does not, even when minimal force is used, effect a seizure); *Sheppard v. Beerman*, 18 F.3d 147, 153 (2d Cir. 1994). Street's description of his decision to comply as a "coerced departure," Appellant's Br. at 9, does not convert a dispersal instruction into a seizure.

However, even if Deputy Christ's instruction were analyzed as a seizure, it was plainly reasonable. The Fourth Amendment prohibits only

unreasonable seizures, and an officer conducting a traffic stop with a handcuffed arrestee, ROA.335; Appellant's Br. at 8, has an obvious and legitimate interest in keeping a person who has left his vehicle and approached the stop at a distance. Street was not restrained, detained, or moved anywhere. He was simply asked to go on his way. And given the division of authority on whether an order to leave a public place is a seizure at all, no clearly established law put Deputy Christ on notice that his instruction was unconstitutional.

### B. The brief "hold up" and identification check did not violate the Fourth Amendment.

Street's claim therefore reduces to the moments between Deputy Christ's "hold up" and his instruction to "drive off." According to the Complaint, the deputy "looked at the ID briefly and handed it back" and immediately told Street to leave. ROA.335. Even assuming that interval was a seizure, as Street argues under *United States v. Morris*, 40 F.4th 323 (5th Cir. 2022), it was at most a brief investigatory stop, which is lawful if supported by reasonable suspicion—"a particularized and objective basis for suspecting the particular person" of unlawful activity, a standard "considerably less than proof of wrongdoing by a

preponderance of the evidence." *Kansas v. Glover*, 589 U.S. 376, 380 (2020) (quotations omitted).

Street's own allegations supply that basis. Street had just driven to the scene and parked. ROA.335. Deputy Christ knew him by name after having had prior dealings with him. ROA.336. And Deputy Christ told Street that he was "[d]riving under suspension." ROA.335. Street alleges that the deputy said this "before approaching the vehicle or running the plate," ROA.335, but he never alleges that his license was in fact valid, never alleges that Deputy Christ lacked information about its status, and never alleges any fact making the deputy's stated belief implausible.

Reasonable suspicion may rest on "commonsense judgments and inferences about human behavior," and an officer who reasonably infers that a person driving is unlicensed may briefly stop him to investigate. *See Glover*, 589 U.S. at 380–81. A brief look at the identification of a person whom the officer knows and believes to be driving with a suspended license, followed immediately by the return of the identification and an instruction to leave, is the kind of minimal intrusion the Fourth Amendment permits. That Deputy Christ also mentioned an inspection sticker and the license plate does not matter. ROA.335. An

officer's subjective motivations do not invalidate objectively justifiable conduct, *Whren v. United States*, 517 U.S. 806, 813 (1996), and the reasonable-suspicion inquiry asks whether any objectively reasonable basis existed. Nor does it matter that the deputy returned the identification without running it and told Street to leave. ROA.335. An officer who quickly dispels or abandons his suspicion and ends the encounter has done exactly what the Fourth Amendment requires.

Street's alternative theory that the "hold up" was a "trap" because it followed an instruction to leave adds nothing. ROA.335. The question is whether the brief detention was reasonable, not whether the deputy's instructions were sequenced to Street's liking.

### C. Nothing that occurred while Street stood fifty yards away was a seizure.

Street's "third seizure" theory fares no better. By his own account, Street walked back to the scene, stood "50+ yards" away, and filmed. ROA.336. Deputy Christ called out a warning about interfering, then "returned to his duties." ROA.336. Later, while on a phone call, the deputy rested his hand on his weapon and looked at Street. ROA.336. The deputy did not approach Street, order him to stop or stay, demand identification, or do anything to restrain his movement, and Street

concedes no words were directed to him during the call. ROA.336. Street was free to leave, and his own allegations show that he stayed by choice to continue filming.

Street argues that he "stood fully seized by [a] display of lethal authority" because he felt unable to turn his back on an armed officer and began "stuttering." Appellant's Br. at 26. But the seizure inquiry is objective, *Brendlin*, 551 U.S. at 260, and requires both a show of authority directed at restraining the person and submission to it, *Hodari D.*, 499 U.S. at 626. The display-of-a-weapon factor mentioned in *United States v. Mendenhall*, 446 U.S. 544, 554 (1980), upon which Street erroneously relies, concerns whether an officer's approach and questioning of a person conveys that he is not free to go. Not whether an officer fifty yards away, attending to his own duties, has seized every onlooker who sees his holstered sidearm. Street's subjective apprehension does not establish a seizure.

### D. Resting a hand on a holstered weapon is not excessive force.

To state a Fourth Amendment excessive-force claim, a plaintiff must allege "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was

clearly unreasonable." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (cleaned up). Street alleges no use of force at all. He does not allege that Deputy Christ touched him, restrained him, or drew or pointed a weapon. His only allegation is that the deputy placed his hand on a holstered firearm, once while Street was reaching for his identification and once from fifty yards away while on the telephone. ROA.336. The district court correctly concluded that "there is not one scintilla of an accusation that Deputy Christ used any type of force against Plaintiff." ROA.543.

Street contends that physical contact is unnecessary, relying on cases involving the pointing of firearms. Appellant's Br. at 29–30. But those cases do not help him. In *Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004), the officer fired shots that struck the plaintiff's car, which the Court treated as a seizure by physical force. In *Petta v. Rivera*, 143 F.3d 895, 897-98 (5th Cir. 1998) (per curiam), the Court granted qualified immunity to an officer who attempted to smash a citizen’s car window with his nightstick during a traffic stop, menaced her with a .357 handgun, and repeatedly shot at her car as she drove away. And *Hinojosa v. City of Terrell*, 834 F.2d 1223, 1230–31 (5th Cir. 1988), held that the

act of pointing a gun at the plaintiff, causing only temporary emotional distress, did not give rise to a claim redressable under § 1983. Each of those cases involved an actual use of a weapon—firing it or drawing and aiming it—not an officer's hand resting on a holstered gun. Even as to the pointing of a gun, this Court has recognized that "pointing a gun can be reasonable given the circumstances," and that "the momentary fear experienced by the plaintiff when a police officer pointed a gun at him did not rise to the level of a constitutional violation." *Crane v. City of Arlington*, 50 F.4th 453, 468 (5th Cir. 2022) (quotation omitted) (abrogated on other grounds). And *Barnes v. Felix*, 605 U.S. 73 (2025), addressed the time frame a court considers in evaluating the reasonableness of force actually used through evaluation of the "moment-of-threat" rule. Street identifies no authority from this Court or any other holding that an officer who keeps his weapon holstered has used excessive force.

## E. Deputy Christ is entitled to qualified immunity on the Fourth Amendment claims.

Even if Street had alleged a Fourth Amendment violation, Deputy Christ would be entitled to qualified immunity because no clearly established law placed the unlawfulness of his conduct "beyond debate."

*Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Clearly established law may not be defined "at a high level of generality," *Id.* at 742, and Street's reliance *on Terry v. Ohio*, 392 U.S. 1 (1968) and *Brown v. Texas*, 443 U.S. 47 (1979) for the general proposition that suspicionless stops are unlawful, Appellant's Br. at 50, is precisely the type of generality the Supreme Court has rejected. Street cites no case holding that an officer violates the Fourth Amendment by briefly checking the identification of a person he knows and believes to be driving with a suspended license, or by resting his hand on his holstered weapon while doing so. Further, officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity, *Anderson v. Creighton*, 483 U.S. 635, 641 (1987), and the same principle applies to the lesser standard of reasonable suspicion. *See also Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009) (plaintiff must show officers lacked "arguable (that is, reasonable but mistaken) probable cause"). Street could not meet his burden at the district court level and he cannot do so now.

## IV. Street Did Not Plead a Viable First Amendment Retaliation Claim (Response to Issue 5).

To state a First Amendment retaliation claim against an officer, a private citizen must allege that (1) he was engaged in constitutionally

protected activity, (2) the defendant's actions caused him an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendant's adverse actions were substantially motivated by the protected activity. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). Appellees assume, for present purposes, that Street was engaged in protected activity when he recorded the traffic stop. *See Turner v. Lieutenant* Driver, 848 F.3d 678, 688 (5th Cir. 2017). His claim fails on the second and third elements.

### A. Street alleges no injury that would chill a person of ordinary firmness.

The chilling inquiry is objective, and while the injury need not be great, it must be more than trivial. *See Keenan*, 290 F.3d at 258–59. Street alleges that Deputy Christ told him to leave or risk jail, briefly looked at his identification, warned him about interfering, made a remark about their past, and twice rested a hand on his holstered weapon. ROA.335–336. He was not arrested, cited, searched, or touched. His phone was not taken and he was never prevented from recording. Indeed, the video files Street submitted with his Complaint are his recordings of these very events. ROA.29–31; ROA.336.

Street's own conduct confirms that a person of ordinary firmness would not have been chilled. Within roughly an hour of the first encounter, Street "returned to the scene on foot . . . to resume filming," ROA.336, and he kept filming through the second encounter, ROA.336. Although the test is objective, a plaintiff's own undeterred continuation of the very activity at issue is telling evidence that the defendant's conduct was not the sort that would deter a person of ordinary firmness. Words of warning and a hand on a holstered weapon, without more, do not meet that standard. Indeed, this Court has "consistently rejected threat-based retaliation claims." *Gibson v. Jean-Baptiste*, 802 F. App'x 858, 859–60 (5th Cir. 2020) (per curiam).

Street's principal response is that the district court erred by citing prisoner cases. Appellant's Br. at 31–33. But the principle that verbal threats unaccompanied by action do not amount to a constitutional injury is not confined to the Eighth Amendment or the Prison Litigation Reform Act, and in any event this Court reviews the judgment, not the district court's choice of citations. *Keenan*, in particular, illustrates the difference between Street's allegations and actionable retaliation. There, deputies stopped the plaintiffs' vehicle, held them at gunpoint for a substantial

period, and cited them for a minor equipment violation, allegedly in retaliation for the plaintiffs' complaints about the constable's office. *See Keenan,* 290 F.3d at 256–57. Street alleges nothing comparable. No weapon was drawn, no citation was issued, and the encounter ended almost as soon as it began. Likewise, *Gonzalez v. Trevino*, 602 U.S. 653 (2024), and *Nieves v. Bartlett*, 587 U.S. 391 (2019), upon which Street relies, address retaliatory arrests and the evidence needed to overcome probable cause. Street was never arrested, and those decisions do not lower the threshold for what constitutes an adverse action.

## B. Street does not plausibly allege retaliatory causation.

Street's theory of motive rests on a 2013 incident and the deputy's remark, "I done been through this shit with you before, Brian." ROA.336. But the protected activity Street invokes in this case is his November 18, 2025 recording. ROA.337 (Count I). A twelve-year-old dispute, after which, by Street's own account, the two men had "zero contact," ROA.334–335, does not plausibly show that Deputy Christ's actions on November 18 were "substantially motivated" by Street's recording, and the remark itself reflects familiarity, not retaliation for filming. The district court correctly found the alleged history "too attenuated" to

support the claim. ROA.542–543. Moreover, Street's own allegations supply the evident non-retaliatory explanation for the deputy's conduct. A bystander had left his vehicle and approached an active traffic stop involving a handcuffed arrestee. ROA.335, Appellant's Br. at 8.

### C. Deputy Christ is entitled to qualified immunity on the First Amendment claim.

Street argues that *Turner and Villarreal v. City of Laredo* clearly established his rights. Appellant's Br. at 49–51. Neither helps him. *Turner* recognized a right to record the police "subject only to reasonable time, place, and manner restrictions," 848 F.3d at 688, and it held that the right had not been clearly established at the time of the officers' conduct. *Id.* at 687. And in *Villarreal v. City of Laredo*, 134 F.4th 273 (5th Cir. 2025) (en banc), *cert. denied sub nom., Villarreal v. Alaniz*, 146 S.Ct. 939 (2026), this Court held that the officers were entitled to qualified immunity. No decision of this Court or the Supreme Court clearly establishes that an officer working an active traffic stop violates the First Amendment by directing a bystander to step away, warning him about interference, briefly checking his identification, or resting a hand on a holstered weapon. Deputy Christ is therefore entitled to qualified immunity even if the Court were to find a constitutional violation.

## V. The Claims Against Chief Turner and Sheriff Craft Were Properly Dismissed (Response to Issues 2, 5, and 8).

### A. Neither supervisor personally participated in any constitutional violation.

Under § 1983, "each Government official . . . is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. A supervisor may be held liable only if he affirmatively participated in the acts causing the constitutional deprivation or implemented an unconstitutional policy that causally resulted in the plaintiff's injury. *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987). Neither Chief Turner nor Sheriff Craft was present on November 18. Street's only allegation tying Chief Turner to that day is that he was on the telephone with Deputy Christ during the second encounter—a call during which, Street concedes, "no verbal threats were made." ROA.336. That allegation does not plausibly show that Chief Turner directed, participated in, or knew of anything unconstitutional. And because Street alleges no underlying constitutional violation by Deputy Christ, there is nothing for which either supervisor could be liable.

### B. There is no constitutional right to have a criminal complaint accepted or investigated, and the Petition Clause imposes no duty to act on a grievance.

Street's remaining theory against the supervisors is that on November 21 Sheriff Craft declined to watch his video and Chief Turner declined to accept his "criminal complaint." ROA.337. But "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). This Court has accordingly held that there is no constitutional right to have someone criminally prosecuted, *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990), and there is likewise no constitutional right to have state officials investigate a citizen's complaint of criminal conduct, see *Lefebure v. D'Aquilla*, 15 F.4th 650, 654–55 (5th Cir. 2021).

Street's attempt to repackage this as a Petition Clause claim, Appellant's Br. at 35–36, fails for three reasons. First, that claim is not in the Complaint. Count I asserts "First Amendment Retaliation" and cites only *Turner v. Driver*, ROA.337. The petition theory surfaced for the first time in Street's opposition brief, ROA.509, and "the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013) (per curiam) (quotation omitted).

Second, the First Amendment protects the right to petition, but it does not impose any affirmative obligation on the government to listen, to respond, or to act on a petition. *Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 465 (1979) (per curiam). Chief Turner's refusal to open a criminal case did not prevent Street from petitioning anyone. This is evident by the fact that Street's lawsuit was filed four days later. Third, *Borough of Duryea v. Guarnieri*, 564 U.S. 379 (2011), on which Street relies, concerned retaliation against a public employee for filing a grievance. It did not recognize a right to compel an agency to accept or act on a citizen's complaint.

**C. Street did not state a Monell or official-capacity claim.**

To state a claim against the Sheriff in his official capacity, Street must plead "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quotation omitted). The claim fails at every step.

**No underlying violation.** As shown above, Street did not plead a constitutional violation by any officer. Without one, there can be no

municipal liability. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam); *Hicks-Fields v. Harris County*, 860 F.3d 803, 808 (5th Cir. 2017).

**No policy, and no moving force.** Street's "policy of impunity" rests on Chief Turner's November 21 remark, "We do not investigate our own." ROA.337. A single statement by a chief deputy is not an official policy, and Street does not allege that Chief Turner—rather than the Sheriff—is the final policymaker for the Sheriff's Office. More fundamentally, a remark made three days after the encounter cannot have been the "moving force" behind it. As this Court has explained, "it is hard to see how a policymaker's ineffectual or nonexistent response to an incident, which occurs well after the fact of the constitutional deprivation, could have caused the deprivation." *Milam v. City of San Antonio*, 113 F.App'x 622, 628 (5th Cir. 2004) . Street's argument that the "policy" "emboldened" Deputy Christ, Appellant's Br. at 19, is a conclusion unsupported by any factual allegation that Deputy Christ knew of or relied on any such "policy."

**No pattern.** To plead a custom, Street must allege a pattern of similar incidents "so common and well settled as to constitute a custom

that fairly represents municipal policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quotation omitted). The only other incidents alleged are a 2011 or 2012 lobby incident involving a State Trooper and unnamed deputies and the 2013 altercation, after which Street pleaded to misdemeanors. ROA.333–334. Neither involved a citizen recording the police, a refusal to accept a complaint, or a deputy resting his hand on a holstered weapon. Two dissimilar incidents over more than a decade do not plausibly establish a custom. *Peterson*, 588 F.3d at 851–52. Street's contention that the district court refused to consider this history as "background evidence," Appellant's Br. at 21–22, misreads the ruling. The court held only that any claim arising from those events is prescribed and then considered and rejected his reliance on that history as support for his timely claims, ROA.542–543.

**No ratification.** Ratification is confined to "extreme factual situations," and a policymaker's failure to investigate, discipline, or condemn an officer's conduct after the fact does not establish ratification. *Peterson*, 588 F.3d at 848 & n.2; *Davidson v. City of Stafford*, 848 F.3d 384, 395–96 (5th Cir. 2017); *Coon v. Ledbetter*, 780 F.2d 1158, 1161–62 (5th Cir. 1986). *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985),

on which Street erroneously relies, involved a police force that poured gunfire into a truck and killed an innocent man, after which the city took no action whatsoever; this Court has since limited *Grandstaff* to such extreme facts. *See Snyder v. Trepagnier*, 142 F.3d 791, 797-98 (5th Cir. 1998). Sheriff Craft's alleged refusal to watch Street's video, ROA.337, is not remotely comparable. Nor is the Sheriff's January 2026 Facebook statement, ROA.522–526, which Street did not plead. Further, it post-dates his Complaint and first appeared as an exhibit to his opposition, and which, by its terms, responded to social-media rumors about an unrelated missing-person investigation. ROA.523.

**No failure to train or supervise.** Street's failure-to-train and failure-to-supervise theory was not pleaded in the Complaint, as the district court noted, ROA.558, and in any event fails for want of a pattern of similar constitutional violations or any facts showing deliberate indifference. *Snyder*, 142 F.3d at 798–99. Street alleges no prior complaint about Deputy Christ's treatment of persons recording police, and an altercation twelve years earlier did not put the Sheriff on notice that the deputy would violate the constitutional rights of a bystander at a traffic stop.

### D. The conspiracy claim fails.

Count VII alleges in one sentence that "Defendants acted in concert to deny Plaintiff equal protection." ROA.338. That bare conclusion does not state a claim. "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987). Because Count VII is pleaded under 42 U.S.C. § 1985, it also requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus," *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), which Street does not allege. And a conspiracy claim under § 1983 requires an actual deprivation of constitutional rights, which is absent here. *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995).

The district court also correctly applied the intracorporate-conspiracy doctrine, under which the employees of a single governmental entity acting within the scope of their employment cannot conspire with one another. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994). Street's authorities do not suggest otherwise. In any event, a telephone call between a deputy and his supervisor followed by the supervisor's

declining to accept a complaint three days later does not plausibly allege an agreement to violate anyone's rights.

**E. The "class of one" equal-protection claim fails.**

A class-of-one plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Count VIII alleges only that Street "was targeted due to personal animus." ROA.338. It identifies no one similarly situated who was treated differently.

The two "comparators" Street now offers, Appellant's Br. at 46–48, were not pleaded and do not work in any event. The motorist whom Deputy Christ had stopped and handcuffed is not similarly situated to a bystander who walked up to the stop and, by Street's own account, that motorist was arrested while Street was sent on his way. And Street's comparison between the Sheriff's Office's investigation of a missing-person case and its handling of complaints about deputies relies on the unpleaded January 2026 Facebook post, ROA.522–526, and compares Street to the "general public" rather than to any similarly situated individual. Moreover, the class-of-one theory is ill-suited to the

inherently discretionary, individualized decisions that officers make in the field. *Cf. Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603–04 (2008) In all events, Street cites no clearly established law that would have put any Appellee on notice that the conduct alleged violated the Equal Protection Clause.

**F. The due-process claim fails.**

As pleaded, Count VI rests on "[a]rbitrary and contradictory orders ('Drive off' vs. 'Hold up')." ROA.338. Where a particular amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Street's complaint about being told to leave and then to "hold up" is a Fourth Amendment claim, and it fails for the reasons already given. Nor do two conflicting instructions in quick succession "shock the conscience." ROA.544–545.

On appeal, Street recasts Count VI as a claim for deliberate fabrication of evidence under *Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019) (en banc). Appellant's Br. at 48–49. That theory appears nowhere in the

Complaint. It was first raised in Street's opposition brief, ROA.517–518. And it fails on its own terms: the fabricated-evidence claim recognized in *Cole* concerns false evidence used to charge or prosecute a person, and Street was never arrested, charged, cited, or prosecuted. A deputy's oral explanation for a seconds-long identification check is not "evidence" used to deprive anyone of liberty.

## VI. The District Court Correctly Applied Qualified Immunity (Response to Issue 9).

Qualified immunity shields government officials from liability unless the plaintiff shows "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *al-Kidd*, 563 U.S. at 735 (quotation omitted). Once the defense is raised, the burden is on the plaintiff to negate it. *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009). For the reasons set out above, Street has not alleged a violation of any constitutional right by any Appellee, and he has not identified any controlling authority clearly establishing that the specific conduct alleged was unlawful. *Hope v. Pelzer*, 536 U.S. 730 (2002), and *Taylor v. Riojas*, 592 U.S. 7 (2020) (per curiam), involved obvious and egregious abuses of prisoners; namely, tying an inmate to a hitching post in the sun

and confining an inmate in feces-covered cells for days, and provide no "obvious case" analogue to a brief roadside encounter in which no force was used. The district court correctly held that all three Appellees are entitled to qualified immunity. ROA.549–551.

Street also asks this Court to declare the doctrine of qualified immunity illegitimate, relying on scholarship concerning the text of the Civil Rights Act of 1871. Appellant's Br. at 52–53. Street did not make this argument in the district court, and in any event this Court is bound by the Supreme Court's qualified-immunity precedents unless and until that Court revisits them. See *Rogers v. Jarrett*, 63 F.4th 971, 980 (5th Cir. 2023) ("As middle-management circuit judges, we cannot overrule the Supreme Court."). Appellees note the argument only to observe that it provides no basis for relief in this Court.

## VII. The State-Law Claims and the Requests for Prospective Relief Were Properly Dismissed (Response to Issues 8 and 9).

### A. Street's state-law claims fail.

Count V lists five labels—"Aggravated Assault, Public Intimidation, Malfeasance, IIED, Abuse of Process"—without identifying which Appellee committed which tort or pleading any facts specific to

them. ROA.338. That alone warrants dismissal under *Twombly* and *Iqbal*. The district court also correctly held that aggravated assault, public intimidation, and malfeasance in office are crimes defined by the Louisiana Criminal Code, La. R.S. 14:37, 14:122, 14:134, and that Louisiana does not recognize a private civil cause of action under a criminal statute absent legislative authorization. ROA.552 (citing *Gugliuzza v. K.C.M.C., Inc.*, 606 So. 2d 790, 793 (La. 1992)).

Street responds that criminal statutes may inform the standard of care under Louisiana Civil Code article 2315. Appellant's Br. at 40–43. But even read as a claim for civil assault under article 2315, the claim fails. Under Louisiana law, an assault is "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery"; mere words do not suffice, although threats coupled with the present ability to carry them out may. *Groff v. Sw. Beverage Co.*, 997 So. 2d 782, 787 (La. App. 3 Cir. 2008). Street alleges that Deputy Christ rested his hand on a holstered weapon while Street retrieved his identification and, later, while the deputy was on the phone fifty yards away. ROA.336 ¶¶ 33, 39. He does not allege that the deputy drew, pointed, or threatened to use the weapon. That does not plausibly allege

an attempted battery or a reasonable apprehension of receiving one. Street's IIED claim fails because the conduct alleged is not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," and Street pleads no facts showing severe emotional distress or a desire to inflict it. *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991). His abuse-of-process claim fails because no legal process was ever issued against him. ROA.552–554. And because no Appellee committed a tort, there is nothing for which the Sheriff could be vicariously liable under Civil Code article 2320.

Street argues in the alternative that the district court should have declined supplemental jurisdiction and dismissed the state-law claims without prejudice under 28 U.S.C. § 1367(c)(3). Appellant's Br. at 43. Street never made that request below—not in his opposition, ROA.487–521, and not in his Rule 59(e) motion, ROA.561–574—and it is therefore forfeited. *Rollins*, 8 F.4th at 397. On the merits, although the general rule is to decline supplemental jurisdiction when the federal claims are dismissed early in the case, that rule is "neither mandatory nor absolute," and the decision is reviewed for abuse of discretion. *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999). The state-law claims here

arise from the same brief encounter as the federal claims, were fully briefed by both sides, and fail on the face of the Complaint. Street, who invoked the federal court's supplemental jurisdiction and asked it to decide these claims, cannot now complain that it did so. And even if the Court were to conclude otherwise, the only appropriate remedy would be to modify the dismissal of the state-law claims to be without prejudice, not to reinstate them.

### B. Street lacks standing to seek injunctive or declaratory relief.

A plaintiff seeking prospective relief must show a "real and immediate" threat that he will again be wronged in a similar way; past exposure to allegedly illegal conduct is not enough. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983). Street alleges a single encounter with Deputy Christ after more than a decade of "zero contact." ROA.334–335 ¶ 24. He does not plausibly allege that he is likely to be subjected to the same conduct again, and the district court correctly so held. ROA.555–556. His request for a declaration that the "No Investigation" policy is unconstitutional, ROA.338, fails for the same reason and because, as shown above, there is no constitutional right to the investigation of a citizen's complaint.

Street's criticisms of the district court's additional observations; more specifically, that the permanent-injunction factors were not met and that the requested federal monitor and no-contact injunction were overbroad, ROA.556–557, do not change the result. The absence of standing is dispositive, and the dismissal of the underlying claims leaves nothing on which prospective relief could rest. Street's invocation of *Villarreal and Steffel v. Thompson*, 415 U.S. 452 (1974), Appellant's Br. at 53–56, is misplaced, as those cases involved plaintiffs facing a concrete threat of future enforcement of a challenged statute or policy against their own continuing conduct, which Street does not plausibly allege.

## VIII. Street's Procedural Complaints Provide No Basis for Reversal (Response to Issues 6 and 7).

### A. The district court did not abuse its discretion by entering judgment without granting further leave to amend.

Street argues that the district court "silently" denied two motions for leave to amend. Appellant's Br. at 38–40. The first, filed with Appellees' consent, asked the court to "deem the document currently located at Docket No. 13 as the operative Complaint." ROA.421–423. The district court did exactly that. It ruled on the First Amended Verified

Complaint, citing its paragraphs throughout. ROA.538–539. Street received precisely the relief he requested.

The second was a single sentence at the end of Street's opposition brief: "should the Court find any deficiency, Plaintiff requests Leave to Amend pursuant to Fed. R. Civ. P. 15(a)(2)." ROA.520. A bare request for leave to amend in an opposition brief, without any indication of the particular grounds for amendment or the facts that would be added, is not a proper motion, and a district court does not abuse its discretion by declining it. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254–55 (5th Cir. 2003). Although a *pro se* plaintiff should ordinarily be given an opportunity to amend, that is not required where the plaintiff has already pleaded his "best case." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam). Street had already amended twice, ROA.324–341, filed a 35-page opposition setting out his theories in detail, ROA.487–521, and was on notice of every deficiency identified in Appellees' motion. ROA.456–480.

Nor does Street's Rule 59(e) "proffer" show that amendment would have been anything other than futile. Appellant's Br. at 39–40. The

categories he lists—more "granular" detail about the roadside encounter, "psychological injury itemizations," historical evidence about the Sheriff's Office, "comparators," "expanded" due-process theories, "supervisory training facts," and "explicit" state-law claims (citing ROA.566–571)—are the same theories addressed above, and none cures the fundamental defects: no seizure lacking reasonable suspicion, no use of force, no chilling adverse action, no policy that was the moving force behind a constitutional violation, no constitutional right to an investigation, and no clearly established law. A Rule 59(e) motion may not be used to raise arguments that could have been made before judgment, *Templet v. HydroChem Inc.*, 367 F.3d 473, 478–79 (5th Cir. 2004), and the district court did not abuse its discretion in finding "no basis in law or fact" to alter its judgment. ROA.593.

### B. The district court did not abuse its discretion with respect to appointment of counsel.

Street's request for counsel was a one-page document, attached to his original complaint, invoking 28 U.S.C. § 1915(e)(1). ROA.32. That provision authorizes a court to request counsel for a person "unable to afford counsel," but Street paid the filing fee and never sought to proceed in forma pauperis. ROA.4. In any event, there is no automatic right to

appointed counsel in a civil-rights case, and a district court need not appoint counsel absent "exceptional circumstances." *Ulmer v. Chancellor*, 691 F.2d 209, 212–13 (5th Cir. 1982). Nothing about this case is exceptional. The facts are simple and within Street's personal knowledge, and Street, who has filed lengthy, well-organized, citation-laden submissions at every stage, has amply demonstrated his ability to present his claims. Because the case was properly dismissed on the pleadings, the absence of counsel also could not have affected the outcome. The entry of final judgment operated as an implicit denial of the request.

### C. Street's challenges to the interlocutory TRO, preservation, and discovery orders are moot, forfeited, and meritless.

Street asks this Court to reverse the district court's denials of his emergency TRO and preservation requests and to direct a "preservation hearing" and spoliation discovery on remand. Appellant's Br. at 36–38, 58–59. These requests fail for several reasons.

First, the denial of a temporary restraining order is ordinarily not appealable, and an appeal from the denial of interim injunctive relief "becomes moot when final judgment issues." *Koppula v. Jaddou*, 72 F.4th 83, 84 (5th Cir. 2023). Interim relief exists only to preserve the parties'

positions pending a decision on the merits. Once the merits are decided, there is nothing left to preserve. And because the judgment should be affirmed, there will be no remand on which a preservation hearing or spoliation discovery could occur.

Second, Street never asked the district judge to review the magistrate judge's order denying expedited discovery and service by the Marshal. ROA.409–411. A party who does not object to a magistrate judge's non-dispositive order under Federal Rule of Civil Procedure 72(a) may not challenge it on appeal. *See Colburn v. Bunge Towing, Inc.*, 883 F.2d 372, 379 (5th Cir. 1989).

Third, the rulings were correct. The duty to preserve relevant evidence arises from the reasonable anticipation of litigation, not from a court order, and Street's own filing acknowledged that Chief Turner "verbally agreed to preserve" the building video. ROA.36. The district court reasonably concluded that nothing indicated that Street's preservation request was not being honored. ROA.52–53. As to the "safety" TRO, the district court did not deny relief merely because of a "fictitious procedural defect," as Street contends. Appellant's Br. at 14. It held that Street had failed to show that "all of the factors necessary to

grant the relief requested are met," ROA.413, and that Street had not satisfied Rule 65(b)(1) for ex parte relief, ROA.413–414. The Rule 65(b)(1)(B) certification Street identifies was filed in support of his separate preservation motion, ROA.37, not the safety TRO, and in any event Street's allegations that a single encounter in which no force was used and which did not "clearly show that immediate and irreparable injury" would result before Appellees could be heard. Fed. R. Civ. P. 65(b)(1)(A). An order that would have barred a deputy sheriff from coming within 100 feet of Street and required the Sheriff to send a different agency to any call involving him, ROA.39, was extraordinary relief that the district court was well within its discretion to deny.

### D. Reassignment is unwarranted.

Finally, Street asks the Court to reassign the case to a different district judge on remand. Appellant's Br. at 56–58. Because no remand is warranted, the request is moot. It is also baseless. Reassignment is an "extraordinary" and "rarely invoked" remedy, *Johnson v. Sawyer*, 120 F.3d 1307, 1333 (5th Cir. 1997), reserved for cases in which the original judge would reasonably be expected to have substantial difficulty putting aside previously expressed views or in which reassignment is necessary

to preserve the appearance of justice. *See Miller v. Sam Houston State Univ.*, 986 F.3d 880 (5th Cir. 2021). Street's request rests entirely on his disagreement with the district court's rulings. But "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). The district court considered every one of Street's filings, addressed each of his claims in a detailed written ruling, and gave no indication of anything other than impartial adjudication.

## CONCLUSION

For the foregoing reasons, Appellees Deputy Chuck Christ, Chief Calvin Turner, and Sheriff Craft respectfully request that the Court AFFIRM the district court's judgment of March 5, 2026, and its order of April 29, 2026 denying Appellant's Rule 59(e) motion, and DENY Appellant's requests for reassignment and for other relief.

Respectfully Submitted by:

*/s/ Jason P. Wixom*
**Jason P. Wixom (LSBN 32273)**
**RODRIGUE & ARCURI, LLP**
1615 Poydras St., Ste. 1250
New Orleans, LA 70112
Phone: (504)592-4600
Fax: (504)592-4641
Email: jason@rodriguearcuri.com
***Counsel for Defendants-Appellees Chuck Christ, Calvin Turner, and John Craft***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing pleading was this date electronically filed with the Clerk of Court using the Court's CM/ECF system. Notice of this filing will be sent to all parties and/or counsel of record, who are identified as follows, by operation of the Court's electronic filing system and/or by this date depositing same in the United States Mail, first class postage prepaid, and sent to their last known address:

1. Mr. Hugh Street, *pro se* Plaintiff-Appellant, at brian.street@southerntreeninjas.com

New Orleans, Louisiana, this 18th day of November, 2026.

*/s/Jason P. Wixom*
JASON P. WIXOM (LSBN 32273)

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Pursuant to 5th Cir. R. 32.2 and 32.3, the undersigned certifies that this Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7).

1. EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5th Cir. R. 32.2, THE BRIEF CONTAINS:

   A. 9,600 Words; OR

   B. N/A Lines of text in monospaced typeface.

2. THE BRIEF HAS BEEN PREPARED:

   A. in proportionally spaced typeface using: Software Name and Version: Microsoft Word for Office 365 in Century Schoolbook, 14 point font.

   B. in monospaced (nonproportionally spaced) typeface using: N/A

   Typeface name and number of characters per inch: N/A

3. THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETION THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN Fed. R. App. P. 32(a)(7), MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

New Orleans, Louisiana, this 18th day of November, 2026.

*/s/Jason P. Wixom*
JASON P. WIXOM (LSBN 32273)

## CERTIFICATE OF COMPLIANCE WITH RULE 25.2

Pursuant to Section A(6) of the Court's ECF Filing Standards, updated April 11, 2017, undersigned counsel certifies that (1) no privacy redactions were required, and thus, none were made; (2) the electronic submission is an exact copy of the paper document, and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

New Orleans, Louisiana, this 18th day of November, 2026.

*/s/Jason P. Wixom*
JASON P. WIXOM (LSBN 32273)